# No. 21–1756

### In the

# United States Court of Appeals

## For the Fourth Circuit

———————————

Damian Stinnie, et al., *Appellants*,

v.

Richard Holcomb, *Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(The Honorable Norman K. Moon)

———————————

## OPENING BRIEF OF APPELLANTS

———————————

Jonathan T. Blank
Benjamin P. Abel
MCGUIREWOODS LLP
323 Second Street SE, Suite 700
Charlottesville, VA 22902
T: (434) 977-2509
F: (434) 980-2258
*jblank@mcguirewoods.com*
*babel@mcguirewoods.com*

John J. Woolard
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4355
F: (804) 698-2055
*jwoolard@mcguirewoods.com*

Angela A. Ciolfi
LEGAL AID JUSTICE CENTER
1000 Preston Avenue
Suite A
Charlottesville, VA 22903
T: (434) 529-1810
F: (434) 977-0558
*angela@justice4all.org*

Patrick Levy-Lavelle
LEGAL AID JUSTICE CENTER
626 East Broad Street
Suite 200
Richmond, VA 23219
T: (804) 643-1086
F: (804) 643-2059
*pat@justice4all.org*

Leslie Kendrick
580 Massie Road
Charlottesville, VA 22903
T: (434) 243-8633
F: (434) 924-7536
*kendrick@virginia.edu*

Tennille J. Checkovich
Michael Stark
200 Commerce Street
Smithfield, VA 23430
T: (757) 357-8151
F: (757) 365-3018
*tcheckovich@smithfield.com*
*mstark@smithfield.com*

November 15, 2021

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Plaintiffs-Appellants Damian Stinnie, Melissa Adams, Adrainne Johnson, Williest Bandy, and Brianna Morgan state that, as individuals, they have no parent corporations or publicly held corporations that own ten percent or more of stock and that they are not aware of any publicly held corporation that has a direct financial interest in the outcome of this litigation. Further, this case does not arise out of a bankruptcy proceeding.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...............................................i

INTRODUCTION ........................................................................1

JURISDICTIONAL STATEMENT ....................................................3

ISSUE PRESENTED ....................................................................4

STATEMENT OF THE CASE ........................................................4

I.     Section 46.2-395 punished those unable to pay their court debt for
       their poverty without due process................................................4

II.    Plaintiffs sued to defend their constitutional rights, but the District
       Court dismissed the Complaint finding a lack of subject matter
       jurisdiction. ......................................................................7

III.   This Court allowed the case to go forward, remanding with
       instructions to permit Plaintiffs to amend their Complaint. ...........8

IV.    On remand, Plaintiffs filed their First Amended Class Action
       Complaint and Motion for Preliminary Injunction on the same day..............9

V.     The District Court granted the preliminary injunction on the merits,
       materially altering the legal relationship among the parties........................10

VI.    In recognition of the impact of the preliminary injunction, a bi-
       partisan majority in the Virginia General Assembly repealed § 46.2-
       395. ..............................................................................13

VII.   The District Court held it was constrained by *Smyth* to deny the Fee
       Petition, despite Plaintiffs' "thoughtful and compelling argument" to
       the contrary. ......................................................................17

SUMMARY OF ARGUMENT ........................................................19

STANDARD OF REVIEW ............................................................21

ARGUMENT .............................................................................21

I.     Plaintiffs are prevailing parties under applicable Supreme Court
       precedent..............................................................................24

       A.     *Winter* announced a new, more stringent merits-based standard
              for obtaining a preliminary injunction. ................................24

       B.     *Lefemine* clarified when a plaintiff is a prevailing party. .................25

C.    Reading *Winter*, *Lefemine*, and other relevant Supreme Court precedent together compels the conclusion that Plaintiffs are prevailing parties. ........................................................................27

D.    *Buckhannon*'s catalyst theory rule does not bar Plaintiffs' Fee Petition............................................................................29

II.    Precedent from other courts around the country supports a finding that Plaintiffs are prevailing parties.....................................................32

A.    The Fourth Circuit is alone in denying that obtaining a preliminary injunction can be sufficient to confer prevailing party status.......................................................................32

B.    This Court should take particular notice of the Sixth Circuit's decision in *Planned Parenthood*, where the Supreme Court recently denied certiorari...................................................36

C.    Additional cases that are directly analogous to this one in other circuits support a finding that Plaintiffs are prevailing parties. .........39

III.    This Court should not apply *Smyth* to bar Plaintiffs from prevailing party status. ..............................................................................42

IV.    Strong public policy reasons support granting Plaintiffs' Fee Petition........48

A.    Awarding fees to civil rights litigators, who take on cases of significant constitutional concern because it is the right thing to do, comports with important policy considerations. ..........................48

B.    The Commissioner's policy arguments have been misguided at best...................................................................................50

CONCLUSION ........................................................................52

ORAL ARGUMENT STATEMENT .....................................................53

CERTIFICATE OF COMPLIANCE.....................................................55

CERTIFICATE OF SERVICE ..........................................................56

ADDENDUM: STATUTE INVOLVED..................................................57

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*,
   550 F.2d 189 (4th Cir. 1977) ......................................................19, 24, 43, 44

*Brandon v. Guilford Cty. Bd. of Elections*,
   921 F.3d 194 (4th Cir. 2019) ...........................................................................22

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &*
   *Human Res.*,
   532 U.S. 598 (2001).................................................................................*passim*

*Common Cause/Georgia v. Billups*,
   554 F.3d 1340 (11th Cir. 2009) ..............................................................34, 39, 42

*CRST Van Expedited, Inc. v. EEOC*,
   578 U.S. 419 (2016)................................................................................23, 26, 27

*Dearmore v. City of Garland*,
   519 F.3d 517 (5th Cir. 2008) .....................................................................30, 33

*Dupuy v. Samuels*,
   423 F.3d 714 (7th Cir. 2005) ...........................................................................33

*Enovative Techs., LLC v. Leor*,
   86 F. Supp. 3d 445 (D. Md. 2015)...................................................................30

*Etheridge v. Norfolk & W. Ry.*,
   9 F.3d 1087 (4th Cir. 1993) .............................................................................45

*Farrar v. Hobby*,
   506 U.S. 103 (1992).........................................................................................23

*Faust v. S.C. State Highway Dep't*,
   721 F.2d 934 (4th Cir. 1983) ...........................................................................44

*Grissom v. The Mills Corp.*,
   549 F.3d 313 (4th Cir. 2008) ...........................................................................21

iv

*Haley v. Pataki*,
106 F.3d 478 (2d Cir. 1997) ...............................................32

*Henderson ex rel. Nat'l Labor Relations Bd. v. Bluefield Hosp. Co.*,
902 F.3d 432 (4th Cir. 2018) .............................................24

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).................................................22, 49

*Hewitt v. Helms*,
482 U.S. 755 (1987).......................................................23

*Higher Taste, Inc. v. City of Tacoma*,
717 F.3d 712 (9th Cir. 2013) ............................................34

*Kansas Judicial Watch v. Stout*,
653 F.3d 1230 (10th Cir. 2011) ....................................31, 34

*Lefemine v. Wideman*,
568 U.S. 1 (2012) (per curiam).....................................*passim*

*Mastrio v. Sebelius*,
768 F.3d 116 (2d Cir. 2014) .............................................32

*Mathews v. Eldridge*,
424 U.S. 319 (1976)......................................................12

*McAfee v. Boczar*,
738 F.3d 81 (4th Cir. 2013), *as amended* (Jan. 23, 2014) .................21

*Pa. v. Del. Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986).......................................................21

*Pashby v. Delia*,
709 F.3d 307 (4th Cir. 2013) ............................................43

*Payne v. Taslimi*,
998 F.3d 648 (4th Cir. 2021) ............................................45

*People Against Police Violence v. City of Pittsburgh*,
520 F.3d 226 (3d Cir. 2008) ...........................................27, 32, 33, 45

*Planned Parenthood S.W. Ohio Region v. Dewine*,
   931 F.3d 530 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 189 (2020) ............*passim*

*Reyazuddin v. Montgomery Cty.*,
   988 F.3d 794 (4th Cir. 2021) ................................................................21

*Riverside v. Rivera*,
   477 U.S. 561 (1986)....................................................................22, 48

*Rogers Group, Inc. v. City of Fayetteville*,
   683 F.3d 903 (8th Cir. 2012) ..............................................................33

*Rum Creek Coal Sales, Inc. v. Caperton*,
   31 F.3d 169 (4th Cir. 1994) ................................................................22

*Select Milk Producers, Inc. v. Johanns*,
   400 F.3d 939 (D.C. Cir. 2005).....................................................*passim*

*Sinapi v. Rhode Island Bd. of Bar Examiners*,
   910 F.3d 544 (1st Cir. 2018)................................................................35

*Smyth ex rel. Smyth v. Rivero*,
   282 F.3d 268 (4th Cir. 2002) ......................................................*passim*

*Snider Int'l Corp. v. Town of Forest Heights*,
   739 F.3d 140 (4th Cir. 2014) ..............................................................11

*Sole v. Wyner*,
   551 U.S. 74 (2007)....................................................................*passim*

*Stinnie v. Holcomb*,
   355 F. Supp. 3d 514 (W.D. Va. 2018)..........................................*passim*

*Stinnie v. Holcomb*,
   396 F. Supp. 3d 653 (W.D. Va. 2019)..........................................15, 16

*Stinnie v. Holcomb*,
   734 F. App'x 858 (4th Cir. 2018)................................................*passim*

*Stinnie v. Holcomb*,
   Case No. 3:16-cv-00044, 2017 WL 963234 (W.D. Va. Mar. 13,
   2017) ......................................................................................7

*Swift Beef Co. v. Alex Lee, Inc.*,
  760 F. App'x 160 (4th Cir. 2019) ....................................................41

*Teague v. Lane*,
  489 U.S. 288 (1989)........................................................................37

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
  489 U.S. 782 (1989)..................................................................22, 23

*Tri-City Cmty. Action Program, Inc. v. City of Malden*,
  680 F. Supp. 2d 306 (D. Mass. 2010) ...........................................35

*United States v. AMC Entm't, Inc.*,
  549 F.3d 760 (9th Cir. 2008) .........................................................42

*United States v. Blackman*,
  No. 3:04CV00046, 2005 WL 2675095 (W.D. Va. Oct. 19, 2005)
  (Moon, J.), *aff'd,* No. 06-4167, 2007 WL 1578278 (4th Cir. May
  31, 2007) .........................................................................................29

*United States v. Williams*,
  155 F.3d 418 (4th Cir. 1998) .........................................................45

