No. 21-1756

# United States Court of Appeals for the Fourth Circuit

DAMIAN STINNIE, *ET AL*.,

*Appellants,*

v.

RICHARD HOLCOMB,

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(The Hon. Norman K. Moon)

**BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA, *ET AL*., IN SUPPORT OF APPELLANTS**

Theodore A. Howard
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
(202) 719-7000
thoward@wiley.law

*Attorney for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, *amici curiae* the American Civil Liberties Union of Virginia, the Center for Civil Justice, Equal Justice Under Law, Florida Legal Services, Inc., the Foundation for Individual Rights in Education, the Institute for Constitutional Advocacy and Protection at the Georgetown University Law Center, the Mississippi Center for Justice, the National Center for Law and Economic Justice, Public Justice Center, the Rutherford Institute, Tzedek DC, the Washington Lawyers' Committee for Civil Rights and Urban Affairs and the Western Center on Law and Poverty are tax-exempt nonprofit organizations.  None of the *amici* has a corporate parent, and no publicly-owned company owns 10% or more stock in any of the *amici*.

## **TABLE OF CONTENTS**

**Page(s)**

CORPORATE DISCLOSURE STATEMENT ....................................................... i

TABLE OF CONTENTS..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

IDENTITY AND INTEREST OF *AMICI CURIAE* ..................................................1

SUMMARY OF ARGUMENT .............................................................................3

ARGUMENT ........................................................................................................3

THE CATEGORICAL PROHIBITION AGAINST ACCORDING
"PREVAILING PARTY" STATUS TO A CIVIL RIGHTS PLAINTIFF
WHO OBTAINS A MERIT-BASED PRELIMINARY INJUNCTION
IS OBSOLETE........................................................................................................3

    A. *Smyth* Has Been Superseded by Subsequent Supreme Court Decisions.......3

    B. The *Smyth* Rule Cannot Be Reconciled with The Congressional Intent
       Underlying Section 1988……………………………………………………6

    C. The *Smyth* Rule Undermines the Utility of Preliminary Injunctions as A
       Vehicle For Early Resolution of Civil Rights Actions………………….…10

CONCLUSION....................................................................................................12

APPENDIX A ......................................................................................................14

CERTIFICATION OF COMPLIANCE ...............................................................19

CERTIFICATE OF SERVICE ............................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
    532 U.S. 598 (2001).................................................................9

*Etheridge v. Norfolk & W. Ry. Co.*,
    9 F.3d 1087 (4th Cir. 1993) .....................................................5

*Faust v. S.C. State Highway Dep't*,
    721 F.2d 934 (4th Cir. 1983) ...................................................5

*Furtado v. Bishop*,
    635 F.2d 915 (1st Cir. 1980).....................................................8

*Lefemine v. Wideman*,
    568 U.S. 1 (2012) (per curiam)................................................5

*Payne v. Taslimi*,
    998 F.3d 648 (4th Cir. 2021) ...................................................5

*Smyth ex rel. Smyth v. Rivero*,
    282 F. 3d 268 (4th Cir. 2002) ...........................................*passim*

*U.S. v. Williams*,
    155 F.3d 418 (4th Cir. 1998) ...................................................5

*Veasey v. Wilkens*,
    158 F.Supp.3d 466 (E.D.N.C. 2016) .....................................5,6

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)......................................................................5

**Statutes**

42 U.S.C. § 1988 ..............................................................*passim*

iii

**Other Authorities**

Thomas A. Eaton & Michael Wells, *Attorney's Fees, Nominal
    Damages, and Section 1983 Litigation*, 24 William & Mary Bill of
    Rights J. 829 (2016)........................................................................... 7-8


Paul D. Reingold *Requiem for Section 1983*, 3 Duke J. of Const. Law
    & Public Pol. 1 (2008) ...........................................................................7

## IDENTITY AND INTEREST OF AMICI CURIAE

The *amici curiae* are nonprofit public interest legal services organizations particularly focused on efforts to protect, promote and vindicate the civil rights and civil liberties of all persons, including with respect to matters of free speech, religious liberty, and racial and economic justice.[1] The *amici* pursue their respective missions to eradicate civil rights violations by enforcing local, state and federal civil rights laws through impact litigation and public policy advocacy, and much of the litigation in which the *amici* engage arises under statutes that provide for the shifting of attorneys' fees and litigation costs if the plaintiff is the prevailing party. For that reason, the decision of the district court that is the subject of this appeal is of particular interest and concern to the *amici* and those they serve.

