# No. 21–1756

In the

# United States Court of Appeals

## For the Fourth Circuit

_____

Damian Stinnie, et al., *Appellants*,

v.

Richard Holcomb, *Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(The Honorable Norman K. Moon)

_____

## PETITION FOR REHEARING *EN BANC*

_____

Jonathan T. Blank
Benjamin P. Abel
MCGUIREWOODS LLP
323 Second Street SE, Suite 700
Charlottesville, VA 22902
T: (434) 977-2509
F: (434) 980-2258
*jblank@mcguirewoods.com*
*babel@mcguirewoods.com*

John J. Woolard
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4355
F: (804) 698-2055
*jwoolard@mcguirewoods.com*

Angela A. Ciolfi
LEGAL AID JUSTICE CENTER
1000 Preston Avenue
Suite A
Charlottesville, VA 22903
T: (434) 529-1810
F: (434) 977-0558
*angela@justice4all.org*

Patrick Levy-Lavelle
LEGAL AID JUSTICE CENTER
626 East Broad Street
Suite 200
Richmond, VA 23219
T: (804) 643-1086
F: (804) 643-2059
*pat@justice4all.org*

Leslie Kendrick
580 Massie Road
Charlottesville, VA 22903
T: (434) 243-8633
F: (434) 924-7536
*kendrick@virginia.edu*

Tennille J. Checkovich
Michael Stark
200 Commerce Street
Smithfield, VA 23430
T: (757) 357-8151
F: (757) 365-3018
*tcheckovich@smithfield.com*
*mstark@smithfield.com*

July 11, 2022

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1,

Plaintiffs-Appellants Damian Stinnie, Melissa Adams, Adrainne Johnson, Williest

Bandy, and Brianna Morgan state that, as individuals, they have no parent

corporations or publicly held corporations that own ten percent or more of stock

and that they are not aware of any publicly held corporation that has a direct

financial interest in the outcome of this litigation.  Further, this case does not arise

out of a bankruptcy proceeding.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................... i

TABLE OF CONTENTS........................................................... ii

TABLE OF AUTHORITIES .................................................... iii

RULE 35(B)(1) STATEMENT ................................................1

RELEVANT BACKGROUND ................................................3

ARGUMENT ..................................................................7

I.      This case is exceptional and warrants *en banc* review because *Smyth*'s bright-line rule stands alone on the wrong side of an undisputed circuit split.......................................................................8

II.     This case is also exceptional because it presents the opportunity to re-evaluate *Smyth*'s holding given later-decided Supreme Court precedent, realize the intent of Section 1988, and protect Americans' ability to guard their constitutional rights against unjust governmental acts. ...............9

III.   The Commissioner can advance no persuasive reason to read Section 1988 in a way that undermines the civil rights enforcement scheme created by Congress...................................................................13

CONCLUSION ..............................................................16

STATEMENT REGARDING ORAL ARGUMENT ...........................18

CERTIFICATE OF COMPLIANCE.........................................19

CERTIFICATE OF SERVICE ..............................................20

ADDENDUM:  STATUTE INVOLVED......................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Riverside v. Rivera*,
477 U.S. 561 (1986).................................................................10

*Common Cause/Georgia v. Billups*,
554 F.3d 1340 (11th Cir. 2009) ...........................................2

*Dearmore v. City of Garland*,
519 F.3d 517 (5th Cir. 2008) ...............................................2

*Dupuy v. Samuels*,
423 F.3d 714 (7th Cir. 2005) ...............................................2

*Haley v. Pataki*,
106 F.3d 478 (2d Cir. 1997) .................................................2

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)................................................................10

*Higher Taste, Inc. v. City of Tacoma*,
717 F.3d 712 (9th Cir. 2013) ...............................................2

*Kansas Judicial Watch v. Stout*,
653 F.3d 1230 (10th Cir. 2011) ..........................................2

*Mathews v. Eldridge*,
424 U.S. 319 (1976)................................................................5

*People Against Police Violence v. City of Pittsburgh*,
520 F.3d 226 (3d Cir. 2008) ..........................................2, 8

*Planned Parenthood S.W. Ohio Region v. Dewine*,
931 F.3d 530 (6th Cir. 2019) ...............................................2