*Veasey v. Wilkins*,
  158 F. Supp. 3d 466 (E.D.N.C. 2016) .....................................*passim*

*The Real Truth About Obama, Inc. v. Fed. Election Comm'n*,
  575 F.3d 342 (4th Cir. 2010) (per curiam), *vacated on other
  grounds*, 559 U.S. 1089 (2010) ...............................................*passim*

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008)....................................................................*passim*

*Yost v. Planned Parenthood S.W. Ohio Region*,
  No. 19-677, 141 S. Ct. 189 (U.S. July 2, 2020)...........................37

*Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam
  Guiv Found. of N.Y.*,
  822 F.3d 739 (4th Cir. 2016) .........................................................21

**Federal Statutes**

28 U.S.C. § 1291 ..........................................................................4, 41

28 U.S.C. § 1331 ................................................................3

28 U.S.C. § 1343(a)(3) ........................................................3

42 U.S.C. § 1983 ..............................................7, 35, 47, 49

42 U.S.C. § 1988 .........................................................*passim*

**State Statutes**

N.C. Gen. Stat. § 14-415.12 ...........................................46

Va. Code § 46.2-395 (repealed 2020) ........................*passim*

Va. Code § 49-1 ...............................................................51

**Rules**

Fed. R. App. P. 28 ...........................................................57

Fed. R. Civ. P. 54(d) .......................................................22

**Constitutions**

U.S. Const. Article III ......................................................9

Va. Const. art. I, § 3 .......................................................51

**Other Authorities**

General Assembly of N.C., House Bill 562, 2015-2016 Session (Aug. 5, 2015) ...................................................................46

Matthew Chaney, *Virginia License Suspension Law Faces New Challenges*, Va. Law. Wkly., Jan. 7, 2019, at 1, https://valawyersweekly.com/2019/01/09/va-license-suspension-law-faces-new-challenges/ ..........................................14

Mel Leonor, *Northam seeks to halt license suspensions for unpaid court fees*, Richmond Times-Dispatch (Mar. 26, 2019), https://www.richmond.com/news/local/government-politics/northam-seeks-to-halt-license-suspensions-for-unpaid-court-fees/article_8ed0c8dd-9445-5f7e-bbb4-f7fe0c7169f7.html ..............................................15

Office of Virginia Governor, *Gov. Northam Announces Budget
Amendment to Eliminate Driver's License Suspensions for
Nonpayment of Court Fines and Costs* (Mar. 26, 2019),
http://bit.ly/GovNorthamBudget.........................................................................14

S. Rep. No. 94-1011 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908 ...............48, 49

Virginia Legis. Info. Sys., Va. HB 1700 Budget Bill, 2019 Sess.,
http://lis.virginia.gov/cgi-bin/legp604.exe?191+sum+ HB1700......................14

Virginia Legis. Info. Sys., Va. HB 1700, Adjustments and
Modifications to Fees, 2019 Sess., http://lis.virginia.gov/cgi-
bin/legp604.exe?191+amd+HB1700AG .........................................................14

Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess.,
http://lis.virginia.gov/cgi-bin/legp604.exe?201+ful+SB1ER+pdf....................17

Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess.,
https://lis.virginia.gov/cgi-
bin/legp604.exe?ses=201&typ=bil&val=sb1 ............................................16, 17

## INTRODUCTION

When this litigation began more than five years ago, nearly a million people had suspensions on their driver's licenses because of unpaid court debt from Virginia courts. Plaintiffs-Appellants Damian Stinnie, Melissa Adams, Adrainne Johnson, Williest Bandy, and Brianna Morgan (collectively, "Plaintiffs") represented a putative class of persons whose licenses were suspended automatically when they failed to meet payment deadlines for court debt. They could not legally drive to work, medical appointments, the grocery store, or anywhere else. Defendant-Appellee Richard D. Holcomb (the "Commissioner"), who was sued in his official capacity as the Commissioner of the Virginia Department of Motor Vehicles ("DMV"), suspended Plaintiffs' licenses without notice, a hearing, or consideration of inability to pay. Plaintiffs lost their licenses because they could not afford the court debt imposed on them. They alleged that punishing them for their poverty offended the Fourteenth Amendment guarantees of due process and fundamental fairness, as well as equal protection under the law.

Virginia Code § 46.2-395 (repealed 2020) (hereinafter "§ 46.2-395" or "Section 46.2-395") breached the promise of procedural due process made to all Americans regardless of race and poverty. During the first appeal in this case, Chief Judge Gregory remarked that: "By suspending the licenses of those who cannot pay for reasons outside of their control, the state traps thousands of

1

Virginians in a *nightmarish spiral for which there is no apparent exit*." *Stinnie v. Holcomb*, 734 F. App'x 858, 864 (4th Cir. 2018) (Gregory, C.J., dissenting) (emphasis added). That exit finally came for Plaintiffs seven months later when the United States District Court for the Western District of Virginia (the "District Court") granted Plaintiffs' requested preliminary injunction, which materially altered the legal relationship of the parties by, among other things, requiring the Commissioner to remove these suspensions from Plaintiffs' driver's licenses.

When Plaintiffs began this litigation, they had a simple goal—to stop the Commissioner from unjustly punishing their poverty through the suspension of their driver's licenses without due process under § 46.2-395. On December 21, 2018, Plaintiffs achieved that goal when the District Court ended that unjust punishment through its well-reasoned and warranted preliminary injunction. The preliminary injunction changed Plaintiffs' lives. From that point on, § 46.2-395 ceased to bind them. The preliminary injunction forced the Commissioner to halt enforcement of § 46.2-395 and also gave the Plaintiffs dignity, a chance to provide for themselves and their families, and a real opportunity to break the cycle of poverty. And just as importantly, it recognized the unconstitutionality of § 46.2-395. The District Court determined, on the merits, that it was "likely that Plaintiffs [would] succeed in establishing that § 46.2-395 violates procedural due process." *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 532 (W.D. Va. 2018).

2

The District Court's preliminary injunction was the defining moment of this litigation—it addressed the substantive merits of Plaintiffs' case and granted relief. In the months following that material alteration of the legal relationship between Plaintiffs and the Commissioner, a bi-partisan majority of the Virginia General Assembly joined forces to repeal the statute—even as the preliminary injunction continued to remain in effect as an independent and preexisting source of relief from § 46.2-395 to Plaintiffs. That the legislature later chose to act does not detract from Plaintiffs' entitlement to fees as prevailing parties based on the preliminary injunction. United States Supreme Court ("Supreme Court") precedent and case law from courts around the country interpreting that precedent support Plaintiffs' entitlement to fees. And this Court is not constrained by its decision in *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 274 (4th Cir. 2002) to hold differently. This Court should reverse and remand.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). The District Court entered its Order dismissing this case as moot on May 7, 2020. (JA1017–18.) In that Order, the District Court retained jurisdiction for purposes of determining Plaintiffs' Petition for Attorneys' Fees and Litigation Expenses (the "Fee Petition"), which was filed on July 2, 2020. (JA1020–57.) The District Court referred the Fee Petition to United States

Magistrate Judge Joel C. Hoppe (JA1058), who issued a Report and Recommendation on February 16, 2021, recommending that the Fee Petition be denied (the "Report and Recommendation") (JA1128–55).  On March 2, 2021, Plaintiffs timely filed Objections to the Report and Recommendation (JA1184–1200), which were overruled by the District Court on June 4, 2021 (JA1256–65). Plaintiffs filed a timely Notice of Appeal on July 2, 2021.  (JA1266–68.)  This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUE PRESENTED

Are Plaintiffs prevailing parties when they obtained a merits-based preliminary injunction that materially altered the relationship among the parties in a way that directly benefited Plaintiffs and remained in place when the case was mooted by legislative action after entry of the preliminary injunction?

## STATEMENT OF THE CASE

I.    **Section 46.2-395 punished those unable to pay their court debt for their poverty without due process.**

For years, the Commonwealth of Virginia denied Plaintiffs procedural due process, among other things, by automatically suspending driver's licenses for failure to pay court debt without holding a hearing or invoking any process whatsoever to determine ability to pay.  *See* Va. Code § 46.2-395.

Under Va. Code § 46.2-395(B), license suspension by DMV was automatic and mandatory for "failure or refusal" to pay court debt within the specified period

4

(within thirty days of conviction or according to the terms of any court-ordered payment plan). Plaintiffs are indigent Virginia residents whose driver's licenses were automatically and indefinitely suspended by the Commissioner for failure to pay court debt that they could not afford. (*See, e.g.*, First Am. Compl. ¶¶ 1–5, 27, 31, 40, 66, 85–86, 88.)[1] Suspension occurred automatically, without a hearing or any inquiry into the reasons for nonpayment or financial circumstances. (*Id*. ¶ 86.)

The Commissioner maintains a database of individual driver profiles and updates their statuses based on information received from state courts. (*Id*. ¶ 65.) Upon receipt of information indicating that a person has failed to pay court debt, the Commissioner automatically issued a suspension on the person's driver's license. (*Id*. ¶ 66.) The Commissioner did not conduct a review of a person's financial condition or otherwise inquire as to the reasons for default at any point related to suspending a person's license for failure to pay. (*Id*. ¶ 68.)

The Commissioner also holds the keys to reinstatement of licenses once suspended, but the Commissioner would not reinstate Plaintiffs' licenses unless they satisfied all court debt in all jurisdictions or they obtained payment plans from each court to which they are indebted. (*Id*. ¶¶ 69–73.) Reinstatement of a

---

[1] All citations to paragraphs in Plaintiffs' First Amended Complaint can be found at JA226–70.

5

suspended license also required an additional reinstatement fee of at least $145 payable to DMV. (*Id*. ¶ 297.)

Under Va. Code § 46.2-395(B), hundreds of thousands of drivers lost their licenses simply because they lacked the financial means to pay court debt. (*See* First Am. Compl. ¶¶ 2, 26.) In 2017, for example, more than 970,000 driver's licenses were in suspended status in Virginia for failure to pay court debt. (*Id*. ¶ 26.) Those suspensions deprived drivers of reliable, lawful transportation necessary to get to and from work, keep medical appointments, care for ill or disabled family members, and, paradoxically, to meet their financial obligations to the courts. (*See, e.g.*, *id*. ¶¶ 2, 31, 33, 39, 109, 151, 152, 168.)