Actions challenging governmental conduct that infringes civil rights in alleged violation of the Constitution and laws of the United States pursuant to 42 U.S.C. § 1983 are a common, and critical, element of the work in which the *amici* are engaged, and the attorneys' fees awards that *amici* obtain in those cases in which the parties they represent achieve a successful outcome may be crucial to their continuing financial viability. Accordingly, it is especially important, from the *amici's* perspective, that their interests be taken into account by this Court in its evaluation of a lower court

---

[1] A complete list of the *amici curiae* joining this brief, with information regarding the mission of each organization, is provided in Appendix A hereto.

1

determination that would deny an award of fees to civil rights plaintiffs notwithstanding the clear and compelling victory on the merits that those plaintiffs achieved.[2]

---

[2] No party or party's counsel authored this brief in whole or in part, and no such party or counsel made any monetary contribution intended to fund the preparation and/or submission of this brief. No person or entity other than the *amici curiae* and their undersigned counsel made any contribution to its preparation and submission. The parties have consented to the filing of this brief.

2

## SUMMARY OF ARGUMENT

*Amici* respectfully submit that the categorical prohibition against according "prevailing party" status to a civil rights plaintiff who successfully pursues a motion for preliminary injunction, as set forth in the *Smyth* decision given binding and dispositive effect by the district court in the proceedings below, must be rejected in this appeal for a host of compelling reasons.  First, the prohibition contravenes clearly articulated intervening Supreme Court precedent and cannot be reconciled with the position reached on this issue by the other federal appellate courts.  Second, the prohibition undermines Congressional intent as embodied in the fee-shifting provisions of 42 U.S.C. § 1988.  Third, and finally, the prohibition needlessly diminishes the practical utility of preliminary injunctive relief as a device pursuant to which Section 1983 actions may be resolved more efficiently and expeditiously.  For all of these reasons, as elaborated more fully below, *amici* strongly supports the Appellants' position that the judgment below must be reversed.

## <u>ARGUMENT</u>

## THE CATEGORICAL PROHIBITION AGAINST ACCORDING "PREVAILING PARTY" STATUS TO A CIVIL RIGHT PLAINTIFF WHO <u>OBTAINS A MERITS-BASED PRELIMINARY INJUNCTION IS OBSOLETE</u>

### A. *Smyth* Has Been Superseded By Subsequent Supreme Court Decisions

In *Smyth ex rel. Smyth v. Rivero*, 282 F. 3d 268 (4th Cir. 2002), a panel of this Court established a categorical rule that a civil rights plaintiff who succeeds in obtaining a favorable ruling on a motion for preliminary injunction may *never* be

3

characterized as a "prevailing party" on that basis for purposes of the fee-shifting provisions of 42 U.S.C. § 1988, irrespective of the nature or substance of the order granting relief and notwithstanding the fact that the injunction led to responsive action by the government as a result of which the case was dismissed as moot, leaving the injunctive order intact. *Id*. at 277 n.8 ("The preliminary injunction inquiry, because of the preliminary, incomplete examination of the merits involved and the incorporation (if not the predominance) of equitable factors, is ill-suited to guide the prevailing party determination regardless of how it is formulated.").

Notwithstanding the "thoughtful and compelling argument" presented by the Appellants in the proceedings below for a different result, the Magistrate Judge held in his recommended decision that because *Smyth* "has not been overruled by either the Fourth Circuit or the Supreme Court" (JA 1154), its holding was binding and required rejection of Appellants' petition seeking an award of fees. This was despite his conclusion that the preliminary injunction they obtained "constituted merits-based relief that materially altered the relationship between the parties [and that] carr[ied] all the necessary judicial imprimatur." JA 1148-49. The district court overruled Appellants' objections to the Magistrate Judge's recommendation, agreeing with the premise that "whether the Fourth Circuit would overrule *Smyth* … is at best, unclear. But, in any event, the Fourth Circuit is the court to make that determination, not this Court." JA 1264.