*Rogers Group, Inc. v. City of Fayetteville*,
683 F.3d 903 (8th Cir. 2012) ...............................................2

*Select Milk Producers, Inc. v. Johanns*,
400 F.3d 939 (D.C. Cir. 2005)..........................................3, 8

*Smyth ex rel. Smyth v. Rivero*,
   282 F.3d 268 (4th Cir. 2002) .......................................................*passim*

*Snider Int'l Corp. v. Town of Forest Heights*,
   739 F.3d 140 (4th Cir. 2014) ...............................................................5

*Stinnie v. Holcomb*,
   355 F. Supp. 3d 514 (W.D. Va. 2018).........................................4, 5, 6

*Stinnie v. Holcomb*,
   734 F. App'x 858 (4th Cir. 2018) ....................................................4, 15

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008)..............................................................................5, 9

**Statutes**

42 U.S.C. § 1988 ...................................................................................*passim*

Va. Code Ann. § 49-1 .................................................................................14

Va. Code Ann. § 46.2-395 (repealed 2020)...................................1, 4, 5, 6

**Other Authorities**

Declaration of Independence (U.S. 1776)  .............................................14

Fed. R. App. P. 35........................................................................................2,7

S. Rep. No. 94-1011 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908 ...............10, 11

**Constitutional Authority**

Va. Const. art. I, § 3 ..................................................................................14

## RULE 35(B)(1) STATEMENT

The issue here is simple, but exceptionally important:  Are Plaintiffs prevailing parties when they obtain a merits-based preliminary injunction that materially alters the relationship among the parties in a way that directly benefits Plaintiffs and remains in place when the case is mooted by legislative action after entry of the preliminary injunction?  The answer is yes.

Each Plaintiff in this case had his or her driver's license suspended based on unpaid court debt under Virginia's former license-for-payment regime.  Plaintiffs filed suit challenging the constitutionality of Virginia Code § 46.2-395 (repealed 2020) ("§ 46.2-395" or "Section 46.2-395") and obtained a merits-based preliminary injunction barring the Defendant, Virginia's Commissioner of the Department of Motor Vehicles (the "Commissioner"), from enforcing the statute against Plaintiffs and ordering the removal of any current § 46.2-395 suspensions on their driver's licenses.  The preliminary injunction benefited Plaintiffs directly and remained in effect until subsequent legislative action rendered the suit moot. This Court is the only circuit that would *categorically bar* Plaintiffs from being deemed prevailing parties under 42 U.S.C. § 1988.

The Panel felt constrained to rule for the Commissioner based on its view that the case implementing that categorical bar—*Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002)—remains binding law until overruled by this Court sitting

*en banc.* (*See* Docket Entry "DE" 52 at 10–12.) In the absence of *Smyth*, the result "almost certainly" would have been different. Indeed, Judge Harris noted that "[o]n the facts of this case, the plaintiffs would almost certainly qualify as prevailing parties were it not for [this Court's] categorical rule to the contrary." (DE52 at 16 (Harris, J., concurring).) She also remarked that the question presented by this case "seems worth considering as an en banc court." (*See id.* at 17-18.) She is right.

Consistent with Federal Rule of Appellate Procedure 35(b), this "proceeding presents a question of exceptional importance" for at least two reasons. First, this Petition presents an opportunity to address whether this Court wishes to continue as the only court to bar prevailing party status under the facts presented. The *Smyth* decision conflicts with every other circuit to have addressed the question. *See*, *e.g.*, *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233–34 (3d Cir. 2008); *Dearmore v. City of Garland*, 519 F.3d 517, 526 (5th Cir. 2008); *Planned Parenthood S.W. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019); *Dupuy v. Samuels*, 423 F.3d 714, 720 (7th Cir. 2005); *Rogers Group, Inc. v. City of Fayetteville*, 683 F.3d 903, 904–07, 910–11 (8th Cir. 2012); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717–18 (9th Cir. 2013); *Kansas Judicial Watch v. Stout*, 653 F.3d 1230, 1238, 1240 (10th Cir. 2011); *Common Cause/Georgia v. Billups*, 554 F.3d 1340,

1355–56 (11th Cir. 2009); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 942 (D.C. Cir. 2005). *Smyth*'s outlier status creates the sort of circuit split that begs for further review.