Plaintiffs were unable, not unwilling, to pay their court debt. (*Id*. ¶¶ 85, 88.) Indeed, the District Court found that Plaintiffs could not afford to pay. *Stinnie*, 355 F. Supp. 3d at 520–23. In doing so, the District Court noted the many struggles Plaintiffs have endured that have adversely affected their ability to pay their court debt, such as serious illness, unemployment, and incarceration. *See id.* Despite Plaintiffs' inability to pay, however, the District Court found that none of them were asked about their financial circumstances prior to license suspension or otherwise provided due process. *See id.*

II.   **Plaintiffs sued to defend their constitutional rights, but the District Court dismissed the Complaint finding a lack of subject matter jurisdiction.**

On July 6, 2016, Plaintiffs took a stand to end the harm § 46.2-395 had been causing.  (JA27–172.)  They filed suit under 42 U.S.C. § 1983 against the Commissioner, claiming constitutional violations stemming from § 46.2-395.  (JA72–79.)  Plaintiffs sought certain declaratory and injunctive relief, as well as attorneys' fees and costs under 42 U.S.C. § 1988.  (JA79–80.)

The Commissioner moved to dismiss.  (JA173–75.)  The Department of Justice submitted a Statement of Interest of the United States in opposition to the motion to dismiss "to assist the Court in considering the important constitutional questions present."  Statement of Interest of the United States, *Stinnie v. Holcomb*, 734 F. App'x 858 (4th Cir. 2018) (No. 17-1740, Joint Appendix at 288–309).  In its opinion, the District Court noted that automatic suspension of driver's licenses "may very well violate Plaintiffs' constitutional rights to due process and equal protection."  *Stinnie v. Holcomb*, Case No. 3:16-cv-00044, 2017 WL 963234, at *20 (W.D. Va. Mar. 13, 2017).  Nonetheless, the District Court dismissed the case on the grounds that it lacked jurisdiction under the *Rooker-Feldman* doctrine, Article III, and Eleventh Amendment immunity.  *Id*.  Plaintiffs appealed the dismissal.  (JA223–25.)

**III.** **This Court allowed the case to go forward, remanding with instructions to permit Plaintiffs to amend their Complaint.**

On appeal, this Court determined that it "lack[ed] jurisdiction to consider Plaintiffs' appeal because the district court's dismissal without prejudice was not a final order." *Stinnie*, 734 F. App'x at 861. Nonetheless, this Court "remand[ed] the case to the district court with instructions to allow Plaintiffs to amend their complaint" because it concluded Plaintiffs could cure any deficiencies that had been identified by the Court in its dismissal order. *See id.* at 860–63.

Chief Judge Gregory dissented because he concluded "the district court's dismissal of Plaintiffs' case for lack of jurisdiction [was] an appealable final order." *Id.* at 863 (Gregory, C.J., dissenting). He would have reached the merits and determined that the District Court had improperly dismissed the action on jurisdictional grounds. *See id.* Chief Judge Gregory's well-reasoned and thoughtful opinion also highlighted the strengths of Plaintiffs' merits arguments. (*See id.* at 863–64 (detailing Virginia's driver's license scheme which did "not differentiate between those *unable* to pay from those *unwilling* to pay"); *id.* at 864–65 (noting the disastrous impact the statute had on Virginians).)

Chief Judge Gregory hit the nail on the head characterizing § 46.2-395 as a "license-for-payment scheme." *See id.* at 863–64. Virginia was charging people about a *half-billion* dollars in court fines and fees each year and was using the money to fund the government. *See id.* Then the Commissioner was automatically

8

suspending licenses for nonpayment without considering ability to pay. *See id.* The system was wrong, the harm caused by the inequitable treatment under the statute was severe, and Plaintiffs ultimately would win relief from that practice.

## IV.  On remand, Plaintiffs filed their First Amended Class Action Complaint and Motion for Preliminary Injunction on the same day.

In September 2018, Plaintiffs filed their First Amended Class Action Complaint in the District Court, alleging, like the first Complaint, that § 46.2-395 was unconstitutional.  (JA262–68.)  As they had in their initial Complaint, Plaintiffs sought declaratory and injunctive relief, as well as attorneys' fees and costs under 42 U.S.C. § 1988.  (JA268–69.)  At the same time, Plaintiffs filed a Motion for Preliminary Injunction, asking this Court to: (1) enjoin the Commissioner from enforcing § 46.2-395 against Plaintiffs without notice and a determination of ability to pay; (2) remove any current suspensions of Plaintiffs' driver's licenses imposed under § 46.2-395; and (3) enjoin the Commissioner from charging a fee to reinstate Plaintiffs' licenses if no other restrictions on their licenses existed.  (JA297.)  That motion was fully briefed on November 9, 2018. (JA14–15.)

On November 14, 2018, the Commissioner once again moved to dismiss based on the *Rooker-Feldman* doctrine, Article III standing, immunity, and failure to state a claim on which the court could grant relief.  (JA818–19.)  As will be discussed in detail below, the District Court granted the preliminary injunction on

December 21, 2018. (JA843–44.) Then litigation proceeded with respect to class certification briefing, fact and expert discovery, including related motions practice, and motions for summary judgment. (JA17–23.) More than seven months after entry of the preliminary injunction, and about five weeks before the case was scheduled to go to trial, the District Court stayed the case at the request of the Commissioner and over Plaintiffs' objection, pending the 2020 session of Virginia's General Assembly. (JA15–23; JA955.)

## V.   The District Court granted the preliminary injunction on the merits, materially altering the legal relationship among the parties.

Following briefing by the parties and a hearing involving several hours of testimony, including expert evidence, the District Court granted Plaintiffs' Motion for Preliminary Injunction on December 21, 2018, relieving Plaintiffs of the burdens of § 46.2-395 and signaling that the statute likely failed to accord with constitutional guarantees of due process. *Stinnie*, 355 F. Supp. 3d at 527–32; (JA820–44).

In its opinion, the District Court made it clear that it was "turn[ing] to the merits of the preliminary injunction." 355 F. Supp. 3d at 527. This preliminary injunction did not maintain the status quo, it *upended* it. In deciding the merits of the preliminary injunction, the District Court turned, as it should, to the "govern[ing]" test from *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). 355 F. Supp. 3d at 527. It specifically noted that "[t]o obtain a

preliminary injunction, the moving party must establish 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* (citation omitted).

The District Court then concluded that Plaintiffs showed they were likely to succeed, at the very least, on their procedural due process claim. *See id.* at 527–28. In so ruling, the District Court carefully examined the notice and hearing components of procedural due process. *See id*. at 528–31. The District Court determined that "Plaintiffs . . . made a clear showing that they are likely to establish that they are not provided an opportunity to be heard." *Id*. at 529. And, of course, having an opportunity to be heard is crucial to procedural due process. *See Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014).

The District Court recognized that § 46.2-395 failed the hearing requirement of procedural due process. *Stinnie*, 355 F. Supp. 3d at 529 ("Plaintiffs are likely to show § 46.2-395 does not provide *any* hearing, much less one that satisfies due process."); *id.* at 529–30 ("The Court determines that Plaintiffs are likely to succeed because the procedures in place are not sufficient to protect against the erroneous deprivation of the property interest involved. Indeed, § 46.2-395, on its face, provides no procedural hearing at all."). That was precisely what Plaintiffs

11

had been arguing all along. (Compl. ¶¶ 410-18;[2] First Am. Compl. ¶¶ 323-31 ("In the absence of notice and hearing, which do not presently exist under Virginia law in relation to driver's license suspensions for unpaid court debt, the risk is very high that a debtor will be deprived of his or her driver's license for reasons attributable to his or her poverty.").)

The preliminary injunction opinion marched through the *Mathews* factors for procedural due process. *See Stinnie*, 355 F. Supp. 3d at 529–31 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). In doing so, it considered the parties' arguments on the merits. *Id.* The District Court also determined that the rest of the *Winter* factors, "irreparable harm, the balance of equities, and the public interest," all counseled in Plaintiffs' favor. *Id.* at 532. First, "[i]rreparable harm [was] clearly demonstrated through the facts surrounding Plaintiff Stinnie." *Id.* Regarding the balance of equities, and the public interest, the District Court noted that it would actually help Virginia for the District Court to enjoin unconstitutional activity. *See id.* And no interest Virginia might have had was "furthered by a license suspension scheme that neither consider[ed] an individual's ability to pay nor provide[d] him with an opportunity to be heard on the matter." *See id.* Thus, the

---

[2] All citations to paragraphs in Plaintiffs' original Complaint can be found at JA27–81.

harm to Plaintiffs stemming from § 46.2-395 "outweigh[ed] any harm the issuance of a preliminary injunction would cause others." *Id.*

In granting the injunction, the District Court ordered that: (1) the Commissioner was "preliminarily enjoined from enforcing . . . § 46.2-395 against Plaintiffs unless or until [the Commissioner] or another entity provide[d] a hearing regarding license suspension and provide[d] adequate notice thereof"; (2) the Commissioner must "remove any current suspensions of Plaintiffs' driver's licenses imposed under . . . § 46.2-395"; and (3) the Commissioner was "enjoined from charging a fee to reinstate Plaintiffs' driver's licenses if there [were] no other restrictions on their licenses." (JA843.) The Commissioner did not appeal the preliminary injunction, and, consistent with the preliminary injunction, provided the relief the Plaintiffs had fought for and prevailed upon via the preliminary injunction.

## VI. **In recognition of the impact of the preliminary injunction, a bi-partisan majority in the Virginia General Assembly repealed § 46.2-395.**

The preliminary injunction was a critical event that raised the profile of this litigation in the General Assembly. For example, less than a month after the preliminary injunction, Senator William M. Stanley, who sponsored the legislation repealing § 46.2-395, remarked, "Hopefully with the preliminary injunction being granted, anybody who has doubts about [the bill to end the required license suspensions for nonpayment of court debt] will remove them. I hope the House of

13

Delegates will join the Senate in fixing this problem."  Matthew Chaney, *Virginia License Suspension Law Faces New Challenges*, Va. Law. Wkly., Jan. 7, 2019, at 1, https://valawyersweekly.com/2019/01/09/va-license-suspension-law-faces-new-challenges/.