4

Respectfully, *amici* fully agree with and endorse Appellants' advocacy of the principle, acknowledged by this Court itself in prior decisions and reflected in *Veasey v. Wilkens*, 158 F.Supp.3d 466 (E.D.N.C. 2016), that this Circuit's courts may depart from an earlier circuit precedent under circumstances in which the foundation for that prior precedent has been undermined by subsequent pronouncements of the U.S. Supreme Court. *See* Appellants' Br. at 44-45; *see generally Payne v. Taslimi*, 998 F.3d 648, 655 n.4 (4th Cir. 2021); *U.S. v. Williams*, 155 F.3d 418, 421 (4th Cir. 1998); *Etheridge v. Norfolk & W. Ry. Co.*, 9 F.3d 1087, 1090-91 (4th Cir. 1993); *Faust v. S.C. State Highway Dep't*, 721 F.2d 934, 940 (4th Cir. 1983).

In accordance with this settled principle, the court below was free to acknowledge that both the analytical underpinnings of *Smyth* and the result reached therein were wholly loosed from their moorings by the Supreme Court's subsequent decisions in *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7 (2008) (clarifying the methodology by which the federal courts are to evaluate requests for injunctive relief in a manner establishing that a strong showing of the movant's substantial likelihood of success on the merits is *always* required), and *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (per curiam) (reaffirming that "[a] plaintiff 'prevails,' as we have held, 'when actual relief on the merits of his claim materially alters the legal relationship between the parties modifying the defendant's behavior in a way that directly benefits the plaintiff'" and noting, in this regard, that "we have repeatedly held that an injunction

5

… will usually satisfy that test." (Citations omitted.)). The court was likewise free to accord persuasive effect to the numerous decisions of the other federal appellate courts uniformly holding that civil rights plaintiffs who have successfully obtained preliminary injunctions may be awarded fees on that basis under Section 1988. *See generally* Appellants' Br. at 32-42. *Amici* submit that the district court's refusal to do so under the circumstances of this case, in favor of a mechanistic fidelity to *Smyth*, was error and must be reversed. *See Veasey*, 158 F.Supp.3d at 470 ("The Court concludes that the Fourth Circuit's holding in *Smyth* that a plaintiff who is awarded a preliminary injunction cannot constitute a prevailing party under §1988 is untenable in light of *Lefemine*, the changed merits standard following *Winter*, and the facts of this case.").

B. The *Smyth* Rule Cannot Be Reconciled with the Congressional Intent Underlying Section 1988

Reversal of the decision of the court below is especially important from the standpoint of organizations such as *amici* that routinely engage in civil rights litigation of the sort of which this case is illustrative, because the categorical prohibition established in *Smyth* clearly contravenes the broad and salutary policy imperatives which the Congress sought to promote by enacting the fee-shifting provisions of Section 1988. As numerous scholarly commentators have observed, Congress' intent in passing the Civil Rights Attorneys' Fees Awards Act of 1976, as codified in Section 1988, was to ensure that civil rights plaintiffs such as the Appellants in the case at bar and the clients *amici* typically represent would have access to capable legal

6

representation for purposes of pursuing redress from the courts to enforce or vindicate

their rights.

> The problem of unequal access to the courts in order to vindicate
> congressional policies and enforce the law is not simply a problem
> for lawyers and courts.  Encouraging adequate representation is
> essential if the laws of this Nation are to be enforced.  Congress
> passes a great deal of lofty legislation promising equal rights to
> all.  Although some of these laws can be enforced by the Justice
> Department or other Federal agencies, most of the responsibility
> for enforcement has to rest upon private citizens, who must go to
> court to prove a violation of law. . . .  But without the availability
> of counsel fees, these rights exist only on paper.  Private citizens
> must be given not only the rights to go to court, but also the legal
> resources.  If the citizen does not have the resources, his day in
> court is denied him; the congressional policy which he seeks to
> assert and vindicate goes unvindicated; and the entire nation, not
> just the individual citizen, suffers.

Paul D. Reingold, *Requiem for Section 1983*, 3 Duke J. of Const. Law & Public Pol.