Second, and fundamentally, this case implicates the ability of all individuals, regardless of wealth or political views, to access the courts to vindicate their federal rights, as well as Congress's express command that governmental wrongdoers be charged with paying for the cost of successful civil rights litigation. Political persuasion, belief, race, or creed do not matter here—Plaintiffs' arguments benefit everyone. The Commissioner's position does not.

If there were ever a case that presented the appropriate vehicle for this Court to re-evaluate *Smyth* because of later-decided Supreme Court precedent and the unanimous chorus of circuits going the other way, this is it. (*See* DE52 at 13–18 (Harris, J., concurring).) Plaintiffs respectfully request rehearing *en banc*.

## RELEVANT BACKGROUND

When this litigation began more than five years ago, nearly a million people had suspensions on their driver's licenses because of unpaid court debt from Virginia courts. (JA226–28.) Plaintiffs represented a putative class of persons whose licenses were suspended automatically when they failed to meet payment deadlines for court debt. (*Id.*) They could not legally drive to work, medical appointments, the grocery store, or anywhere else. (*Id.*) The Commissioner

suspended Plaintiffs' licenses without notice, a hearing, or consideration of inability to pay. (*Id.*) Plaintiffs lost their licenses because they could not afford the court debt imposed on them. (*Id.*)

Plaintiffs contended § 46.2-395 breached the promise of procedural due process, fundamental fairness, and equal protection made to all Americans regardless of race or poverty. (JA262–68.) Chief Judge Gregory remarked: "By suspending the licenses of those who cannot pay for reasons outside of their control, the state traps thousands of Virginians in a *nightmarish spiral for which there is no apparent exit*." *Stinnie v. Holcomb*, 734 F. App'x 858, 864 (4th Cir. 2018) (Gregory, C.J., dissenting) (emphasis added). Plaintiffs finally found that exit about two-and-a-half years into contested litigation when the United States District Court for the Western District of Virginia ("District Court") granted Plaintiffs' requested preliminary injunction, which materially altered the legal relationship of the parties by, among other things, requiring the Commissioner to remove these suspensions from Plaintiffs' licenses. *Stinnie v. Holcomb*, 355 F. Supp. 3d 514 (W.D. Va. 2018); (JA843–44). From that point on, § 46.2-395 ceased to bind Plaintiffs. The preliminary injunction recognized the likely unconstitutionality of § 46.2-395, forced the Commissioner to halt enforcement against Plaintiffs, and gave the Plaintiffs back their dignity and a chance to provide for themselves and break the cycle of poverty.

The District Court granted its preliminary injunction after a robust evidentiary hearing that involved an opening statement, exhibits, direct and cross-examinations of fact and expert witnesses, and closing arguments.  (*See*, *e.g.*, JA305–772; ECF Case No. 3:16-cv-00044, Document 113.)  The District Court emphasized it was "turn[ing] to the merits" of the Plaintiffs' case, 355 F. Supp. 3d at 527, and granted relief, finding that it was "likely that Plaintiffs [would] succeed in establishing that § 46.2-395 violates procedural due process," *id.* at 532.  This preliminary injunction did not maintain the status quo—it *upended* it.

In deciding the preliminary injunction, the District Court turned, as it should, to the "govern[ing]" test from *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).  *Stinnie*, 355 F. Supp. 3d at 532.  The opinion went through the *Mathews* factors for procedural due process, considering the parties' arguments on the merits.  *See id.* at 529–31 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The District Court determined that "Plaintiffs . . . made a clear showing that they are likely to establish that they are not provided an opportunity to be heard."  *Id*. at 529.  And, of course, having an opportunity to be heard is crucial to procedural due process.  *See Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014).

The District Court also determined that the rest of the *Winter* factors, "irreparable harm, the balance of equities, and the public interest," all weighed in

Plaintiffs' favor. *Stinnie*, 355 F. Supp. 3d at 532. The Commissioner did not appeal the preliminary injunction and provided the relief ordered.