After the preliminary injunction hearing and the blockage of repeal by the House of Delegates, Governor Northam proposed Budget Amendment No. 33 (the "Budget Amendment") to provide temporary relief to individuals whose driver's licenses had been automatically suspended for failure to pay court debt.  Office of Virginia Governor, *Gov. Northam Announces Budget Amendment to Eliminate Driver's License Suspensions for Nonpayment of Court Fines and Costs* (Mar. 26, 2019), http://bit.ly/GovNorthamBudget.  The General Assembly passed the Budget Amendment in the House of Delegates by a vote of seventy to twenty-nine, and in the Senate by a vote of thirty to eight.  *See* Virginia Legis. Info. Sys., Va. HB 1700 Budget Bill, 2019 Sess., http://lis.virginia.gov/cgi-bin/legp604.exe?191+sum+HB1700.  The Budget Amendment suspended the operation of § 46.2-395 from July 1, 2019, to June 30, 2020 (one budget cycle).  *See* Virginia Legis. Info. Sys., Va. HB 1700, *Governor's Recommendation*, 2019 Sess., http://lis.virginia.gov/cgi-bin/legp604.exe?191+amd+HB1700AG.  It also waived associated reinstatement fees for driver's licenses otherwise eligible for reinstatement.  *See id.*, Adjustments and Modifications to Fees.  The General Assembly's passage of the Budget

Amendment was undoubtedly influenced by this litigation. *See* Mel Leonor, *Northam seeks to halt license suspensions for unpaid court fees*, Richmond Times-Dispatch (Mar. 26, 2019), https://www.richmond.com/news/local/government-politics/northam-seeks-to-halt-license-suspensions-for-unpaid-court-fees/article_8ed0c8dd-9445-5f7e-bbb4-f7fe0c7169f7.html (quoting Delegate Chris Jones as saying, "We took what I thought was a conservative approach by leaving the money in to respond to any potential judicial action that would invalidate the existing statute").

Twenty days after the General Assembly passed the Budget Amendment, the Commissioner again moved to dismiss the case as moot or, alternatively, to stay the case to allow the General Assembly an additional chance to pass a permanent repeal. (JA845–91.) Plaintiffs vigorously opposed this motion. (JA924–41.) Plaintiffs argued that the General Assembly might not repeal § 46.2-395, noting that it had failed to do so for years, and that staying the action would waste time. (JA937–39.) Plaintiffs wanted "their day in court" without delay. (JA939.) On June 28, 2019, the Court denied the motion to dismiss but granted the motion to stay pending the General Assembly's 2020 session. *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 661 (W.D. Va. 2019); (JA955–56). The same day, the Court canceled the bench trial that had been scheduled for August. (JA23.)

During its 2020 regular session, the General Assembly considered proposed legislation to permanently eliminate § 46.2-395's unconstitutional mandate. *See* Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess., https://lis.virginia.gov/cgi-bin/legp604.exe?ses=201&typ=bil&val=sb1. One of those bills was SB1 introduced by Senator Stanley on November 18, 2019. *See id.* On January 10, 2020, the Commissioner sent a letter to Senator Stanley regarding the legislation. (JA968–1000.) In the letter, the Commissioner gave advice about how to repeal § 46.2-395 effectively. (*Id.*) The Commissioner also recognized the direct impact this case was having on the legislative process:

> As you are aware DMV is currently a party to the *Stinnie v. Holcomb* case, in which the issue under consideration is driver's license suspensions for failure to pay court fines and costs pursuant to § 46.2-395. On June 28, 2019, *the Court stayed the litigation until after the close of the 2020 General Assembly Session to allow the legislature to repeal § 46.2-395*. An emergency enactment clause is needed to demonstrate to the Court that matters at issue in *Stinnie v. Holcomb* litigation have been addressed by the General Assembly. *This should result in the pending litigation being dismissed*, relieving the Department from continuing to incur costly legal fees.

(JA968–69 (emphasis added).) The Commissioner even went so far as to "offer a substitute" bill that had all of his recommended changes. (JA969–1000.) In other words, the Commissioner was actively calling for a repeal in order to stem his losses in this litigation from continuing to defend a law the District Court had already concluded likely violated procedural due process.

16

The General Assembly passed SB1ER on February 26, 2020, with an overwhelming majority in both the House and Senate. *See* Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess., https://lis.virginia.gov/cgi-bin/legp604.exe?ses=201&typ=bil&val=sb1 (showing SB1ER passed both chambers with the support of at least three-quarters of each chamber's members). Governor Northam signed SB1ER in April, and it took effect on July 1, 2020. *See id.*

SB1ER repealed § 46.2-395. Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess., http://lis.virginia.gov/cgi-bin/legp604.exe?201+ful+SB1ER+pdf, at lines 1244–45. It also required the Commissioner to reinstate driving privileges suspended solely because of § 46.2-395:

> [T]he Commissioner of the Department of Motor Vehicles shall reinstate a person's privilege to drive a motor vehicle that was suspended prior to July 1, 2019, solely pursuant to § 46.2-395 of the Code of Virginia and shall waive all fees relating to reinstating such person's driving privileges. Nothing in this act shall require the Commissioner to reinstate a person's driving privileges if such privileges have been otherwise lawfully suspended or revoked or if such person is otherwise ineligible for a driver's license.

*Id.* at lines 1246–51.

## VII. The District Court held it was constrained by *Smyth* to deny the Fee Petition, despite Plaintiffs' "thoughtful and compelling argument" to the contrary.

In light of the action taken by the General Assembly, on May 7, 2020, the parties stipulated that this action was moot. (JA1010–13.) The District Court retained jurisdiction to determine Plaintiffs' entitlement to attorneys' fees and

17

entered an order bifurcating the briefing on Plaintiffs' Fee Petition. (JA1017–18.) Pursuant to the briefing schedule entered by the District Court, the parties first briefed Plaintiffs' entitlement to recover attorneys' fees as prevailing parties. (*Id*.) The amount and reasonableness of the fees to be awarded were reserved to be addressed in a subsequent round of briefing. (*Id.*)

The District Court referred the Fee Petition to Magistrate Judge Hoppe (JA1058), who issued his Report and Recommendation on February 16, 2021, recommending that the Fee Petition be denied (JA1128). In the Report and Recommendation, Magistrate Judge Hoppe found that the preliminary injunction in this case "constituted merits-based relief that materially altered the relationship between the parties" and "carr[ied] all the necessary judicial imprimatur." (JA1148–49.) In reaching this conclusion, the Report and Recommendation rejected the Commissioner's arguments that the preliminary injunction was too narrow to constitute relief sufficient to confer prevailing party status and that the Commissioner did not believe Plaintiffs ultimately would have prevailed in the case. (JA1150–51.)

Nonetheless, the Report and Recommendation concluded that the District Court was constrained by this Court's decision in *Smyth* to hold that Plaintiffs have not achieved prevailing party status here because, in the Fourth Circuit, a preliminary injunction is *never* sufficiently merits-based to confer prevailing party

18

status.  (JA1139; *see* JA1152.)  The Report and Recommendation reached this

conclusion despite finding that (1) the *Smyth* panel "relied on the now-outdated

formulation of the preliminary injunction standard articulated in *Blackwelder*"

(JA1141), (2) the current preliminary injunction standard under Supreme Court and

Fourth Circuit law "requires a more robust merits-based showing" (JA1143), and

(3) the *Smyth* decision had been "materially undermined by later Supreme Court

precedent" (JA1152).  In reaching this outcome, the Report and Recommendation

acknowledged that "Plaintiffs have advanced a thoughtful and compelling

argument urging the Court to find otherwise" (JA1154) and that "almost every

circuit agrees that a merits-based preliminary injunction that is not undone or

otherwise modified by a later court order may confer prevailing party status

entitling the plaintiff to an award of attorneys' fees" (JA1146–48).

On March 2, 2021, Plaintiffs timely filed Objections to the Report and

Recommendation (JA1184–1200), but the Commissioner did not object to any of

the findings in the Report and Recommendation (*see* JA24–25).  Plaintiffs'

Objections were overruled by the District Court on June 4, 2021.  (JA1256–65.)

## SUMMARY OF ARGUMENT

Plaintiffs meet the standard for qualifying as prevailing parties for a simple

reason—the District Court's judicial imprimatur (in the form of a merits-based

preliminary injunction) materially altered the relationship among the parties in a

way that directly benefited Plaintiffs.  Before the preliminary injunction, Plaintiffs suffered ongoing unconstitutional deprivations of their driver's licenses that significantly disrupted their lives and livelihoods.  After the preliminary injunction, Plaintiffs did not.  The preliminary injunction made that happen.  Then the District Court paused the litigation, over Plaintiffs' objection, to give the General Assembly an additional chance to repeal § 46.2-395.  (JA955–56.)  It did.  But those subsequent events do not detract from the legal significance of the preliminary injunction, which remained undisturbed to the conclusion of the litigation and provided full and continuing relief to Plaintiffs.

To the contrary, binding and persuasive authority establishes Plaintiffs' entitlement to fees as prevailing parties because of the preliminary injunction. Supreme Court precedent confirms Plaintiffs' entitlement to fees, and this Court's decision in *Smyth* no longer compels otherwise.  Later-decided Supreme Court precedent answers the question here.  Circuit courts from around the country are overwhelmingly in agreement on this question, including the recent *Planned Parenthood* case from the Sixth Circuit, where the Supreme Court denied review. *See Planned Parenthood S.W. Ohio Region v. Dewine*, 931 F.3d 530 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 189 (2020).  Moreover, the pertinent policy considerations favor Plaintiffs, not the Commissioner.

For these reasons, as well as those set forth below, the District Court erred when it adopted the Report and Recommendation and denied the Fee Petition. This Court should reverse and remand for further proceedings.

## STANDARD OF REVIEW

This Court "review[s] de novo a district court's determination of whether someone is a 'prevailing party.'" *Reyazuddin v. Montgomery Cty.*, 988 F.3d 794, 796 (4th Cir. 2021); *see Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 754 (4th Cir. 2016) (citing *Smyth*, 282 F.3d at 274); *McAfee v. Boczar*, 738 F.3d 81, 87-88 (4th Cir. 2013), *as amended* (Jan. 23, 2014); *Grissom v. The Mills Corp.*, 549 F.3d 313, 318 (4th Cir. 2008). The term "prevailing party" is a legal term of art that this Court interprets consistently across all federal fee-shifting statutes. *Smyth*, 282 F.3d at 274.

## ARGUMENT

By design, § 1988 encourages private attorneys to take on civil rights litigation to protect the voices of the unheard, litigate the causes of the ignored, and guarantee the liberties promised to all. *Cf. Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986) ("Section 1988 was enacted to insure that private citizens have a meaningful opportunity to vindicate their rights protected by the Civil Rights Acts."). "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil

21

rights violations with effective access to the judicial process." *Riverside v. Rivera*, 477 U.S. 561, 576 (1986); *see Brandon v. Guilford Cty. Bd. of Elections*, 921 F.3d 194, 198 (4th Cir. 2019) (Congress enacted § 1988 "in furtherance of the policy of facilitating access to judicial process for the redress of civil rights grievances."). Just as Congress intended, § 1988 makes a plaintiff into a "private attorney general." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989). It does so by allowing prevailing parties to recover fees. 42 U.S.C. § 1988.