1, 9 n.30 (2008), *quoting* 122 Cong. Rec. 33,313 (1976) (statement of Sen. Tunney,

the Act's original sponsor). This "private attorneys' general" conception

acknowledges the vital role that non-governmental private lawyers play in the

enforcement of the civil rights laws in America and recognizes the importance of

vigorous enforcement of Section 1988 as a vehicle through which litigants of limited

means may pursue such enforcement.

> The aims of § 1983 are to deter constitutional violations and
> vindicate constitutional rights.  The attorney's fee award has
> systemic value in encouraging litigation that enforces
> constitutional norms that are shared by everyone.  Often, the §

> 1983 plaintiff lacks resources while the government or official
> defendant can depend on public funds to obtain legal services.
> Thus, § 1988 can somewhat redress the imbalance of litigation
> advantages.  When the parties are on unequal footing, "holding
> out the prospect of reimbursement of fees can improve the
> position and stiffen the resolve of the relatively weaker side."

Thomas A. Eaton & Michael Wells, *Attorney's Fees, Nominal Damages,
and Section 1983 Litigation*, 24 William & Mary Bill of Rights J. 829, 836-
37 (2016) (footnotes omitted); *see generally* Appellants' Br. at 48-50.

Fee-shifting pursuant to Section 1988 also serves an additional, and
possibly even more significant, role in the regime of civil rights enforcement
– deterrence. *See Furtado v. Bishop*, 635 F.2d 915, 918 n.5 (1st Cir. 1980).
In cases in which civil rights plaintiffs seek injunctive relief from
unconstitutional or otherwise unlawful conduct, the specter of a fees award
can motivate governmental actors to respond more promptly or evaluate the
challenged actions with more gravity than they might otherwise. In such
cases, the price of a wrong choice to perpetuate the challenged policy or
practice instead of voluntarily modifying it should be the obligation to
reimburse the plaintiffs' fees. By foreclosing the prospects for a fees award
to private litigants who seek and obtain preliminary injunctive relief under
such circumstances, the *Smyth* rule effectively frees governmental actors

from undertaking this cost-benefit analysis, in which they would otherwise be compelled to engage.

Although the Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001), imposed constraints on the conception of "prevailing parties" by excluding a particular class of civil rights plaintiffs who succeed in obtaining some or all of the relief for which they commenced litigation from eligibility for the recovery of an award of fees under a federal statute closely analogous to Section 1988, the Court's premise for so holding was that the plaintiffs in that case achieved their results solely through the defendants' voluntary change in conduct, not through a "judicially sanctioned change in the [parties'] legal relationship." *Id.* at 605.

*Amici* submit that *Buckhannon* must necessarily establish the outer bounds of a judicial constraint on the conception of "prevailing party" in the context of civil rights litigation, lest the broad policy objectives animating Congress' enactment of Section 1988 be unduly and improperly infringed. However, as fully elaborated by Appellants, the *Buckhannon* limitation has no applicability here. *See* Appellants' Br. at 29-31. That being true, there is no valid rationale for allowing perpetuation of the *Smyth* rule in continuing derogation of the Congressional intent embodied in Section 1988. A civil rights plaintiff who obtains a preliminary injunction under the *Winter* criteria is

9

undoubtedly a "prevailing party" under Section 1988 and is entitled to recovery of his/her attorneys' fees and costs accordingly.

C. The *Smyth* Rule Undermines the Utility of Preliminary Injunctions as A Vehicle For Early Resolution of Civil Rights Actions

Finally, the categorical prohibition established by *Smyth* may significantly diminish the utility of motions for preliminary injunction as a device having clear potential to prompt the resolution of Section 1983 actions more efficiently and expeditiously, as illustrated by the sequence of events in the instant case. As exhaustively reviewed by Appellants, the district court's merits-based preliminary injunction order secured protection for the Plaintiffs from the pernicious effect of Virginia's now-defunct debt-based driver's license suspension law. Appellants' Br. at 13-17. Had *Smyth* already been overruled by the time the preliminary injunctions issued, that fact might well have led the Defendant – as it should have – to forego further defense of a law the district court had already ruled, in forceful terms, was likely unconstitutional and could no longer be imposed against the plaintiffs, thus sparing the parties and the court additional time, effort, and expense.