After losing the preliminary injunction, the Commissioner shifted tactics. He moved to stay the action and lobbied the General Assembly to repeal the statute, at least in part to avoid paying legal fees. (*See*, *e.g.*, JA845–91; JA924–41; JA968–70 (letter from Commissioner to Senator Stanley).) Over Plaintiffs' objections, the District Court granted the stay. (JA22-23; JA955-56.) But it made no difference to Plaintiffs' injunctive relief, which was never undone by any court.

In the months following that material alteration of the legal relationship between Plaintiffs and the Commissioner, a bipartisan majority of the Virginia General Assembly joined to repeal the statute.[1] The preliminary injunction continued to remain in effect throughout that months-long legislative process as an independent and preexisting source of relief from § 46.2-395. (*See* Opening Br. at 14–17 (detailing the history of the legislative process).)

After repeal, Plaintiffs moved to recover attorneys' fees and costs as prevailing parties under 42 U.S.C. § 1988. But regardless of the meritorious nature of Plaintiffs' argument, the magistrate judge, district judge, and Panel all felt constrained to apply *Smyth*. Plaintiffs request rehearing by the full Court, which

---

[1] *See* Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess., https://lis.virginia.gov/cgi-bin/legp604.exe?201+vot+HV1516+SB0001 (last visited July 11, 2022).

6

every opinion issued in this case has recognized is the body with the power to
address the merits of this dispute. (*See* JA1154; JA1264.)

## ARGUMENT

*Smyth* has passed its expiration date. The rule in the Fourth Circuit should
be as follows: When a party wins a merits-based preliminary injunction that
materially alters the legal relationship between the parties and that relief is not
subsequently undone by the court, that winning party is a prevailing party, even if
the case is later mooted. (*See* Opening Br. at 2–9.) The Commissioner would
reject this rule in favor of *Smyth*'s categorical bar. Even if Supreme Court
precedent has not fatally undermined *Smyth*'s vitality,[2] *Smyth* is inconsistent with
that precedent and has led to perverse results and the isolation of the Fourth Circuit
on the question presented. Plaintiffs' position, on the other hand, protects the
people and ensures their rights exist in fact and not only on paper.

---

[2] Plaintiffs respectfully submit that this case meets the Rule 35(b)(1)(A) standard
for *en banc* review considering Supreme Court precedent decided after *Smyth*.
(*See*, *e.g.*, Opening Br. at 24–31; Reply Br. at 2–9.) Plaintiffs do not concede, and
expressly preserve, all arguments made in the briefs and oral argument in this
appeal for further review by this Court, or beyond. (*See* Opening Br., Reply Br.,
Oral Argument (May 4, 2022).)

I.    **This case is exceptional and warrants *en banc* review because *Smyth*'s bright-line rule stands alone on the wrong side of an undisputed circuit split.**

As Judge Harris recognized, "*Smyth* is a complete outlier." (DE52 at 14 (Harris, J., concurring).) And the "Commissioner forthrightly concedes" that point. (*Id.*) "[I]n no circuit other than [this one] is there a bright-line rule that a preliminary injunction *never* can satisfy the prevailing party standard." (*Id.* at 15.) Circuits across the country recognize that obtaining a preliminary injunction can confer prevailing party status. *See*, *e.g.*, *People Against Police Violence*, 520 F.3d at 232-33 ("[N]early every Court of Appeals to have addressed the issue has held that relief obtained via a preliminary injunction can, under appropriate circumstances, render a party 'prevailing.'"); *Select Milk*, 400 F.3d at 946 (disagreeing with *Smyth*'s unsupportable per se rule). The circuit split is striking given that Plaintiffs would prevail in any other circuit. (*See* Opening Br. at 32–42 (explaining how courts across the country recognize that obtaining a preliminary injunction is sufficient to confer prevailing party status, especially when, like here, the preliminary injunction is grounded in a merits-based determination); Reply Br. at 9–21 (further explaining why Plaintiffs would have prevailed under any other circuit's rule); *see also* DE52 at 16–17 (Harris, J., concurring).) There is no reason why the people of Maryland, North Carolina, South Carolina, Virginia, and West

8

Virginia should have fewer rights than Americans living anywhere else.  The

circuit split can, and should, be resolved now through *en banc* review.