   "Title 42 U.S.C. § 1988 provides that in federal civil rights actions 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983) (citation omitted); *see also Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (per curiam); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994); Fed. R. Civ. P. 54(d). "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (citation omitted). Therefore, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* (internal quotations and citation omitted).

   "To be a 'prevailing party,' a party need not receive a full merits-based adjudication of its claim." (JA1136 (internal footnote omitted).) The party need

only "receive at least some relief on the merits." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). In determining whether the relief granted is sufficient to confer prevailing party status, "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n*, 489 U.S. at 792–93, *quoted in CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 422 (2016). And "[t]his change must be marked by 'judicial imprimatur.'" *CRST*, 578 U.S. at 422. In other words, "[a] plaintiff 'prevails,' . . . 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Lefemine*, 568 U.S. at 4 (citation omitted). "[A]n injunction or declaratory judgment, like a damages award, will usually satisfy that test." *Id.* And "the prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Texas State Teachers Ass'n*, 489 U.S. at 791–92 ("If the plaintiff has succeeded on '*any significant issue* in litigation which achieve[d] *some of the benefit* the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind.") (alteration in original) (emphasis added).

23

**I.    Plaintiffs are prevailing parties under applicable Supreme Court precedent.**

    **A.    *Winter* announced a new, more stringent merits-based standard for obtaining a preliminary injunction.**

In *Winter*, the Supreme Court recited the general rule that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely to succeed on the merits*, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  555 U.S. at 20 (emphasis added).  The Court also considered whether there must be a possibility or likelihood of irreparable harm to issue a preliminary injunction.  *Id.* at 21.  The Court determined that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Id.* at 22.

The *Winter* standard is more stringent than previous standards used in this circuit.  For example, in *Henderson* this Court noted how "*Winter* requires a *likelihood* of irreparable injury, a higher standard" than the pre-*Winter* test embodied by the Fourth Circuit's prior holdings in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).  *Henderson ex rel. Nat'l Labor Relations Bd. v. Bluefield Hosp. Co.*, 902 F.3d 432, 438 n.* (4th Cir. 2018); *see also Veasey v. Wilkins*, 158 F. Supp. 3d 466, 469 (E.D.N.C. 2016) (noting the preliminary injunction standard "has changed significantly" after

24

*Winter*).  Importantly, *Winter* requires that a plaintiff must "clearly demonstrate that [she] will *likely succeed* on the merits." *Veasey*, 158 F. Supp. 3d at 469.  This is in stark contrast to the prior standard, which permitted a plaintiff to obtain a preliminary injunction based only on establishing that the "case presents a 'substantial question'" on the merits. *Compare Smyth*, 282 F.3d at 276, *with Winter*, 555 U.S. at 20.  The District Court correctly used the *Winter* standard when deciding Plaintiffs' Motion for Preliminary Injunction. *Stinnie*, 355 F. Supp. 3d at 527–32.

### B.    *Lefemine* **clarified when a plaintiff is a prevailing party.**

As the Supreme Court made clear in *Lefemine*, "[a] plaintiff prevails . . . when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." 568 U.S. at 4 (internal quotations and citation omitted).  In making this inquiry, monetary relief is not required; injunctive relief standing alone can be sufficient. *See id.*

*Lefemine* is illustrative of the reasons why Plaintiffs in this case are prevailing parties.  In that case, the plaintiff filed a complaint alleging that county police officers had violated his First Amendment rights. *See id.* at 3.  The police had been threatening to charge him with breaching the peace for holding graphic signs during an anti-abortion protest. *See id.* at 2–3.  The district court, after

considering "dueling motions for summary judgment . . . permanently enjoined the defendants from engaging in content-based restrictions on [plaintiff's] display of graphic signs under similar circumstances." *Id.* at 3 (internal quotations and citation omitted). The district court, however, denied plaintiff damages and attorneys' fees. *Id.* at 3–4. This Court affirmed, but the Supreme Court vacated that decision. *Id.* at 4–5.

The Supreme Court noted that "[it has] repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy [the prevailing party] test." *Id.* at 4. The "[plaintiff] brought [the] suit in part to secure an injunction to protect himself from the defendants' standing threat of sanctions. And he succeeded in removing that threat." *Id.* at 4–5. As a result, the district court's injunction "worked the requisite material alteration in the parties' relationship." *Id.* at 5.

At bottom, as the Supreme Court's analysis in *Lefemine* makes clear, the focal point of the analysis on a fee petition is the before-and-after situation of the parties. *See id.* at 5 ("Before the ruling, the police intended to stop Lefemine from protesting with his signs; after the ruling, the police could not prevent him from demonstrating in that manner."). This before-and-after analysis determines whether there exists the "material alteration of the legal relationship of the parties" that is the "touchstone of the prevailing party inquiry." *CRST*, 578 U.S. at 422

26

(citation omitted). And, as described below, a before-and-after analysis of the preliminary injunction shows that Plaintiffs prevailed in this case.

**C.    Reading *Winter*, *Lefemine*, and other relevant Supreme Court precedent together compels the conclusion that Plaintiffs are prevailing parties.**

The above-cited Supreme Court case law compels the conclusion that Plaintiffs are prevailing parties entitled to attorneys' fees.

First, the preliminary injunction met the newer, more stringent preliminary injunction standard announced in *Winter*. *See generally Stinnie*, 355 F. Supp. 3d 514. It was a merits-based preliminary injunction based on Plaintiffs' likelihood of success. *See id.* at 532.

Second, the preliminary injunction provided the requisite judicial imprimatur. *See CRST*, 578 U.S. at 422 (recognizing *Buckhannon*'s requirement that the change achieved by a prevailing party must have judicial imprimatur); *Lefemine*, 568 U.S. at 4 (recognizing injunctive relief can be sufficient for prevailing party status); *see also People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233 (3d Cir. 2008) (reciting that "[a] preliminary injunction issued by a judge carries all of the judicial imprimatur necessary to satisfy *Buckhannon*") (internal quotations and citation omitted).

Third, the preliminary injunction materially altered the Commissioner's behavior. *See Lefemine*, 568 U.S. at 4–5. It enjoined the unconstitutional

application of § 46.2-395 against Plaintiffs.  (*See* JA843.)  Stopping the harm

caused by the unconstitutional application of § 46.2-395 was the heart of the

litigation, and Plaintiffs won on it.  (*Compare* JA268–69 (relief requested in the

amended complaint), *with* JA843 (relief granted in the preliminary injunction).)

Fourth, that material alteration directly benefitted Plaintiffs, *see Lefemine*,

568 U.S. at 4–5, by halting the unconstitutional operation of § 46.2-395.  (JA843.)

Before the preliminary injunction, § 46.2-395 harmed Plaintiffs by depriving them

of their driver's licenses for failure to pay court debt with no process to determine

their ability to pay.  After, and as a direct result of the preliminary injunction, the

Commissioner could no longer unconstitutionally enforce § 46.2-395 against

Plaintiffs, the Commissioner had to lift Plaintiffs' suspensions under § 46.2-395,

and, if any Plaintiff had a driver's license suspended solely under § 46.2-395, the

Commissioner was required to reinstate that driver's license without requiring the

payment of any statutorily mandated reinstatement fees.  This is precisely the sort

of legal change the authorities contemplate.

Fifth, like the relief granted in *Lefemine*, the relief granted in this case was

never "reversed, dissolved, or otherwise undone by the final decision in the same

case." *Planned Parenthood*, 931 F.3d at 538 (quoting *Sole v. Wyner*, 551 U.S. 74,

83 (2007)) (recognizing that vacatur for mootness does not deprive plaintiffs who

28

secure a preliminary injunction of "prevailing party" status, as would "an active, merits-based undoing" like that in *Sole*).

### D. *Buckhannon*'s catalyst theory rule does not bar Plaintiffs' Fee Petition.

Plaintiffs' theory for entitlement to attorneys' fees is not the catalyst theory. So, the anti-catalyst theory rule set forth by the Supreme Court in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), has no applicability here. Any attempt by the Commissioner to ask this Court to apply *Buckhannon*'s anti-catalyst theory rule is misguided for at least three reasons.

First, Plaintiffs do not advance the "catalyst theory" that *Buckhannon* disavowed. *See* 532 U.S. at 603–10. The "'catalyst theory' . . . posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a *voluntary change* in the defendant's conduct." *Id.* at 601 (emphasis added). But Plaintiffs did not obtain their requested relief because the Commissioner had a change of heart.

Plaintiffs obtained their relief because the District Court enjoined the Commissioner through its judicial imprimatur in the form of a preliminary injunction. *Stinnie*, 355 F. Supp. 3d at 532 (finding it likely that § 46.2-395 was unconstitutional); (JA843). The preliminary injunction was not "voluntary." *E.g.*, *United States v. Blackman*, No. 3:04CV00046, 2005 WL 2675095, at *6 (W.D. Va.

29

Oct. 19, 2005) (Moon, J.) (finding the defendant to be in criminal contempt for violating an injunction), *aff'd,* No. 06-4167, 2007 WL 1578278 (4th Cir. May 31, 2007); *Enovative Techs., LLC v. Leor*, 86 F. Supp. 3d 445, 446 (D. Md. 2015) (finding that the "Defendant [was] in civil contempt for violating the [district court's] Preliminary Injunction"); *see also Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 949 (D.C. Cir. 2005) (noting the "injunction, not the Secretary's voluntary change in conduct, afforded Milk Producers the relief they sought"). Plaintiffs' Fee Petition asked the District Court to determine whether their success in obtaining the preliminary injunction, which granted them the relief they requested, makes them prevailing parties.  The answer is clear because of the Supreme Court's analysis in *Lefemine*, detailed above.

Second, *Buckhannon* does not bar Plaintiffs who obtain preliminary injunctions from prevailing party status.  *See*, *e.g.*, *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008) ("*Buckhannon* does not stand for the proposition that a defendant should be allowed to moot an action to avoid the payment of the plaintiff's attorney's fees when a district court grants a preliminary injunction based upon an unambiguous indication of probable success on the merits."); *Select Milk*, 400 F.3d at 946 ("We are not alone in the view that *Buckhannon* does not reject the possibility that preliminary injunctions may be sufficient in some certain circumstances to render plaintiffs 'prevailing parties' under federal fee-shifting

30

statutes."); *Kansas Judicial Watch v. Stout*, 653 F.3d 1230, 1237–38 (10th Cir, 2011) (recognizing that *Buckhannon* does not bar a party who obtained a preliminary injunction from being deemed a prevailing party). That much is clear because, six years after *Buckhannon*, the Supreme Court in *Sole v. Wyner* noted it was still an open question. *See* 551 U.S. at 86 ("We express no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees.").