Consistent with this analysis, under the merits-oriented analytical methodology prescribed by *Winter*, the determination of a motion for preliminary injunction in the early stages of a Section 1983 action holds significant promise for advancing the litigation towards a more prompt resolution. The civil rights plaintiff who is unsuccessful in obtaining preliminary injunctive relief grounded on a finding of lack

of likelihood of success on the merits might well decide that the relief he or she seeks would be more fruitfully pursued by other means (*e.g.,* policy advocacy). The fact that there will be no fees recovery unless he/she ultimately prevails, against the odds, should weigh heavily in this calculus. By the same token, a governmental defendant against whom a preliminary injunction is entered is placed squarely on notice that it faces a steep uphill battle in ultimately persuading the court as to the correctness of the challenged practice or policy at issue, and that pursuit of a negotiated resolution with the plaintiff might better serve its interests. And, in the meantime, the ongoing implementation of that likely unlawful practice or policy is suspended – a benefit to society as a whole. That the defendant must also absorb the reasonable fees incurred by its adversary in obtaining the preliminary injunction in accordance with the rule already in existence in all jurisdictions to address the issue except the Fourth Circuit, encourages the defendant to minimize its losses by abandoning the continuing defense of laws or practices already adjudged to be likely unlawful. Under either of these alternative scenarios, the prospects for enhancement of judicial economy and efficiency and conservation of judicial resources are increased.

Under *Smyth*, that civil rights plaintiffs obtain no fees recovery irrespective of whether their bid for preliminary injunctive relief fails or succeeds, promotes an asymmetrical standard that places a thumb on the scale in favor of governmental defendants, allowing them to persist in defending unconstitutional or otherwise

unlawful policies or practices (in situations wherein the court has already characterized them as such) without financial consequence. By contrast, a rule recognizing that civil rights plaintiffs who succeed in obtaining merits-based injunctive relief must be compensated for the fees incurred encourages governmental defendants to carefully access their risk, to voluntarily resolve cases before motions for preliminary injunction are decided when appropriate, and to abandon lost causes where merits-based injunctive orders signal that their ultimate victory is highly improbable.

Viewed from this practical perspective, a rule that effectively discourages civil rights plaintiffs from even moving for a preliminary injunction is indefensible; *any* deterrent effect that the application of *Smyth* might have on the willingness of civil rights plaintiffs to pursue a motion for preliminary injunction in their cases cannot be rationalized given the absence of legal basis for its continuing viability.

## CONCLUSION

For all of the foregoing reasons, the *amici curiae* urge this Court to reverse the decision of the district court and remand this case for proceedings to determine the reasonable attorneys' fees and costs to which Appellants are entitled for their successful efforts to vindicate critically important constitutional rights.

DATED: November 22, 2021

Respectfully submitted,

/s Theodore A. Howard

12

Theodore A. Howard
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
(202) 719-7000
thoward@wiley.law

*Attorneys for Amici Curiae*

# **<u>APPENDIX A</u>**

**American Civil Liberties Union of Virginia**

The American Civil Liberties Union Foundation of Virginia ("ACLU of Virginia") is a statewide, nonprofit, nonpartisan organization with approximately 28,000 members and over 240,000 supporters. The ACLU of Virginia is the statewide affiliate of the American Civil Liberties Union (ACLU), a national nonprofit, nonpartisan organization with approximately two million members dedicated to defending the principles of liberty and equality embodied in the Constitution. The ACLU of Virginia appears frequently before the state and federal courts of the Commonwealth of Virginia, both as counsel and as amicus curiae. Since its founding, the ACLU of Virginia has been a forceful advocate for civil liberties and civil rights and has a strong interest in ensuring that individuals with meritorious claims are able to obtain redress through the courts. Federal statutes allowing attorneys' fees to be awarded to prevailing plaintiffs are key to this process. Because this case addresses an important question related to award of attorneys' fees in a civil rights case on a preliminary injunction, its proper resolution is a matter of concern for the ACLU of Virginia and its members and supporters.