**II.    This case is also exceptional because it presents the opportunity to re-evaluate *Smyth*'s holding given later-decided Supreme Court precedent, realize the intent of Section 1988, and protect Americans' ability to guard their constitutional rights against unjust governmental acts.**

It is critically important that this Court sitting *en banc* re-examine *Smyth* for

at least three additional reasons.  First, *Smyth* is outdated given subsequent

Supreme Court precedent.  (*See*, *e.g.*, Opening Br. at 24–31; Reply Br. at 2–9.)  As

Judge Harris noted, the more stringent preliminary injunction standard in *Winter*

means that this Court could re-evaluate "*Smyth* without opening the door to the risk

that so concerned the court in that case:  that a plaintiff could be deemed a

prevailing party . . . by virtue of a preliminary injunction that had little or nothing

to do with the merits of her claim."  (*See* DE52 at 14 (Harris, J., concurring).)

Given developments in injunctive case law, this Court should consider whether to

remain a "complete outlier" by adhering to *Smyth*.  (*See id.*)

Second, Congress recognized that permitting prevailing plaintiffs to recover

fees and costs is essential to the enforcement of federally protected rights. But

*Smyth* stymies that enforcement framework.  As the concurrence recognized,

taking on the Commonwealth was a Herculean task both in time and money for

Plaintiffs and their attorneys.  (*See* DE52 at 17 (Harris, J., concurring) ("And the

plaintiff, who almost certainly will have devoted considerable effort and resources

to obtaining a preliminary injunction, is left holding the bag, with no way to recover those costs.").)  Section 1988 encourages counsel to devote the energy needed to do important civil rights work.

Plaintiffs with winning civil rights actions deserve to have sophisticated legal representation, even if they cannot afford it.  In 1976, Congress provided for just that:

> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer.  If private citizens are to be able to assert their civil rights, and if those who violate the Nations's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.
>
> . . .
>
> Enforcement of the laws depends on governmental action and, in some cases, on private action through the courts.  If the cost of private enforcement actions becomes too great, there will be no private enforcement.  If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.

S. Rep. No. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910–13. The Supreme Court has often recognized the important goals embodied in § 1988. *See*, *e.g.*, *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) ("Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process."); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("The purpose

10

of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances.") (citing H.R. Rep. No. 94-1558, p.1 (1976)).

Meaningful civil rights enforcement depends on awarding fees and expenses in civil right actions. *See* S. Rep. No. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 5910 ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."); *id.* at 5, 1976 U.S.C.C.A.N. at 5913 ("We find that the effects of such fee awards are ancillary and incident to securing compliance with these laws, and that fee awards are an integral part of the remedies necessary to obtain such compliance."). Further, "[t]he remedy of attorneys' fees has always been recognized as particularly appropriate in the civil rights area, and civil rights and attorneys' fees have always been closely interwoven." *Id.* at 3, 1976 U.S.C.C.A.N. at 5910.

Third, Plaintiffs qualify as prevailing parties under the majority rule. (*See* DE52 at 16 (Harris, J., concurring).)  Plaintiffs received a merits-based preliminary injunction that materially altered the legal relationship between the parties, gave relief, and was never undone by any court. *See supra* at 4–6.  Failing to award litigation expenses to parties like Plaintiffs hinders Section 1983 litigation and the constitutional guarantees promised to all regardless of race, poverty, or belief.

11

Without private enforcement of Section 1983, the government can trample anyone's constitutional rights. And this Court's failure to overturn *Smyth* will lead to the "predictable result" of fewer attorneys taking on this work than if this circuit recalibrated its test to join the rest of the country. (*See* DE52 at 17 (Harris, J., concurring).)

When the District Court issued its preliminary injunction, the political process had failed Plaintiffs for years. And when Plaintiffs finally sued to enforce their constitutional rights, the Commissioner engaged an elite law firm and clashed with Plaintiffs extensively. (JA9–26.) Almost two-and-a-half years passed between the filing of the initial Complaint and entry of the preliminary injunction. (JA9–17.) That entire time, the Commissioner fought to keep an unconstitutional statute in place. Allowing the General Assembly's eleventh-hour repeal of the statute after entry of the preliminary injunction to thwart Plaintiffs' ability to recover their fees would enable states to employ litigation tactics to delay and deter meritorious cases.