Third, even *Buckhannon* itself indicated a final judgment on the merits was not a requirement. *Buckhannon*, 532 U.S. at 604 (noting it has "held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees"); *see also Select Milk*, 400 F.3d at 946 (noting the Supreme Court showed in *Buckhannon* "that a plaintiff need not obtain a final judicial determination on the merits in order to be considered a 'prevailing party'"). For all of these reasons, *Buckhannon* does not bar the relief requested in Plaintiffs' Fee Petition.

II.    **Precedent from other courts around the country supports a finding that Plaintiffs are prevailing parties.**

A.    **The Fourth Circuit is alone in denying that obtaining a preliminary injunction can be sufficient to confer prevailing party status.**

Circuits across the country recognize that obtaining a preliminary injunction is sufficient to confer prevailing party status, especially when, like here, the preliminary injunction is grounded in a merits-based determination. *See People Against Police Violence*, 520 F.3d at 232-33 ("[N]early every Court of Appeals to have addressed the issue has held that relief obtained via a preliminary injunction can, under appropriate circumstances, render a party 'prevailing.'"). Although the Commissioner may try to characterize the cases as splintered, in actuality they are remarkably unified and consistent. Indeed, ten of the eleven circuit courts that have addressed this question have held that a preliminary injunction on the merits is sufficient to attain prevailing-party status, even where the case is later rendered moot:

**Second Circuit:** *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997) ("When a party receives a stay or preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits."); *see, e.g.*, *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014).

32

**Third Circuit:** *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233–34 (3d Cir. 2008) (affirming the trial court's determination that plaintiffs were prevailing parties when plaintiffs received a preliminary injunction on the merits, the defendant did not appeal the preliminary injunction and was bound by it for a period of time, and defendant avoided a final judgment by changing the law in such a way that gave plaintiffs the requested relief).

**Fifth Circuit:** *Dearmore v. City of Garland*, 519 F.3d 517, 526 (5th Cir. 2008) (concluding plaintiff was a prevailing party because plaintiff obtained a preliminary injunction even though the case was mooted before the final judgment when the defendant amended the law at issue).

**Sixth Circuit:** *Planned Parenthood S.W. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019) (holding that a preliminary injunction on the merits that was later rendered moot is sufficient to convey prevailing-party status), *cert. denied*, 141 S. Ct. 189 (2020).

**Seventh Circuit:** *Dupuy v. Samuels*, 423 F.3d 714, 720 (7th Cir. 2005) (holding that a preliminary injunction on the merits that is vacated as moot is sufficient for prevailing-party status).

**Eighth Circuit:** *Rogers Group, Inc. v. City of Fayetteville*, 683 F.3d 903, 904–07, 910–11 (8th Cir. 2012) (holding that a plaintiff was a prevailing party

33

when a preliminary injunction on the merits blocked defendant from enforcing a law, even though the defendant later mooted the case by repealing the ordinance).

**Ninth Circuit:** *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717–18 (9th Cir. 2013) ("[W]hen a plaintiff wins a preliminary injunction and the case is rendered moot before final judgment, either by the passage of time or other circumstances beyond the parties' control, the plaintiff is the prevailing party eligible for a fee award.") (expanding prior rulings and holding that plaintiff was a prevailing party when it won a preliminary injunction that remained in effect until the parties mooted the case through settlement where the settlement agreement rendered the relief of the preliminary injunction sufficiently enduring to constitute a material alteration of the parties' legal relationship).

**Tenth Circuit:** *Kansas Judicial Watch v. Stout*, 653 F.3d 1230, 1238, 1240 (10th Cir. 2011) ("[I]f a preliminary injunction satisfies the relief-on-the-merits requirement, the plaintiff qualifies as a 'prevailing party' even if events outside the control of the plaintiff moot the case.") (holding that plaintiffs were prevailing parties when they received a preliminary injunction on the merits that provided some of the complaint's requested relief, where the preliminary injunction persisted until "the actions of third parties mooted the case").

**Eleventh Circuit:** *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1355–56 (11th Cir. 2009) ("[A] preliminary injunction on the merits entitles one to

prevailing party status and an award of attorney's fees.") (alteration in original) (holding that plaintiffs were prevailing parties when they prevailed on a preliminary injunction that stayed in place "until Georgia repealed the law at issue").

**D.C. Circuit:** *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 942 (D.C. Cir. 2005) (holding that a preliminary injunction subsequently rendered moot is sufficient to establish prevailing-party status where it "resulted in a court-ordered change in the legal relationship between the parties and gave [plaintiffs] the concrete and irreversible redress that they sought").

Two of the remaining three circuits—the First and the Federal Circuits—have not addressed the issue. Indeed, the Federal Circuit does not have any subject matter jurisdiction over Section 1983 claims in the first instance and does not confront the issue. And although the First Circuit has not itself directly addressed the issue, *see Sinapi v. Rhode Island Bd. of Bar Examiners*, 910 F.3d 544, 552 (1st Cir. 2018) (denying prevailing party status when preliminary relief was not based on the merits but expressly declining to otherwise reach the issue), the district courts within the First Circuit have followed the majority rule, *see, e.g.*, *Tri-City Cmty. Action Program, Inc. v. City of Malden*, 680 F. Supp. 2d 306, 314 (D. Mass. 2010).

35

This Court is the only circuit to adopt the bright-line rule that preliminary injunctions are not sufficient to confer prevailing-party status under Section 1988, and it did so in 2002, shortly after *Buckhannon* was decided, before the Supreme Court's decisions in *Winter* and *Lefemine*, and before nearly all of the cases cited above.

**B.     This Court should take particular notice of the Sixth Circuit's decision in *Planned Parenthood*, where the Supreme Court recently denied certiorari.**

In *Planned Parenthood Southwest Ohio Region v. Dewine*, the Sixth Circuit considered whether Planned Parenthood was a prevailing party for purposes of fees under 42 U.S.C. § 1988.  931 F.3d at 538–42.  There, the parties did "not dispute that the preliminary injunction Planned Parenthood obtained qualifies as a decision on the merits [that bore] the necessary judicial *imprimatur*."  *Id.* at 539.  Further, the Sixth Circuit recognized that the preliminary injunction was a merits-based determination, and Planned Parenthood was not trying to make a *Buckhannon*-foreclosed "catalyst theory" argument.  *See id.*  Instead, the defendant argued that "Planned Parenthood's preliminary injunction d[id] not meet the standard of 'material alteration.'"  *Id.*

The Sixth Circuit determined that Planned Parenthood's preliminary injunction win resulted in a material alteration.  *Id.*  Planned Parenthood's relief "was not 'reversed, dissolved, or otherwise undone by the final decision in the

same case,'" because the case was dismissed as moot rather than resolved by an "active, merits-based undoing" of the preliminary injunction. *Id.* at 539-40 (citing, among other cases, *Sole*, 551 U.S. at 83). Therefore, Planned Parenthood was a prevailing party. *Id.* at 542. In coming to that conclusion, the Sixth Circuit rejected the application of a *per se* rule, describing the "necessary inquiry [as] 'contextual and case-specific.'" *Id.* at 541 (citation omitted). The Sixth Circuit also rejected the defendant's attempt to minimize Planned Parenthood's win as "miniscule" with relief that was "possibly zero." *Id.* ("Despite not having obtained the 'primary relief' it sought, Planned Parenthood's success on this single claim, and the narrowed preliminary relief it obtained as a result, suffices to render it a 'prevailing party.'"). And the Sixth Circuit dismissed the defendant's attempt to argue that Planned Parenthood did not obtain any benefit or change in the "legal relationship between the parties." *Id.* at 541–42. Instead, the Sixth Circuit concluded that "the preliminary injunction altered the relationship between Planned Parenthood and the state during the concrete period of time that the plaintiffs required the benefit of that alteration." *Id.* at 542.

On further appeal, the Supreme Court denied *certiorari*. *Yost v. Planned Parenthood S.W. Ohio Region*, No. 19-677, 141 S. Ct. 189 (U.S. July 2, 2020). Of course, there is technically no precedential value to a denial of certiorari. *Teague v. Lane*, 489 U.S. 288, 296 (1989) ("The 'variety of considerations [that] underlie

37

denials of the writ' . . . counsels against according denials of certiorari any

precedential value.") (first alteration in original).  Nevertheless, it is noteworthy

that the Supreme Court recently declined to take up the Sixth Circuit's decision on

this issue.

Planned Parenthood prevailed.  So did Plaintiffs here.  Here, Plaintiffs won a

preliminary injunction.  *See Stinnie*, 355 F. Supp. 3d at 532–33.  That preliminary

injunction was on the merits.  *See id.* at 527–31.  That preliminary injunction

conveyed the appropriate judicial imprimatur.  Plaintiffs are not advancing a

*Buckhannon*-foreclosed "catalyst theory" argument.  (*See* JA1052–55.)  Plaintiffs'

win resulted in a material alteration in the legal relationship between the parties.

(*See* JA843–44 (order granting the preliminary injunction).)  Before the

preliminary injunction, Plaintiffs were harmed by the unconstitutional application

of § 46.2-395; after the preliminary injunction they could not be.  (*See id.*)  The

relief Plaintiffs obtained "altered the relationship between [Plaintiffs] and the

[Commonwealth] during the concrete period of time that the plaintiffs required the

benefit of that alteration."  *Planned Parenthood*, 931 F.3d at 542; (*see also* JA843).

In both *Planned Parenthood* and *Stinnie*, the preliminary injunction restrained

enforcement of the challenged law until actions by non-parties mooted each case.

Plaintiffs' relief was never "'reversed, dissolved, or otherwise undone by the final

decision in the same case.'" *Planned Parenthood*, 931 F.3d at 539 (citing *Sole*, 551 U.S. at 83). Plaintiffs are prevailing parties.

### C. Additional cases that are directly analogous to this one in other circuits support a finding that Plaintiffs are prevailing parties.