**The Center for Civil Justice**

The Center for Civil Justice (CCJ) is a non-profit legal organization that advocates for low-income people in Michigan who need help meeting their basic needs. CCJ engages in class action and other impact litigation, as well as policy and administrative advocacy to ensure low-income people have greater access to basic needs and services, particularly related to food and nutrition, housing, healthcare and monetary support. CCJ strives to remove barriers that prevent people from escaping poverty and advocates for programs that stabilize household income so that poverty does not become a permanent state for people experiencing temporary hardship.

**Equal Justice Under Law**

Equal Justice Under Law is a non-profit organization that brings civil rights cases on behalf of indigent clients.  All of our work is pro bono, funded entirely by donations and attorneys' fees.  Equal Justice Under Law appears as amicus because of its experience representing prevailing plaintiffs in civil rights cases, its knowledge of how victory at the preliminary injunction stage can drastically benefit plaintiffs, and its recognition of the importance of attorneys' fees in supporting pro bono representation in the civil court system.

14

**Florida Legal Services, Inc.**

Florida Legal Services, Inc. is a non-profit organization that is a Florida-wide leader in advancing economic, social and racial justice. Florida Legal Services advocates for poor, vulnerable and hard to reach people through impact litigation, legislative and administrative advocacy, education, and strategic partnerships. Florida Legal Services strategically focuses advocacy to maximize impact and to reform systems and policies that perpetuate racial and economic injustice and create barriers to opportunity. Florida Legal Services works on behalf of immigrants, migrant workers, people institutionalized in Florida, and other vulnerable and exploited populations. As a non-profit with limited funding, Florida Legal Services relies on impact litigation in order to maximize the effect of its advocacy efforts. Its clients often face urgent situations in which preliminary injunctive relief is critical. Florida Legal Services also relies substantially on its ability to obtain attorneys' fees whenever possible in order to sustain its capacity to serve its clients

**Foundation for Individual Rights in Education**

The Foundation for individual Rights in Education (FIRE) is a nonpartisan, nonprofit organization dedicated to protecting the civil liberties of students and faculty members at our nation's institutions of higher education. These rights include freedom of speech, freedom of press, freedom of assembly, due process, academic freedom, legal equality, and freedom of conscience. FIRE litigates on a *pro bono* basis to protect these rights in the federal courts under 42 U.S.C. §1983. In addition to its own litigation, FIRE maintains a volunteer Legal Network and operates a Faculty Legal Defense Fund, providing *pro bono* representation to students and faculty from participating attorneys. The attorneys' fee awards obtained by successful § 1983 litigants are crucial to FIRE's ability to represent students and faculty, vindicate their rights, and deter and remedy unconstitutional government actions.

**Institute for Constitutional Advocacy and Protection**

The Institute for Constitutional Advocacy and Protection is a nonprofit litigation and advocacy organization dedicated to defending constitutional rights and values. A significant part of the Institute's work involves the representation of individuals who are experiencing ongoing violations of their rights and require urgent equitable relief.  The Institute also gives guidance and works with government

15

entities to promote the achievement of public policy goals while respecting the constitutional rights of community members. The Institute therefore has a strong interest in ensuring that the legal system provides appropriate incentives and compensation with regard to the adjudication of claims involving intrusions on individual rights.

**The Mississippi Center for Justice**

Mississippi Center for Justice (MCJ) is a nonprofit public interest law firm committed to advancing racial and economic justice. MCJ litigates a variety of cases for which Section 1988 attorneys' fees would be awarded and encounters the issue raised in this appeal.

**National Center for Law and Economic Justice**

The National Center for Law and Economic Justice (NCLEJ) advances economic justice for low-income families, individuals, and communities across the country through impact litigation, policy advocacy, and support of grassroots organizing. NCLEJ fights discrimination against people of color, women, immigrants, and works to build systems that provide economic security and full participation in society for all. NCLEJ litigates extensively in federal courts around the country, vindicating the federal constitutional and statutory rights of low-income persons who cannot afford to pay for legal counsel. Our work involves securing access to critical economic supports like driver's licenses, SNAP benefits, and Medicaid, and has benefited millions of people across the country. We often prevail, and we rely on awards of attorneys' fees under 42 U.S.C. 1988 to sustain our work. Securing a preliminary injunction in a federal class action typically involves a major expenditure of resources in staff time and costs for e-discovery and expert witnesses, expenditures that are only necessary because state governments refuse to stop violating our clients' federal rights. We could not continue to do this work if state governments are permitted to avoid payment of attorneys' fees by mooting litigation after we secure court-ordered relief for our clients.