The current rule in *Smyth* creates all the wrong incentives for government actors. As Judge Harris observed, the *Smyth* rule "allows defendants to game the system." (DE52 at 17 (Harris, J., concurring).) So long as the *Smyth* rule remains, civil rights plaintiffs in the Fourth Circuit remain at a disadvantage as compared to those in every other circuit. They face the risk that the government will moot the

case after losing a preliminary injunction and before plaintiffs can win final judgment. (*See id.*) The government has vast taxpayer-provided funds through which to hire lawyers to defend its laws—however unconstitutional those laws may be. Ordinary Americans do not have the same resources, and their inability to access legal help is hindered when the government can avoid a fee award by mooting the case after losing a preliminary injunction.

Here, the perverse incentives created by *Smyth* were on full display. As Judge Harris noted, Plaintiffs were eager to win their case at trial. (DE52 at 16–17 (Harris, J., concurring); JA15-23; JA955.) Plaintiffs would have had their final day in court before the statute could have been repealed had it not been for the stay requested by the Commissioner. *Smyth* created the conditions in which this litigation gamesmanship occurred.

## III. The Commissioner can advance no persuasive reason to read Section 1988 in a way that undermines the civil rights enforcement scheme created by Congress.

None of the Commissioner's prior arguments over the course of this dispute comes close to counteracting the import of Section 1988's purpose and related Supreme Court precedent. First, the Commissioner has previously contended that the bright-line rule provides "clarity" to "courts and litigants." (*See* JA1093.) This argument fails in at least two ways. To start, this Court should reject the idea that the approach taken in all of the other circuits to address the issue is simply too

13

complicated to be workable. Courts and litigants in the Fourth Circuit are just as capable as those in other circuits, and there is no indication that the law in other circuits is in disarray without *Smyth*'s bright-line rule. And even if the bright-line rule is clear, it is not just.

Second, the Commissioner has argued that a bright-line rule helps the government decide "how to respond" when challenged by constitutional litigation. (*See* JA1094.) But one would hope the relevant, and overriding, consideration for the government would be doing the right thing. *See* Va. Const. art. I, § 3 ("That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community[.]"); Va. Code Ann. § 49-1 (requiring all officers in the Commonwealth to swear they will "support the Constitution of the United States, and the Constitution of the Commonwealth of Virginia"). After all, government officials work for the people. *See* Declaration of Independence para. 2 (U.S. 1776) ("That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed"). But here, the Commissioner defended an unconstitutional statute by applying scorched-earth litigation tactics until his untenable position became obvious for all to see.

The Commissioner has also referenced "the costs and benefits of amending a law or changing a policy" in supporting *Smyth*, as if the true value of the Commonwealth's laws can be reduced to a spreadsheet. (*See* JA1094.) For years,

14

the government ignored Plaintiffs' household budgets in its license-for-payment scheme. The unconstitutional regime deprived hundreds of thousands of Virginians of their dignity and the chance to raise themselves up from the vicious cycle of poverty. (*See generally* JA27–81 (Complaint); JA226–70 (First Amended Complaint).) Virginia's law imposed a "nightmarish spiral" that trapped Plaintiffs. *Stinnie*, 734 F. App'x at 864 (Gregory, C.J., dissenting). At bottom, it is not a legitimate consideration for the government to want additional clarity concerning how to respond to its *unconstitutional* laws because it might have to pay the litigation expenses of those who dare to stand up and challenge those laws. When the DMV decides to defend an unconstitutional law with the best lawyers it can muster and fights at every turn, it has to live with that decision when it loses on a merits-based preliminary injunction, and then turns to the legislature in an apparent attempt to avoid "continuing to incur costly legal fees." (*See* JA1038–39 (quoting the Commissioner).)