The Eleventh Circuit's prevailing party analysis in *Common Cause/Georgia v. Billups* provides a useful framework for this case. *See generally* 554 F.3d 1340. There, plaintiffs challenged the constitutionality of a voter ID statute. *See id.* at 1346. The district court granted a preliminary injunction, preventing the statute's enforcement. *See id.* The district court decided plaintiffs "had proved a substantial likelihood of success on the merits of their claims." *Id.* The defendant appealed the preliminary injunction, but while the appeal was pending, the legislature repealed the statute and replaced it with a new one. *See id.* Litigation continued regarding the new statute, and plaintiffs sought fees regarding the challenge to the earlier statute. *See id.* at 1346–49.

The Eleventh Circuit determined that plaintiffs were "prevailing parties because the preliminary injunction they obtained materially altered their legal relationship with the election officials." *Id.* at 1356. And the "injunction remained effective until Georgia repealed the law at issue." *Id.* Georgia repealed its statute, and Virginia repealed § 46.2-395. But that fact does not detract from the parties' prevailing party status when the preliminary injunction granted relief on the merits and remained in effect until the case was dismissed after being mooted by a

39

legislative fix, as happened in both cases.

The D.C. Circuit's decision in *Select Milk* also provides helpful guidance. *See Select Milk*, 400 F.3d 939.  In that case, the plaintiffs challenged the Secretary of Agriculture's proposed rule that would have raised the price of Class III butterfat.  *See id.* at 941.  Had the new rule gone into effect, plaintiffs would have lost millions of dollars.  *See id.*  But the district court "granted Milk Producers' motion for a preliminary injunction enjoining the Secretary from imposing a separate price for Class III butterfat.  The Government did not appeal . . . .  Instead, the Secretary of Agriculture issued a new rule that did not include a separate price for Class III butterfat."  *Id.*  Then both parties "stipulated to dismissal of the case as moot."  *Id.*

The D.C. Circuit concluded that under these facts Milk Producers were prevailing parties.  *See id.* at 950.  The court first noted that "there was a court-ordered change in the legal relationship between Milk Producers and the Secretary."  *Id.* at 947.  Specifically, the preliminary injunction stopped the new regulation's enforcement.  *See id.*  This relief was "concrete and irreversible" because of the money Milk Producers avoided losing.  *See id.*  Second, the court determined the "preliminary injunction was a judgment rendered in favor of Milk Producers."  *Id.* at 948.  Third, the preliminary injunction gave Milk Producers judicial relief.  *See id.* at 949.  Before the preliminary injunction Milk Producers

faced the specter of the new regulation; after the injunction, they did not. *Compare Lefemine*, 568 U.S. at 5, *with Select Milk*, 400 F.3d at 948–49.

Like in *Select Milk*, the District Court ordered a change in relationship among the parties in this case. (JA842; JA843–44.) The Commissioner could have appealed the preliminary injunction but did not do so. 28 U.S.C. § 1292(a)(1) (granting the courts of appeals jurisdiction over "[i]nterlocutory orders . . . granting . . . injunctions"); *see also Select Milk*, 400 F.3d at 948 (noting how "it is well established that preliminary injunctions are appealable orders"); *Swift Beef Co. v. Alex Lee, Inc.*, 760 F. App'x 160, 163 (4th Cir. 2019) (same). The District Court's preliminary injunction granted Plaintiffs' requested relief and protected them from the unconstitutional deprivation of their licenses under § 46.2-395. The relief granted safeguarded Plaintiffs' rights and shielded them from additional financial harm. (JA843.) For example, the Commissioner had to remove § 46.2-395 suspensions from Plaintiffs' driver's licenses, and the Commissioner could not charge a fee to reinstate those licenses suspended due to § 46.2-395. (*Id*.) The relief granted also made it so that the Commissioner could not enforce § 46.2-395 against Plaintiffs without notice and a hearing. (*Id.*) In doing so, the Court gave Plaintiffs new opportunities to seek and maintain stable employment, access to medical care, access to opportunities for their children, access to religious worship, and the like. *See*, *e.g.*, *Stinnie*, 355 F. Supp. 3d at 521 (finding that that "[l]oss of a

driver's license adversely affects people's ability to gain and maintain employment, often leading to a reduction in income"); *id.* at 531 n.8 ("Not only does Plaintiffs' testimony emphasize their need for a driver's license to meet non-economic needs, such as medical care for themselves and their families, but evidence also shows that the majority of Virginians rely on cars to travel to work, and that the lack of a license reduces job opportunities.") (internal citations omitted); *id.* at 532 (determining that "[m]oney alone would not alleviate Plaintiffs' harms or release Plaintiffs from the cycle of hardships caused by § 46.2-395" but the relief granted could). Plaintiffs received a judgment in their favor that gave them tangible, judicial relief.

*Common Cause/Georgia* and *Select Milk* are factually analogous cases that meaningfully considered how a preliminary injunction was sufficient to confer prevailing party status on those plaintiffs. Those courts would find Plaintiffs here to be entitled to fees, and this Court should as well.

## III.  This Court should not apply *Smyth* to bar Plaintiffs from prevailing party status.

"Our federal judicial system requires that when the Supreme Court issues an opinion, its pronouncements become law of the land." *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 771 (9th Cir. 2008). As discussed in Section I above, recent Supreme Court precedent compels this Court to find Plaintiffs are prevailing parties. Nevertheless, at the Commissioner's urging, the District Court read this

42

Court's decision in *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002), to require denial of Plaintiffs' Fee Petition. But even if *Smyth* at one point would have suggested Plaintiffs were not prevailing parties, that case no longer holds any weight. It has been nullified by more recent Supreme Court cases, and courts from around the country and even within the Fourth Circuit have recognized its obsolescence. Just as this Court recognized that the *Blackwelder* standard stood "in fatal tension" with the Supreme Court's articulation of the standard in *Winter*, *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345-47 (4th Cir. 2010) (per curiam), *vacated on other grounds*, 559 U.S. 1089 (2010), *Smyth* stands in fatal tension with *Winter* and *Lefemine*. This Court should not apply *Smyth* here, for at least two reasons.

First, *Smyth* was decided under a different, and since discarded, standard for granting a preliminary injunction. *Compare Smyth*, 282 F.3d at 276 (using the since abandoned test for a preliminary injunction under *Blackwelder*), *with Winter*, 555 U.S. at 20 (focusing the preliminary injunction standard on the plaintiff's likelihood of success on the merits); *see also Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013) (noting how after *Winter* this Court "recalibrated" its preliminary injunction test that had been embodied in *Blackwelder*). As this Court explained in *Real Truth*, "[t]he *Winter* requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the

43

*Blackwelder* requirement that the plaintiff demonstrate only a grave or serious question for litigation." 575 F.3d at 346-47. The *Winter* standard also requires a clear showing of the plaintiff's likelihood of irreparable harm, *id.* at 347, requires consideration of the public interest, *id.*, and does not permit a relative strength in one factor to make up for a relative deficiency in another, *id. See Veasey*, 158 F. Supp. 3d at 469-70. This matters because the very core of *Smyth* revolved around concerns regarding the "necessarily abbreviated" nature of the analysis of the merits in preliminary injunctions at the time. *See Smyth*, 282 F.3d at 276. It was the sliding scale aspect of *Blackwelder* that troubled the *Smyth* Court in particular, because it weakened the merits inquiry. *Smyth*, 282 F.3d at 277 ("A plaintiff's burden to show a likelihood of success on the merits, in other words, varies according to the harm the plaintiff would be likely to suffer absent an injunction."). So when the Supreme Court issued *Winter*, which changed the preliminary injunction analysis, it pulled the chair out from under *Smyth*.

Second, *Smyth* predates nearly all of the most relevant Supreme Court precedent, including not only *Winter* but also *Lefemine*. In light of this subsequent Supreme Court precedent, this Court should no longer follow *Smyth*. *See Faust v. S.C. State Highway Dep't*, 721 F.2d 934, 940 (4th Cir. 1983) (noting, in a panel decision, that past Fourth Circuit authority was "not a viable authority and should no longer be followed" in light of later-decided Supreme Court decisions).

44

"[W]here subsequent Supreme Court decisions 'clearly undermine[]' a panel precedent, [this Court] need not follow that panel precedent." *Payne v. Taslimi*, 998 F.3d 648, 655 n.4 (4th Cir. 2021) (second alteration in original) (quoting *United States v. Williams*, 155 F.3d 418, 421 (4th Cir. 1998)). Instead, this Court has a duty to follow the later-decided Supreme Court precedent. *See id.* (noting that horizontal stare decisis is overcome by vertical stare decisis); *see also Etheridge v. Norfolk & W. Ry.*, 9 F.3d 1087, 1090–91 (4th Cir. 1993) (determining that later-decided Supreme Court precedent "rejected the reasoning" a prior Fourth Circuit precedent was based on, and, as a result, the prior Fourth Circuit precedent was no longer correctly reciting the law).

Other circuits have recognized *Smyth*'s outlier status. *See*, *e.g.*, *Select Milk*, 400 F.3d at 946 (disagreeing with *Smyth*'s unsupportable per se rule); *People Against Police Violence*, 520 F.3d at 233 n.4 (specifically declining to follow *Smyth*). Indeed, even within this circuit, the Eastern District of North Carolina has carefully examined the very same issues at play here in an analogous case and concluded that this Court's "holding in *Smyth* that a plaintiff who is awarded a preliminary injunction cannot constitute a prevailing party under § 1988 is untenable in light of *Lefemine*, the changed merits standard following *Winter*, and the facts of this case." *Veasey*, 158 F. Supp. 3d at 470.

45

*Veasey*'s prevailing party analysis is on all fours with this case.  Veasey

wanted to receive a concealed carry permit.  *See id.* at 468.  But, at the time, a

North Carolina statute, N.C. Gen. Stat. § 14-415.12, "required a person to

demonstrate American citizenship prior to obtaining a concealed carry permit."  *Id.*

at 468.  Veasey moved for a preliminary injunction to prevent defendants from

"enforcing the citizenship requirement of NCGS 14-415.12(a)(1) against lawful

permanent residents."  *See id.*  The Court granted the motion.  *Id.*

After entry of the preliminary injunction, Veasey applied for her permit, and

the defendant sheriff granted it.  *See id*.  About two months later, "Governor

McCrory signed House Bill 562, which amended [§ 14.415.12] to eliminate its

citizenship requirement, into law."  *Id.*  The district court granted the defendant's

motion to dismiss the case as moot but "retained jurisdiction to decide the issue of

attorney's fees."  *Id.*

The district court noted how *Lefemine*'s "facts strongly parallel[ed]" the

facts of its case.  *See id.* at 470.  It further stated that "the reasoning in *Lefemine*

counsels that the key question is whether a plaintiff succeeded in obtaining a

judicially-sanctioned benefit."  *Id.*  The district court completed the required

before-and-after comparison and awarded attorney's fees.  *Compare Lefemine*, 568

U.S. at 5, *with Veasey*, 158 F. Supp. 3d at 470, 473 ("*Before* the preliminary

injunction ruling, defendants intended not to give Ms. Veasey a concealed carry

permit; *after* the ruling, Sheriff Wilkins issued her a concealed permit.") (emphasis added).  Moreover, *Veasey* noted that a post-*Winter* preliminary injunction was necessarily an imprimatur that the plaintiff had "clearly demonstrate[d] that [he] will *likely succeed* on the merits."  158 F. Supp. 3d at 469 (quoting *Real Truth*, 575 F.3d at 346–47) (second alteration in original).