**Public Justice Center**

The **Public Justice Center ("PJC")** is a non-profit civil rights and anti-poverty legal organization established in 1985. In collaboration with its clients, the PJC uses impact litigation, public education, and legislative advocacy through a race equity lens to accomplish law reform in pursuit of social justice. Its Appellate Advocacy Project expands and improves representation of disadvantaged persons

16

and civil rights issues before the Maryland and federal appellate courts. The PJC has a longstanding commitment to preservation and strengthening of the private attorney general model as a critical aspect of access to the courts for its client communities. *See, e.g.,* amicus briefs in *Radtke v. Caschetta,* 822 F.3d 571 (D.C. Cir. 2016); *Ocean City, Md., Chamber of Commerce, Inc. v. Barufaldi*, 434 Md. 381, 393 (2013); *Henriquez v. Henriquez*, 413 Md. 287 (2010); *Friolo v. Frankel*, 403 Md. 443 (2008); *Friolo v. Frankel*, 373 Md. 501 (2003). *See also Pinnacle Group, LLC v. Kelly*, 235 Md. App. 436 (2018), *cert. den.* 459 Md. 188 (2018).

**The Rutherford Institute**

The Rutherford Institute is an international nonprofit organization headquartered in Charlottesville, Virginia. Founded in 1982 by its President, John W. Whitehead, the Institute provides legal assistance at no charge to individuals whose constitutional rights have been threatened or violated and educates the public about constitutional and human rights issues affecting their freedoms. The Rutherford Institute works tirelessly to resist tyranny and threats to freedom by seeking to ensure that the government abides by the rule of law and is held accountable when it infringes on the rights guaranteed to persons by the Constitution and laws of the United States.

**Tzedek DC**

Tzedek DC is a nonprofit 501(c)(3) organization with the mission of safeguarding the legal rights and financial health of District of Columbia residents with lower incomes facing the often-devastating consequences of debt collection and credit-related obstacles. This mission is carried out as antiracism work, in response to the massive wealth gaps tracking race in DC and nationwide. Tzedek DC serves a client base of 90% African-American, 60% women, and 25% disabled community members, and has a particular interest in ensuring that any laws that punish people for unpaid debts are carried out consistent with principles of equal protection and due process. Tzedek DC published the 2021 Report: "Driving DC to Opportunity: Wealth Should Not Determine Who Gets to Keep Their Driver's License".

**Washington Lawyers' Committee for Civil Rights and Urban Affairs**

The Washington Lawyers' Committee for Civil Rights and Urban Affairs is a nonprofit civil rights organization established to eradicate racial discrimination and poverty by enforcing civil rights laws through litigation and public policy advocacy in the District of Columbia, Virginia, and Maryland. To advance this

mission, the Committee represents some of the most vulnerable persons and populations in the region. Much of the litigation brought by the Committee seeks to vindicate rights protected by statutes that provide for the shifting of fees if the plaintiff is a prevailing party.

**Western Center on Law and Poverty**

Western Center on Law and Poverty, for more than 50 years, has litigated on behalf of low-income Californians, particularly in the areas of health, welfare, housing, and access to justice. The ability to recover court-awarded attorneys' fees for successful work is necessary to provide such services. That ability would be jeopardized if, in cases such as this, fees could be denied despite a victory in court achieving substantial benefits for our clients.

18

## CERTIFICATION OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 2446 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14-point font.

November 22, 2021                        /s Theodore A. Howard
                                         Theodore A. Howard

                                         *Attorney for Amici Curiae*

## CERTIFICATE OF SERVICE

I certify that on November 22, 2021, the foregoing document was filed through the CM/ECF system and thereby electronically served *via* ECF on all counsel of record in this matter.

November 22, 2021                        /s Theodore A. Howard
                                         Theodore A. Howard

                                         *Attorney for Amici Curiae*

20