This Court should deny the Commissioner's invitation to reaffirm *Smyth*'s bright-line rule because the abuse it invites has been on full display in this case. In this situation, the Court should have no qualms about realigning its law on prevailing party status considering the changed standards governing preliminary injunctions. If anything, overturning *Smyth* and returning to the original intent of Section 1988 is an exercise of judicial restraint because it would create harmony

among every circuit that has considered the issue and reinforce the intent of Congress in enacting Section 1988.

## CONCLUSION

For twenty years now, under *Smyth*, this circuit has categorically prohibited prevailing-party status under the facts presented and has come to be the only circuit across the country to do so. Today, the issue is whether Plaintiffs can recover their attorneys' fees after successfully defeating the Commissioner's unconstitutional license-for-payment scheme. Tomorrow, the set of plaintiffs may include those seeking to vindicate their religious freedoms under the First Amendment, their right to bear arms under the Second Amendment, or their right to equal protection under the Fourteenth Amendment. It does not matter whether a plaintiff seeks to pursue causes one might label as "liberal" or "conservative." This case affects everyone. And unless this Court steps in to end the rigid ruling set out in *Smyth*, Americans of all beliefs in the Fourth Circuit will find the courthouse doors accessible in theory only. Congress enacted Section 1988 to prevent that outcome. This Court has the chance to make that Congressional intent a reality.

Plaintiffs ask this Court to adjudicate *Smyth*'s continued viability and recognize it should be overturned—especially under the facts of this case. The law, the facts, and the question presented all invite this Court's *en banc* review.

Dated:  July 11, 2022

Respectfully submitted,


*/s/ John J. Woolard*

John J. Woolard
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4355
F: (804) 698-2055
*jwoolard@mcguirewoods.com*

Jonathan T. Blank
Benjamin P. Abel
McGuireWoods LLP
323 Second Street SE, Suite 700
Charlottesville, VA 22902
T: (434) 977-2509
F: (434) 980-2258
*jblank@mcguirewoods.com*
*babel@mcguirewoods.com*


Angela A. Ciolfi
Legal Aid Justice Center
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
T: (434) 529-1810
F: (434) 977-0558
*angela@justice4all.org*

Patrick Levy-Lavelle
Legal Aid Justice Center
626 East Broad Street, Suite 200
Richmond, VA 23219
T: (804) 643-1086
F: (804) 643-2059
*pat@justice4all.org*


Leslie Kendrick
580 Massie Road
Charlottesville, VA  22903
T: (434) 243-8633
F: (434) 924-7536
*kendrick@virginia.edu*

Tennille J. Checkovich
Michael Stark
200 Commerce Street
Smithfield, VA 23430
T: (757) 357-8151
F: (757) 365-3018
*tcheckovich@smithfield.com*
*mstark@smithfield.com*


*Counsel for Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

For all the reasons stated in this Petition, the issue presented for *en banc* review warrants oral argument as an issue of exceptional importance.  This Court's bright-line rule in *Smyth* holding that a preliminary injunction can never be sufficient relief to confer prevailing party status is inconsistent with subsequent Supreme Court precedent and is an outlier with which almost all other circuits disagree.  Should this Court continue to apply *Smyth*, it will reinforce the existing circuit split on the question of whether a preliminary injunction can ever confer prevailing party status, making the issue appropriate for consideration by the United States Supreme Court.  In light of the complexity of the legal issues involved and division among the circuits concerning the continued viability of *Smyth*, Plaintiffs respectfully suggest that oral argument is needed and will assist the *en banc* court in its decisional process.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 35 because:

- This brief contains 3,817 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because:

- This brief has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

*/s/ John J. Woolard*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2022, I electronically filed the foregoing

Petition for Rehearing *En Banc* of Appellants with the Clerk of this Court using the

CM/ECF System, which will send a notification of electronic filing to all counsel

of record who are registered CM/ECF users, including counsel for Appellee.


*/s/ John J. Woolard*

## ADDENDUM: STATUTE INVOLVED

Pursuant to Federal Rule of Appellate Procedure 28(f), Plaintiffs submit this Addendum containing the "relevant parts" of the statute necessary to the resolution of the issue presented by this appeal:

**42 U.S.C. § 1988(b):**

**(b) ATTORNEY'S FEES**

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

21