*Veasey* correctly applied *Lefemine*, and the same prevailing party analysis should apply here.  Plaintiffs received a preliminary injunction, on the merits, in a 42 U.S.C. § 1983 action.  (JA843.)  That preliminary injunction awarded relief requested, leading to a material change in the legal relationship between Plaintiffs and the Commissioner.  (*Id.*)  For example, the District Court ordered Plaintiffs' suspensions lifted and their driver's licenses reinstated without payment of reinstatement fees, unless there was another suspension not imposed under § 46.2-395.  (*Id.*)  And before Plaintiffs could put on their full case at trial, the District Court stayed the case to give the General Assembly an additional chance to repeal § 46.2-395, which ultimately mooted the case.  (JA955.)  These facts largely track those in *Veasey*.  There is no principled reason to come to a different outcome.

## IV.    <u>Strong public policy reasons support granting Plaintiffs' Fee Petition.</u>

### A.    **Awarding fees to civil rights litigators, who take on cases of significant constitutional concern because it is the right thing to do, comports with important policy considerations.**

Plaintiffs did important work here.  Not only does the law compel a finding that Plaintiffs are prevailing parties, but also strong public policy concerns counsel against the Commissioner's attempt to thwart Plaintiffs from recovering their litigation expenses.

Taking on the Commonwealth of Virginia in this litigation was a huge commitment both in time and money on the part of Plaintiffs and their attorneys. 42 U.S.C. § 1988 encourages counsel to devote the energy needed to do important civil rights work.  Plaintiffs in this case, and indeed other Plaintiffs with meritorious civil rights actions, deserve to have sophisticated legal representation, even if they cannot afford it.  Congress provided for just that:

> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer.  If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

S. Rep. No. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910. Time and time again, the Supreme Court has recognized the important underpinnings of § 1988.  *See City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) ("Congress enacted § 1988 specifically because it found that the private

48

market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process."); *Hensley*, 461 U.S. at 429 ("The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances.").

The future of meaningful civil rights enforcement depends on awarding fees and expenses in civil right actions. *See* S. Rep. No. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 5910 ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."); *id.* at 5, 1976 U.S.C.C.A.N. at 5913 ("We find that the effects of such fee awards are ancillary and incident to securing compliance with these laws, and that fee awards are an integral part of the remedies necessary to obtain such compliance."). Further, "[t]he remedy of attorneys' fees has always been recognized as particularly appropriate in the civil rights area, and civil rights and attorneys' fees have always been closely interwoven." *Id.* at 3, 1976 U.S.C.C.A.N. at 5910. Failing to award litigation expenses to parties like Plaintiffs here would seriously hinder 42 U.S.C. § 1983 litigation and the constitutional guarantees promised to all regardless of race or poverty.

The Commissioner has fought Plaintiffs for more than five years through two separate motions to dismiss, requests for stays of discovery, motions to compel, motions to exclude Plaintiffs' experts, a preliminary injunction hearing, and on and on. (JA9–23.) Almost two-and-a-half years passed between the filing of the initial Complaint in this case and the entry of the preliminary injunction. (JA9–17.) That entire time, the Commissioner fought to keep an unconstitutional statute in place. Allowing the General Assembly's late-game repeal of the statute after entry of the preliminary injunction to foil Plaintiffs' ability to recover their fees would allow states to employ litigation tactics to delay and keep unconstitutional laws on the books, mooting cases through legislative action at the last possible moment. For these reasons, this Court should reject the Commissioner's attempt to frustrate the way in which meritorious civil rights litigation is encouraged.

### B.    The Commissioner's policy arguments have been misguided at best.

The Commissioner proffered policy arguments in support of applying the bright-line rule in *Smyth* to deny Plaintiffs' Fee Petition below (*see* JA1068, 1093–95), but none of those arguments carries any water.

First, the Commissioner has argued that the bright-line rule provides "clarity" to "courts and litigants." (*See* JA1093.) This argument fails in at least two ways. To start, this Court should reject the idea that the approach taken in all

50

of the other circuits to address the issue is simply too complicated to be workable. Courts and litigants in the Fourth Circuit are just as capable as those in other circuits. Further, although the Commissioner's bright-line rule might be clear, that does not make it right or just. As outlined above, Plaintiffs' reading of the relevant Supreme Court cases is correct and comports with important public policy concerns.

Second, the Commissioner has argued that a bright-line rule helps the government decide "how to respond" when challenged by constitutional litigation. (*See* JA1094.) But, of course, one would hope the relevant, and overriding, consideration for the government would be doing the right thing. *See* Va. Const. art. I, § 3 ("That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community[.]"); Va. Code § 49-1 (requiring all officers in the Commonwealth to swear they will "support the Constitution of the United States, and the Constitution of the Commonwealth of Virginia"). And the right thing should not include defending an unconstitutional statute by applying scorched-earth litigation tactics in an attempt to wear down indigent Plaintiffs until it becomes clear the State has no hope of success.

The Commissioner talks about "the costs and benefits of amending a law or changing a policy" as if the value of the Commonwealth's laws can be reduced to a spreadsheet. (*See* JA1094.) But for years the Commissioner ignored Plaintiffs'

51

household budgets.  For years, the Commissioner let this unconstitutional regime continue to deprive hundreds of thousands of Virginians of their dignity and the chance to raise themselves up from the vicious cycle of poverty.  (*See generally* JA27–81 (Complaint); JA226–70 (First Amended Complaint).)  For years, the Commissioner imposed a "nightmarish spiral" that trapped Plaintiffs.  *See Stinnie*, 734 F. App'x at 864 (Gregory, C.J., dissenting).

It is not a legitimate consideration for the government to want additional clarity concerning how to respond regarding its *unconstitutional* laws because it might have to pay the litigation expenses of those that dare to stand up and challenge them.  When the DMV decides to defend an unconstitutional law with the best lawyers it can muster and fights at every corner, it has to live with that decision when it loses on a merits-based preliminary injunction, even if the legislature later moots the law in an apparent attempt to stop the DMV "from continuing to incur costly legal fees."  (*See* JA1038–39 (quoting the Commissioner).)  This Court should deny the invitation to adopt the Commissioner's bright-line rule because it is both legally wrong and morally unsupportable.

<u>CONCLUSION</u>

Section 46.2-395 trampled upon Plaintiffs' constitutional rights.  The District Court rightly enjoined its enforcement, ending the "nightmarish spiral" that

had trapped Plaintiffs.  Plaintiffs are prevailing parties under Supreme Court

precedent.  And courts around the country are reaching that conclusion in factually

analogous cases.  This Court should do the same.  For these reasons, Plaintiffs ask

this Court to (1) reverse the decision of the District Court, (2) grant Plaintiffs' Fee

Petition, (3) hold that Plaintiffs are prevailing parties and their attorneys are

entitled to fees and other costs and expenses under 42 U.S.C. § 1988, and (4)

remand this case to the District Court for further proceedings.

### ORAL ARGUMENT STATEMENT

The issue presented for appeal warrants oral argument.  This Court's bright-

line rule in *Smyth* holding that a preliminary injunction can never be sufficient

relief to confer prevailing party status has been overruled *sub silentio* by

subsequent Supreme Court precedent and is an outlier with which almost all other

circuits disagree.  Should this Court continue to apply *Smyth*, it will reinforce the

existing circuit split on the question of whether a preliminary injunction can ever

confer prevailing party status, making the issue appropriate for *en banc* review and

consideration by the United States Supreme Court.  Moreover, when it applied

*Smyth* to deny the Fee Petition in this case, the District Court departed from the

well-reasoned decision by the District Court for the Eastern District of North

Carolina in *Veasey*, creating an internal split among the courts of this circuit.  In

light of the complexity of the legal issues involved and division both within this

circuit and among the circuits concerning the continued viability of *Smyth*,

Plaintiffs respectfully suggest that oral argument is needed and will assist the panel

in its decisional process.

Dated:  November 15, 2021

Respectfully submitted,

*/s/ Jonathan T. Blank*

Jonathan T. Blank
Benjamin P. Abel
MCGUIREWOODS LLP
323 Second Street SE, Suite 700
Charlottesville, VA 22902
T: (434) 977-2509
F: (434) 980-2258
*jblank@mcguirewoods.com*
*babel@mcguirewoods.com*

John J. Woolard
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4355
F: (804) 698-2055
*jwoolard@mcguirewoods.com*

Angela A. Ciolfi
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
T: (434) 529-1810
F: (434) 977-0558
*angela@justice4all.org*

Patrick Levy-Lavelle
LEGAL AID JUSTICE CENTER
626 East Broad Street, Suite 200
Richmond, VA 23219
T: (804) 643-1086
F: (804) 643-2059
*pat@justice4all.org*

Leslie Kendrick
580 Massie Road
Charlottesville, VA  22903
T: (434) 243-8633
F: (434) 924-7536
*kendrick@virginia.edu*

Tennille J. Checkovich
Michael Stark
200 Commerce Street
Smithfield, VA 23430
T: (757) 357-8151
F: (757) 365-3018
*tcheckovich@smithfield.com*
*mstark@smithfield.com*

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- This brief contains 12,017 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) because:

- This brief has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

*/s/ Jonathan T. Blank*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2021, I electronically filed the foregoing Opening Brief of Appellants with the Clerk of this Court using the CM/ECF System, which will send a notification of electronic filing to all counsel of record who are registered CM/ECF users, including counsel for Appellee.

<u>*/s/ Jonathan T. Blank*</u>

## Addendum:  Statute Involved

Pursuant to Federal Rule of Appellate Procedure 28(f), Plaintiffs submit this Addendum containing the "relevant parts" of the statute necessary to the resolution of the issue presented by this appeal:

**42 U.S.C. § 1988(b):**

**(b) Attorney's fees**

In any action or proceeding to enforce a provision of section 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .