# No. 21–1756

In the

# United States Court of Appeals
## For the Fourth Circuit

––––––––––––––

Damian Stinnie, *et al.*, *Appellants*,

v.

Richard Holcomb, *Appellee.*

––––––––––––––

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(The Honorable Norman K. Moon)

––––––––––––––

## SUPPLEMENTAL OPENING BRIEF OF APPELLANTS

––––––––––––––

Jonathan T. Blank
Benjamin P. Abel
MCGUIREWOODS LLP
323 Second Street SE, Suite 700
Charlottesville, VA 22902
T: (434) 977-2509
F: (434) 980-2258
*jblank@mcguirewoods.com*
*babel@mcguirewoods.com*

John J. Woolard
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4355
F: (804) 698-2055
*jwoolard@mcguirewoods.com*

Angela A. Ciolfi
LEGAL AID JUSTICE CENTER
1000 Preston Avenue
Suite A
Charlottesville, VA 22903
T: (434) 529-1810
F: (434) 977-0558
*angela@justice4all.org*

Patrick Levy-Lavelle
LEGAL AID JUSTICE CENTER
626 East Broad Street
Suite 200
Richmond, VA 23219
T: (804) 643-1086
F: (804) 643-2059
*pat@justice4all.org*

Leslie Kendrick
580 Massie Road
Charlottesville, VA 22903
T: (434) 243-8633
F: (434) 924-7536
*kendrick@virginia.edu*

Tennille J. Checkovich
Michael Stark
200 Commerce Street
Smithfield, VA 23430
T: (757) 357-8151
F: (757) 365-3018
*tcheckovich@smithfield.com*
*mstark@smithfield.com*

August 31, 2022

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Plaintiffs-Appellants Damian Stinnie, Melissa Adams, Adrainne Johnson, Williest Bandy, and Brianna Morgan state that, as individuals, they have no parent corporations or publicly held corporations that own ten percent or more of stock and that they are not aware of any publicly held corporation that has a direct financial interest in the outcome of this litigation. Further, this case does not arise out of a bankruptcy proceeding.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................ I

TABLE OF CONTENTS ................................................................... II

TABLE OF AUTHORITIES .............................................................. V

INTRODUCTION ........................................................................... 1

JURISDICTIONAL STATEMENT ..................................................... 5

ISSUE PRESENTED ....................................................................... 6

STATEMENT OF THE CASE ........................................................... 6

I.     Section 46.2-395 punished those unable to pay court debt for their poverty without due process. ........................................................ 6

II.    Plaintiffs sued to defend their constitutional rights, but the District Court dismissed the Complaint finding a lack of subject matter jurisdiction. ............................................................................. 8

III.   This Court allowed the case to go forward, remanding with instructions to permit Plaintiffs to amend their Complaint. ........................... 9

IV.   On remand, Plaintiffs filed their First Amended Class Action Complaint and Motion for Preliminary Injunction on the same day ........... 11

V.    The District Court granted the preliminary injunction on the merits, materially altering the legal relationship among the parties ....................... 12

VI.   In recognition of the impact of the preliminary injunction, a bi-partisan majority in the Virginia General Assembly repealed § 46.2-395. ............................................................................. 15

VII.  The District Court held it was constrained by *Smyth* to deny the Fee Petition, despite Plaintiffs' "thoughtful and compelling argument" to the contrary. ...................................................................... 19

VIII. A panel of this Court ruled in favor of the Commissioner on the basis of *Smyth*, but the concurrence noted that the outlier rule in *Smyth* "allows defendants to game the system." .................................... 21

SUMMARY OF ARGUMENT ......................................................... 22

ARGUMENT ............................................................................... 23

I.     Standard of Review ........................................................... 23

II.    *Smyth*'s bright-line rule stands alone among the circuits and no longer makes sense in light of later-decided Supreme Court cases..........................26

     A.     The Fourth Circuit is the only circuit to hold that a grant of a preliminary injunction can never be sufficient to confer prevailing party status. .......................................................................26

     B.     When this Court decided *Smyth* the preliminary injunction standard involved an abbreviated merits analysis, but that is no longer the case. ...................................................................27

III.    This Court should overturn *Smyth* and hold that a plaintiff who obtains a preliminary injunction that (1) is merits-based, (2) materially alters the legal relationship among the parties, (3) directly benefits the plaintiff, and (4) is never reversed by a court is a "prevailing party." .........31

     A.     This approach best accords with Congress's stated purpose in adopting Section 1988. .........................................................31

     B.     This rule is drawn directly from controlling Supreme Court precedent. ..................................................................33

     C.     Every other circuit to have considered the issue applies this test with only slight variation in language.................................34

     D.     Applying the rules as adopted in every other circuit, Plaintiffs meet their tests for prevailing party status. .........................38

     E.     This Court should not adopt the causation language from *Dearmore*, but even if it did, these Plaintiffs would still be prevailing parties. ....................................................39

         1.     In practice, courts in the Fifth Circuit do not require exacting proof of traditional causation to award prevailing party status........................................40

         2.     Requiring proof of causation would complicate fee related litigation unnecessarily. .....................................42

         3.     Even under the *Dearmore* test, Plaintiffs are prevailing parties. .........................................................43

IV.    Adopting Plaintiffs' proposed test promotes fairness, justice, and Congressional intent. ...............................................................47

     A.     *Smyth*'s bright-line rule encourages litigation gamesmanship by government actors and leaves deserving Plaintiffs uncompensated. ..................................................................47

III

B.    None of the Government's concerns carry any persuasive weight. ...................................................................48

CONCLUSION........................................................................50

ORAL ARGUMENT STATEMENT .....................................................51

CERTIFICATE OF COMPLIANCE.....................................................53

CERTIFICATE OF SERVICE .........................................................54

ADDENDUM:  STATUTE INVOLVED.................................................55

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amawi v. Pflugerville Indep. Sch. Dist.*,
No. 1:18-CV-1091-RP, 2021 WL 1226569 (W.D. Tex. Mar. 31, 2021), *appeal filed*, No. 21-50360 (5th Cir. Apr. 29, 2021) .........................40, 41

*Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*,
550 F.2d 189 (4th Cir. 1977) ...........................................................*passim*

*Brandon v. Guilford Cty. Bd. of Elections*,
921 F.3d 194 (4th Cir. 2019) ...........................................................24

*Buckhannon Bd. & Care, Inc. v. W.V. Dep't of Health & Home Res.*,
532 U.S. 598 (2001)..........................................................38, 42, 43

*City of Riverside v. Rivera*,
477 U.S. 561 (1986)..........................................................24, 31

*Common Cause/Georgia v. Billups*,
554 F.3d 1340 (11th Cir. 2009) ...........................................................26, 37

*Creuzot v. Green*,
No. 3:17-CV-404-M-BK, 2019 WL 2746612 (N.D. Tex. June 13, 2019) ...........................................................41

*CRST Van Expedited, Inc. v. EEOC*,
578 U.S. 419 (2016)..........................................................4, 25, 33

*Dearmore v. City of Garland*,
519 F.3d 517 (5th Cir. 2008) ...........................................................*passim*

*Dupuy v. Samuels*,
423 F.3d 714 (7th Cir. 2005) ...........................................................26, 36

*Farrar v. Hobby*,
506 U.S. 103 (1992)..........................................................25

*Faust v. S.C. State Highway Dep't*,
721 F.2d 934 (4th Cir. 1983) ...........................................................30

*Grissom v. The Mills Corp.*,
  549 F.3d 313 (4th Cir. 2008) ...............................................................23

*Haley v. Pataki*,
  106 F.3d 478 (2d Cir. 1997) ..........................................................26, 35

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)........................................................................24, 31

*Henderson ex rel. Nat'l Labor Relations Bd. v. Bluefield Hosp. Co.*,
  902 F.3d 432 (4th Cir. 2018) ...............................................................28

*Hewitt v. Helms*,
  482 U.S. 755 (1987)..............................................................................25

*Higher Taste, Inc. v. City of Tacoma*,
  717 F.3d 712 (9th Cir. 2013) .........................................................26, 36

*Kan. Judicial Watch v. Stout*,
  653 F.3d 1230 (10th Cir. 2011) .....................................................26, 36

*Lefemine v. Wideman*,
  568 U.S. 1 (2012) (per curiam)....................................................*passim*

*Mastrio v. Sebelius*,
  768 F.3d 116 (2d Cir. 2014) .................................................................35

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)..............................................................................14

*McAfee v. Boczar*,
  738 F.3d 81 (4th Cir. 2013), *as amended* (4th Cir. Jan. 23, 2014)......23

*Pa. v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986)..............................................................................23

*Pashby v. Delia*,
  709 F.3d 307 (4th Cir. 2013) ...........................................................3, 28

*Payne v. Taslimi*,
  998 F.3d 648 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 716 (2021) ....30

VI

*People Against Police Violence v. City of Pittsburgh*,
   520 F.3d 226 (3d Cir. 2008) ..........................................................*passim*

*Planned Parenthood S.W. Ohio Region v. Dewine*,
   931 F.3d 530 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 189 (2020) ..26, 34, 35, 39

*Real Truth About Obama, Inc. v. Fed. Election Comm'n*
   575 F.3d 342, 346-47 (4th Cir.) ............................................................29

*Reyazuddin v. Montgomery Cty.*,
   988 F.3d 794 (4th Cir.), *cert. denied*, 142 S. Ct. 389 (2021) ...........................23

*Rogers Group, Inc. v. City of Fayetteville*,
   683 F.3d 903 (8th Cir. 2012) ..........................................................26, 36

*Rum Creek Coal Sales, Inc. v. Caperton*,
   31 F.3d 169 (4th Cir. 1994) ...............................................................24

*Select Milk Producers, Inc. v. Johanns*,
   400 F.3d 939 (D.C. Cir. 2005)........................................................26, 27, 37

*Sinapi v. R.I. Bd. of Bar Examiners*,
   910 F.3d 544 (1st Cir. 2018)...............................................................38

*Smyth ex rel. Smyth v. Rivero*,
   282 F.3d 268 (4th Cir. 2002) ........................................................*passim*

*Snider Int'l Corp. v. Town of Forest Heights*,
   739 F.3d 140 (4th Cir. 2014) .............................................................13

*Sole v. Wyner*,
   551 U.S. 74 (2007).....................................................................34, 39

*Stinnie v. Holcomb*,
   734 F. App'x 858 (4th Cir. 2018) .........................................................9, 10, 50

*Stinnie v. Holcomb*,
   396 F. Supp. 3d 653 (W.D. Va. 2019) ................................................17

*Stinnie v. Holcomb*,
   355 F. Supp. 3d 514 (W.D. Va. 2018).................................................*passim*

*Stinnie v. Holcomb*,
Case No. 3:16-cv-00044, 2017 WL 963234 (W.D. Va. Mar. 13, 2017) ................................................................................9

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
489 U.S. 782 (1989)................................................................24, 25

*The Real Truth About Obama, Inc. v. Fed. Election Comm'n*
575 F.3d 342, 346-47 (4th Cir.) (per curiam), *vacated on othe grounds,* 559 U.S. (2010).................................................29

*Tri-City Cmty. Action Program, Inc. v. City of Malden*,
680 F. Supp. 2d 306 (D. Mass. 2010)................................................38

*Veasey v. Wilkins*,
158 F. Supp. 3d 466 (E.D.N.C. 2016) ..........................................28, 29

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008)..........................................................*passim*

*Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*,
822 F.3d 739 (4th Cir. 2016) ....................................................23

**Statutes**

28 U.S.C. § 1291 ................................................................5

28 U.S.C. § 1331 ................................................................5

28 U.S.C. §1343(a)(3) ............................................................5

42 U.S.C. § 1983 ..........................................................8, 32, 37

42 U.S.C. § 1988 ..........................................................*passim*

Va. Code § 46.2-395 ..........................................................*passim*

Va. Code § 46.2-395(B)..........................................................6, 7

Va. Code § 49-1 ................................................................49

**Constitutions**

U.S. Const. Article III ........................................................................9

U.S. Const. amend. XI .......................................................................9

Va. Const. art. I, § 3 ........................................................................49

**Rules**

Fed. R. App. P. 26.1 ..........................................................................i

Local R. 26.1 ......................................................................................i

Fed. R. App. P. 28(f) ........................................................................55

Fed. R. Civ. P. 54(d) ........................................................................24

**Other Authorities**

Lisa Provence, *UPDATE: Northam calls for end of automatic driver's
    license suspensions* C-VILLE Weekly, Mar. 26, 2019,
    https://www.c-ville.com/license-suspension-scheme (last visited
    Aug. 30, 2022) ..........................................................................44, 45

Matthew Chaney, *Virginia License Suspension Law Faces New
    Challenges*, Va. Law. Wkly., Jan. 9, 2019,
    https://valawyersweekly.com/2019/01/09/va-license-suspension-
    law-faces-new-challenges/ .............................................15, 46, 47

Mel Leonor, *Northam seeks to halt license suspensions for unpaid
    court fees*, Richmond Times-Dispatch (Mar. 26, 2019), https://
    www.richmond.com/news/local/government-politics/northam-
    seeks-to-halt-license-suspensions-for-unpaid-court-
    fees/article_8ed0c8dd-9445-5f7e-bbb4-f7fe0c7169f7.html..............................16

Office of Virginia Governor, *Gov. Northam Announces Budget
    Amendment to Eliminate Driver's License Suspensions for
    Nonpayment of Court Fines and Costs* (Mar. 26, 2019),
    http://bit.ly/GovNorthamBudget ............................................6

S. Rep. No. 94-1011 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908 ...............31, 32

Virginia Legis. Info. Sys., Va. HB 1700 Budget Bill, 2019 Sess.,
  http://lis.virginia.gov/cgi-bin/legp604.exe?191+sum+ HB1700 .................16, 43

Virginia Legis. Info. Sys., Va. HB 1700, *Adjustments and
  Modifications to Fees*, 2019 Sess., http://lis.virginia.gov/cgi-
  bin/legp604.exe?191+amd+HB1700AG ..........................................................16

Virginia Legis. Info. Sys., Va. HB 1700, *Governor's
  Recommendation*, 2019 Sess., http://lis.virginia.gov/cgi-
  bin/legp604.exe?191+amd+HB1700AG ..........................................................16

Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess.,
  http://lis.virginia.gov/cgi-bin/legp604.exe?201+ful+SB1ER+pdf ..............18, 19

Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess.,
  https://lis.virginia.gov/cgi-
  bin/legp604.exe?ses=201&typ=bil&val=sb1 ..............................................17, 18

Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess.,
  https://lis.virginia.gov/cgi-
  bin/legp604.exe?201+vot+HV1517+SB0001 ....................................................45

x

# INTRODUCTION

Plaintiffs are indigent Virginia citizens who sued the Commissioner of the Department of Motor Vehicles (the "Commissioner") for suspending their driver's licenses under Virginia Code § 46.2-395 ("Section 46.2-395" or "§ 46.2-395"). When this suit was filed, § 46.2-395 authorized these suspensions without notice, a hearing, or consideration of Plaintiffs' inability to pay. One of Plaintiffs' primary arguments was that each suspension amounted to a taking of their constitutional rights without due process. Plaintiffs moved for a preliminary injunction. The Commissioner defended § 46.2-395 vigorously. Plaintiffs won. The District Court for the Western District of Virginia (the "District Court") found that Plaintiffs were likely to prevail on the merits, enjoined enforcement of the statute against them and ordered that the Commissioner "remove any current suspensions of the Plaintiffs' driver's licenses imposed under" § 46.2-395. (JA843); *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 520 & 533 (W.D. Va. 2018). Subsequently the case was mooted when the General Assembly repealed § 46.2-395.

The preliminary injunction changed the trajectory of the litigation and Plaintiffs' lives. After its entry, Plaintiffs were no longer subject to unconstitutional suspensions of their driver's licenses under § 46.2-395 without payment of reinstatement fees. Based on that success, Plaintiffs filed a Petition for Attorneys' Fees and Litigation Expenses (the "Fee Petition") under 42 U.S.C.

1

§ 1988.  The District Court denied the Fee Petition, and a panel of this Court affirmed.  Both courts recognized the significance of Plaintiffs' win.  The denial was based entirely on this Court's decision in *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002).

Under *Smyth*, the grant of a preliminary injunction is *never* sufficient to support prevailing party status.  No other circuit draws such a firm line.  Every other circuit acknowledges that, at least in some cases, a plaintiff who secures a preliminary injunction can be deemed a "prevailing party" under the federal fee-shifting statutes.  *Smyth* is, as Judge Harris wrote in her concurring opinion, a "complete outlier."  (DE at 14.)  In every other circuit Plaintiffs would have been deemed prevailing parties.

Twenty years ago, when this Court decided *Smyth*, the preliminary injunction bar in the Fourth Circuit was much lower.  Under *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977), a plaintiff could obtain a preliminary injunction upon showing that there was a substantial question on the merits.  *Id.* at 195.  That changed with the Supreme Court decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).  From then on, a "substantial question" on the merits was not enough.  A plaintiff could obtain a preliminary injunction *only* if he or she was "likely to succeed" on the merits.  *Id.* at 20.  This Court "recalibrated" its preliminary

2

injunction standard after *Winter*.  *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).  *Blackwelder* no longer governs.

Sitting *en banc* this Court now has an opportunity to recalibrate its fee-shifting standard to account for this change.  It should do so.  As long as *Smyth*'s categorical rule governs, the people of Maryland, North Carolina, South Carolina, Virginia, and West Virginia do not have the same opportunity to vindicate their constitutional rights that Americans living elsewhere already enjoy.  The point of the fee-shifting provisions in 42 U.S.C. § 1988 is to incentivize lawyers to take meritorious civil rights cases like this one.  *Smyth* undermines that incentive structure.  Under *Smyth*, a government actor can defend an unconstitutional law with impunity even after a district court finds the law is unconstitutional and grants a preliminary injunction against its enforcement.  So long as the government moots the case prior to entry of a permanent injunction or other final judgment, the plaintiff—and his or her lawyers—are left holding the bag.  This risk deters plaintiffs from bringing meritorious civil rights cases and is the opposite of what Congress intended.

Replacing *Smyth*'s categorical rule will not require legal gymnastics. Simply put, and consistent with the reasoning of Supreme Court precedent, a plaintiff who obtains an injunction that (1) is merits-based, (2) materially alters the legal relationship among the parties, (3) directly benefits the plaintiff, and (4) is

never reversed by a court is a "prevailing party." *See CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 422 (2016); *Lefemine v. Wideman*, 568 U.S. 1, 4-5 (2012) (per curiam). If this Court adopts the language of these cases as the standard applicable in cases involving preliminary injunctions as well, it will give district courts the flexibility needed to award attorneys' fees in appropriate preliminary injunction cases while retaining necessary checks on fee awards.

The Commissioner may argue, as he has in the past, that anything other than *Smyth*'s bright-line rule will be more complicated for district courts to apply. But simplicity of application is woefully insufficient to override Congress's stated objective of ensuring meaningful representation in civil rights cases. And, moreover, the Commissioner's workability concerns are overstated. District courts in this circuit are well-equipped to apply a straightforward four-part test in fee-shifting cases. District courts in every other circuit have been doing so for years.

Accordingly, this Court should (1) overturn *Smyth*, (2) reverse the decisions of the Panel and the District Court, (3) grant Plaintiffs' Fee Petition, (4) hold that Plaintiffs are prevailing parties and their attorneys are entitled to fees and other costs and expenses under 42 U.S.C. § 1988, and (5) remand this case to the District Court for further proceedings.

4

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). The District Court entered its Order dismissing this case as moot on May 7, 2020. (JA1017–18.) In that Order, the District Court retained jurisdiction for purposes of determining Plaintiffs' Fee Petition, which was filed on July 2, 2020. (JA1020–57.) The District Court referred the Fee Petition to United States Magistrate Judge Joel C. Hoppe (JA1058), who issued a Report and Recommendation on February 16, 2021, recommending that the Fee Petition be denied (the "Report and Recommendation") (JA1128–55). On March 1, 2021, Plaintiffs timely filed Objections to the Report and Recommendation (JA1184–1200), which were overruled by the District Court on June 4, 2021 (JA1256–65). Plaintiffs filed a timely Notice of Appeal on July 2, 2021. (JA1266–68.)

This Court has jurisdiction under 28 U.S.C. § 1291. A three-judge panel of this Court issued its opinion on June 27, 2022, affirming the District Court on the basis of *Smyth*. (DE 52.) The Judgment and Notice of Judgment were issued that same day. (DE 54-1, 54-2.) Plaintiffs petitioned the full Court for rehearing en banc. (DE 55.) This Court granted Plaintiffs' petition and ordered additional briefing. (DE 65, 67.)

## ISSUE PRESENTED

1.      Should this Court overturn *Smyth* and adopt an updated standard consistent with current Supreme Court precedent for determining prevailing party status in cases involving entry of preliminary injunctions where the cases are subsequently mooted by legislative action?

2.      Are Plaintiffs prevailing parties when they obtained a merits-based preliminary injunction that materially altered the relationship among the parties in a way that directly benefited Plaintiffs and remained in place when the case was mooted by legislative action after entry of the preliminary injunction?

## STATEMENT OF THE CASE

**I.      Section 46.2-395 punished those unable to pay court debt for their poverty without due process.**

For years, the Commonwealth of Virginia denied Plaintiffs procedural due process, among other things, by automatically suspending driver's licenses for failure to pay court debt without holding a hearing or invoking any process whatsoever to determine ability to pay.  *See* Va. Code § 46.2-395.

Under § 46.2-395(B), license suspension by DMV was automatic and mandatory for "failure or refusal" to pay court debt within the specified period (within thirty days of conviction or according to the terms of any court-ordered payment plan).  Plaintiffs are indigent Virginia residents whose driver's licenses were automatically and indefinitely suspended by the Commissioner for failure to

6

pay court debt that they could not afford. (*See, e.g.*, First Am. Compl. ¶¶ 1–5, 27, 31, 40, 66, 85–86, 88.)[1] Suspension occurred automatically, without a hearing or any inquiry into the reasons for nonpayment or financial circumstances. (*Id*. ¶ 86.)

The Commissioner maintains a database of individual driver profiles and updates their statuses based on information received from state courts. (*Id*. ¶ 65.) Upon receipt of information indicating that a person has failed to pay court debt, the Commissioner automatically issued a suspension of the person's driver's license. (*Id*. ¶ 66.) The Commissioner did not conduct a review of a person's financial condition or otherwise inquire as to the reasons for default at any point related to suspending a license for failure to pay. (*Id*. ¶ 68.)

The Commissioner also holds the keys to reinstatement of licenses once suspended, but the Commissioner would not reinstate Plaintiffs' licenses unless they satisfied all court debt in all jurisdictions or they obtained payment plans from each court to which they are indebted. (*Id*. ¶¶ 69–73.) Reinstatement of a suspended license also required an additional reinstatement fee of at least $145 payable to DMV. (*Id*. ¶ 87.)

Under Va. Code § 46.2-395(B), hundreds of thousands of drivers lost their licenses simply because they lacked the financial means to pay court debt. (*See*

---

[1] All citations to paragraphs in Plaintiffs' First Amended Complaint can be found at JA226–70.

First Am. Compl. ¶¶ 2, 26.)  In 2017, for example, more than 970,000 driver's

licenses were in suspended status in Virginia for failure to pay court debt.  (*Id*.

¶ 26.)  Those suspensions deprived drivers of reliable, lawful transportation

necessary to get to and from work, keep medical appointments, care for ill or

disabled family members, and, paradoxically, to meet their financial obligations to

the courts.  (*See, e.g.*, *id.* ¶¶ 2, 31, 33, 39, 109, 151, 152, 168.)

Plaintiffs were unable, not unwilling, to pay their court debt.  (*Id*. ¶¶ 85, 88.)

Indeed, the District Court found that Plaintiffs could not afford to pay.  *Stinnie*, 355

F. Supp. 3d at 520–23.  In doing so, the District Court noted the many struggles

Plaintiffs have endured that have adversely affected their ability to pay their court

debt, such as serious illness, unemployment, and incarceration.  *See id.*  Despite

Plaintiffs' inability to pay, however, the District Court found that none of them

were asked about their financial circumstances prior to license suspension or

otherwise provided due process.  *See id.*

## II.    Plaintiffs sued to defend their constitutional rights, but the District Court dismissed the Complaint finding a lack of subject matter jurisdiction.

On July 6, 2016, Plaintiffs took a stand to end the harm § 46.2-395 had been

causing.  (JA27–172.)  They filed suit under 42 U.S.C. § 1983 against the

Commissioner, claiming constitutional violations stemming from § 46.2-395.

(JA72–79.)  Plaintiffs sought certain declaratory and injunctive relief, as well as attorneys' fees and costs under 42 U.S.C. § 1988.  (JA79–80.)

The Commissioner moved to dismiss.  (JA173–75.)  The Department of Justice submitted a Statement of Interest of the United States in opposition to the motion to dismiss "to assist the Court in considering the important constitutional questions presented."  Statement of Interest of the United States, *Stinnie v. Holcomb*, 734 F. App'x 858 (4th Cir. 2018) (No. 17-1740, Joint Appendix at 288–309).  In its opinion, the District Court noted that automatic suspension of driver's licenses "may very well violate Plaintiffs' constitutional rights to due process and equal protection."  *Stinnie v. Holcomb*, Case No. 3:16-cv-00044, 2017 WL 963234, at *20 (W.D. Va. Mar. 13, 2017).  Nevertheless, the District Court dismissed the case on the grounds that it lacked jurisdiction under the *Rooker-Feldman* doctrine, Article III, and Eleventh Amendment immunity.  *Id*.  Plaintiffs appealed the dismissal.  (JA223–25.)

III.  **This Court allowed the case to go forward, remanding with instructions to permit Plaintiffs to amend their Complaint.**

On appeal, this Court determined that it "lack[ed] jurisdiction to consider Plaintiffs' appeal because the district court's dismissal without prejudice was not a final order."  *Stinnie*, 734 F. App'x at 861.  Nonetheless, this Court "remand[ed] the case to the district court with instructions to allow Plaintiffs to amend their

9

complaint" because it concluded Plaintiffs could cure any deficiencies that had been identified by the Court in its dismissal order. *See id.* at 860–63.

Chief Judge Gregory dissented because he concluded "the district court's dismissal of Plaintiffs' case for lack of jurisdiction [was] an appealable final order." *Id.* at 863 (Gregory, C.J., dissenting). He would have reached the merits and determined that the District Court had improperly dismissed the action on jurisdictional grounds. *See id.* at 866-68. Chief Judge Gregory's well-reasoned and thoughtful opinion also highlighted the strengths of Plaintiffs' merits arguments. (*See id.* at 863–64 (detailing Virginia's driver's license scheme which did "not differentiate between those *unable* to pay from those *unwilling* to pay"); *id.* at 864–65 (noting the disastrous impact the statute had on Virginians).)

Chief Judge Gregory hit the nail on the head characterizing § 46.2-395 as a "license-for-payment scheme." *See id.* at 863–64. Virginia was charging people about a *half-billion* dollars in court fines and fees each year and was using that money to fund the government. *See id.* Then the Commissioner was automatically suspending licenses for nonpayment without considering ability to pay. *See id.* The system was wrong, the harm caused by the inequitable treatment under the statute was severe, and Plaintiffs ultimately would win relief from that practice.

10

**IV.    On remand, Plaintiffs filed their First Amended Class Action Complaint and Motion for Preliminary Injunction on the same day.**

In September 2018, Plaintiffs filed their First Amended Class Action

Complaint in the District Court, alleging, like the first Complaint, that § 46.2-395

was unconstitutional.  (JA262–68.)  As they had in their initial Complaint,

Plaintiffs sought declaratory and injunctive relief, as well as attorneys' fees and

costs under 42 U.S.C. § 1988.  (JA268–69.)  At the same time, Plaintiffs filed a

Motion for Preliminary Injunction, asking this Court to: (1) enjoin the

Commissioner from enforcing § 46.2-395 against Plaintiffs without notice and a

determination of ability to pay; (2) remove any current suspensions of Plaintiffs'

driver's licenses imposed under § 46.2-395; and (3) enjoin the Commissioner from

charging a fee to reinstate Plaintiffs' licenses if no other restrictions on their

licenses existed.  (JA297.)  That motion was fully briefed on November 9, 2018.

(JA14–15.)

On November 14, 2018, the Commissioner once again moved to dismiss

(JA818–19), but this time the Court did not dismiss the case and instead granted

Plaintiffs a preliminary injunction on December 21, 2018.  (JA843–44.)  Then

litigation proceeded with respect to class certification briefing, fact and expert

discovery, including related motions practice, and motions for summary judgment.

(JA17–23.)  More than seven months after entry of the preliminary injunction, and

about five weeks before the case was scheduled to go to trial in August of 2019,

11

the District Court stayed the case at the request of the Commissioner and over

Plaintiffs' objection, pending the 2020 session of Virginia's General Assembly.

(JA15–23; JA955.)

**V.  The District Court granted the preliminary injunction on the merits, materially altering the legal relationship among the parties.**

Following briefing by the parties and a hearing involving several hours of

testimony, including expert evidence, the District Court granted Plaintiffs' Motion

for Preliminary Injunction on December 21, 2018, relieving Plaintiffs of the

burdens of § 46.2-395 and signaling that the statute likely failed to accord with

constitutional guarantees of due process.  *Stinnie*, 355 F. Supp. 3d at 527–32;

(JA820–44).

In its opinion, the District Court made it clear that it was "turn[ing] to the

merits of the preliminary injunction."  355 F. Supp. 3d at 527.  This preliminary

injunction did not maintain the status quo, it upended it.  In deciding the merits of

the preliminary injunction, the District Court turned, as it should, to the

"govern[ing]" test from *Winter v. Natural Resources Defense Council, Inc.*, 555

U.S. 7 (2008).  *Stinnie*, 355 F. Supp. 3d at 527.  It specifically noted that "[t]o

obtain a preliminary injunction, the moving party must establish 'that he is likely

to succeed on the merits, that he is likely to suffer irreparable harm in the absence

of preliminary relief, that the balance of equities tips in his favor, and that an

injunction is in the public interest.'"  *Id.* (citation omitted).

The District Court then concluded that Plaintiffs showed they were likely to succeed, at the very least, on their procedural due process claim. *See id.* at 527–28. In so ruling, the District Court carefully examined the notice and hearing components of procedural due process. *See id.* at 528–31. The District Court determined that "Plaintiffs . . . made a clear showing that they are likely to establish that they are not provided an opportunity to be heard." *Id.* at 529. And, of course, having an opportunity to be heard is crucial to procedural due process. *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014).

The District Court recognized that § 46.2-395 failed the hearing requirement of procedural due process. *Stinnie*, 355 F. Supp. 3d at 529 ("Plaintiffs are likely to show § 46.2-395 does not provide *any* hearing, much less one that satisfies due process."); *id.* at 529–30 ("The Court determines that Plaintiffs are likely to succeed because the procedures in place are not sufficient to protect against the erroneous deprivation of the property interest involved. Indeed, § 46.2-395, on its face, provides no procedural hearing at all."). That was precisely what Plaintiffs had been arguing all along. (Compl. ¶¶ 410-18;[2] First Am. Compl. ¶¶ 323-31 ("In the absence of notice and hearing, which do not presently exist under Virginia law in relation to driver's license suspensions for unpaid court debt, the risk is very

---

[2] All citations to paragraphs in Plaintiffs' original Complaint can be found at JA27–81.

13

high that a debtor will be deprived of his or her driver's license for reasons attributable to his or her poverty.").)

The preliminary injunction opinion marched through the *Mathews* factors for procedural due process. *See Stinnie*, 355 F. Supp. 3d at 529–31 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). In doing so, it considered the parties' arguments on the merits. *Id.* The District Court also determined that the rest of the *Winter* factors, "irreparable harm, the balance of equities, and the public interest," all counseled in Plaintiffs' favor. *Id.* at 532. First, "[i]rreparable harm [was] clearly demonstrated through the facts surrounding Plaintiff Stinnie." *Id.* Regarding the balance of equities, and the public interest, the District Court noted that it would actually help Virginia for the District Court to enjoin unconstitutional activity. *See id.* And no interest Virginia might have had was "furthered by a license suspension scheme that neither consider[ed] an individual's ability to pay nor provide[d] him with an opportunity to be heard on the matter." *See id.* Thus, the harm to Plaintiffs stemming from § 46.2-395 "outweigh[ed] any harm the issuance of a preliminary injunction would cause others." *Id.*

In granting the injunction, the District Court ordered that: (1) the Commissioner was "preliminarily enjoined from enforcing . . . § 46.2-395 against Plaintiffs unless or until [the Commissioner] or another entity provide[d] a hearing regarding license suspension and provide[d] adequate notice thereof"; (2) the

14

Commissioner shall "remove any current suspensions of Plaintiffs' driver's licenses imposed under . . . § 46.2-395"; and (3) the Commissioner was "enjoined from charging a fee to reinstate Plaintiffs' driver's licenses if there [were] no other restrictions on their licenses." (JA843.) The Commissioner did not appeal the preliminary injunction, and, consistent with the preliminary injunction, provided the relief the Plaintiffs had prevailed upon via the preliminary injunction.

**VI.   In recognition of the impact of the preliminary injunction, a bi-partisan majority in the Virginia General Assembly repealed § 46.2-395.**

The entry of the preliminary injunction was a critical event that raised the profile of this litigation in the General Assembly. For example, less than a month later, Senator William M. Stanley, who sponsored the legislation repealing § 46.2-395, remarked: "Hopefully with the preliminary injunction being granted, anybody who has doubts about [the bill to end the required license suspensions for nonpayment of court debt] will remove them. I hope the House of Delegates will join the Senate in fixing this problem." Matthew Chaney, *Virginia License Suspension Law Faces New Challenges*, Va. Law. Wkly., Jan. 9, 2019, https://valawyersweekly.com/2019/01/09/va-license-suspension-law-faces-new-challenges/ (last visited Aug. 30, 2022).

After the preliminary injunction hearing and the blockage of repeal by the House of Delegates, Governor Northam proposed Budget Amendment No. 33 (the "Budget Amendment") to provide temporary relief to individuals whose driver's

15

licenses had been automatically suspended for failure to pay court debt. Office of

Virginia Governor, *Gov. Northam Announces Budget Amendment to Eliminate*

*Driver's License Suspensions for Nonpayment of Court Fines and Costs* (Mar. 26,

2019), http://bit.ly/GovNorthamBudget (last visited Aug. 30, 2022). The General

Assembly passed the Budget Amendment in the House of Delegates by a vote of

seventy to twenty-nine, and in the Senate by a vote of thirty to eight. *See* Virginia

Legis. Info. Sys., Va. HB 1700 Budget Bill, 2019 Sess., https://lis.virginia.gov/cgi-

bin/legp604.exe?191+sum+HB1700. The Budget Amendment suspended the

operation of § 46.2-395 from July 1, 2019, to June 30, 2020 (one budget cycle).

*See* Virginia Legis. Info. Sys., Va. HB 1700, *Governor's Recommendation*, 2019

Sess., http://lis.virginia.gov/cgi-bin/legp604.exe?191+amd+HB1700AG (last

visited Aug. 30, 2022). It also waived associated reinstatement fees for driver's

licenses otherwise eligible for reinstatement. *See id.*, *Adjustments and*

*Modifications to Fees*. The General Assembly's passage of the Budget

Amendment was undoubtedly influenced by this litigation. *See* Mel Leonor,

*Northam seeks to halt license suspensions for unpaid court fees*, Richmond Times-

Dispatch (Mar. 26, 2019), https://www.richmond.com/news/local/government-

politics/northam-seeks-to-halt-license-suspensions-for-unpaid-court-

fees/article_8ed0c8dd-9445-5f7e-bbb4-f7fe0c7169f7.html (quoting Delegate and

then-House Appropriations Chair Chris Jones as saying, "[w]e took what I thought

16

was a conservative approach by leaving the money in to respond to any potential judicial action that would invalidate the existing statute").

Twenty days after the General Assembly passed the Budget Amendment, the Commissioner again moved to dismiss the case as moot or, alternatively, to stay the case to allow the General Assembly an additional chance to pass a permanent repeal. (JA845–91.) Plaintiffs opposed the motion. (JA924–41.) Plaintiffs contended that the General Assembly might not repeal § 46.2-395, noting that it had failed to do so for years, and that staying the action would waste time. (JA937–39.) Plaintiffs wanted "their day in court" without delay. (JA939.) On June 28, 2019, the District Court denied the motion to dismiss but granted the motion to stay pending the General Assembly's 2020 session. *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 661 (W.D. Va. 2019); (JA955–56). The same day, the Court canceled the bench trial that had been scheduled for August 2019. (JA23.)

During its 2020 regular session, the General Assembly considered proposed legislation to permanently eliminate the statute's unconstitutional mandate. *See* Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess., https://lis.virginia.gov/cgi-bin/legp604.exe?ses=201&typ=bil&val=sb1 (last visited Aug. 30, 2022). One of those bills was SB1 introduced by Senator Stanley on November 18, 2019. *See id.* On January 10, 2020, the Commissioner sent a letter to Senator Stanley regarding the legislation. (JA968–1000.) In the letter, the Commissioner gave advice about

17

how to repeal § 46.2-395 effectively. (*Id.*) The Commissioner also recognized the direct impact this case was having on the legislative process:

> As you are aware DMV is currently a party to the *Stinnie v. Holcomb* case, in which the issue under consideration is driver's license suspensions for failure to pay court fines and costs pursuant to § 46.2-395. On June 28, 2019, *the Court stayed the litigation until after the close of the 2020 General Assembly Session to allow the legislature to repeal § 46.2-395*. An emergency enactment clause is needed to demonstrate to the Court that matters at issue in *Stinnie v. Holcomb* litigation have been addressed by the General Assembly. *This should result in the pending litigation being dismissed*, relieving the Department from continuing to incur costly legal fees.

(JA968–69 (emphases added).) The Commissioner even went so far as to "offer a substitute" bill that had all of his recommended changes. (JA969–1000.) In other words, the Commissioner was actively calling for a repeal in order to stem his losses in this litigation from continuing to defend a law the District Court had already concluded likely violated procedural due process.

The General Assembly passed SB1ER on February 26, 2020, with an overwhelming majority in both the House and Senate. *See* Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess., https://lis.virginia.gov/cgi-bin/legp604.exe?ses=201& typ=bil&val=sb1 (showing SB1ER passed both chambers with the support of at least three-quarters of each chamber's members). Governor Northam signed SB1ER in April, and it took effect on July 1, 2020. *See id.*

SB1ER repealed § 46.2-395. Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess., http://lis.virginia.gov/cgi-bin/legp604.exe?201+ful+SB1ER+pdf, at lines

18

1244–45 (last visited Aug. 30, 2022). It also required the Commissioner to

reinstate driving privileges suspended solely because of § 46.2-395:

> [T]he Commissioner of the Department of Motor Vehicles shall reinstate a person's privilege to drive a motor vehicle that was suspended prior to July 1, 2019, solely pursuant to § 46.2-395 of the Code of Virginia and shall waive all fees relating to reinstating such person's driving privileges. Nothing in this act shall require the Commissioner to reinstate a person's driving privileges if such privileges have been otherwise lawfully suspended or revoked or if such person is otherwise ineligible for a driver's license.

*Id.* at lines 1246–51.

## VII. The District Court held it was constrained by *Smyth* to deny the Fee Petition, despite Plaintiffs' "thoughtful and compelling argument" to the contrary.

In light of the action taken by the General Assembly, on May 7, 2020, the

parties stipulated that this action was moot. (JA1010–13.) The District Court

retained jurisdiction to determine Plaintiffs' entitlement to attorneys' fees and

entered an order bifurcating the briefing on Plaintiffs' Fee Petition. (JA1017–18.)

Pursuant to the briefing schedule entered by the District Court, the parties first

briefed Plaintiffs' entitlement to recover attorneys' fees as prevailing parties. (*Id.*)

The amount and reasonableness of the fees to be awarded were reserved to be

addressed in a subsequent round of briefing. (*Id.*)

The District Court referred the Fee Petition to Magistrate Judge Hoppe

(JA1058), who issued his Report and Recommendation on February 16, 2021,

recommending that the Fee Petition be denied (JA1128). In the Report and

19

Recommendation, Magistrate Judge Hoppe found that the preliminary injunction in this case "constituted merits-based relief that materially altered the relationship between the parties" and "carr[ied] all the necessary judicial imprimatur." (JA1148–49.)  In reaching this conclusion, the Report and Recommendation rejected the Commissioner's arguments that the preliminary injunction was too narrow to constitute relief sufficient to confer prevailing party status and that the Commissioner did not believe Plaintiffs ultimately would have prevailed in the case.  (JA1150–51.)

Nonetheless, the Report and Recommendation concluded that the District Court was constrained by this Court's decision in *Smyth* to hold that Plaintiffs had not achieved prevailing party status here because, in the Fourth Circuit, a preliminary injunction is *never* sufficiently merits-based to confer prevailing party status.  (JA1139; *see* JA1152.)  The Report and Recommendation reached this conclusion despite finding that (1) the *Smyth* panel "relied on the now-outdated formulation of the preliminary injunction standard articulated in *Blackwelder*" (JA1141), (2) the current preliminary injunction standard under Supreme Court and Fourth Circuit law "requires a more robust merits-based showing" (JA1143), and

20

(3) the *Smyth* decision had been "materially undermined by later Supreme Court precedent" (JA1152).

On March 1, 2021, Plaintiffs timely filed Objections to the Report and Recommendation (JA1184–1200), but the Commissioner did not object to any of the findings in the Report and Recommendation (*see* JA24–25). Plaintiffs' Objections were overruled by the District Court on June 4, 2021. (JA1256–65.) This appeal followed.

## VIII. A panel of this Court ruled in favor of the Commissioner on the basis of *Smyth*, but the concurrence noted that the outlier rule in *Smyth* "allows defendants to game the system."

A three-judge panel of this Court affirmed the District Court on the grounds that *Smyth* remained binding authority. (*See* DE 52 at 11 ("In sum, at this juncture, we are bound by *Smyth* because it is directly on point and is neither distinguishable from nor untenable with any Supreme Court decision.").) Judge Harris joined in the panel's opinion, but wrote a concurrence noting that this Court "may wish" to reconsider *Smyth*. (*See id.* at 13 (Harris, J., concurring).) Judge Harris first pointed out that *Winter* went "a long way toward addressing [the *Smyth* court's] concerns." (*See id.*) She went on to note how the rule in *Smyth* "is a complete outlier" among the other circuits. (*See id.* at 14.) Without *Smyth*'s categorical bar, Judge Harris posited that "plaintiffs would almost certainly qualify as prevailing

21

parties[.]"  (*See id.* at 16.)  But instead, *Smyth*'s rule "allows defendants to game the system."  (*See id.* at 17.)

## SUMMARY OF ARGUMENT

*Smyth*'s bright-line rule barring Plaintiffs, who have attained merits-based injunctive relief, from prevailing party status stands alone among the circuits and no longer makes sense in light of later-decided Supreme Court cases.  This Court should overturn *Smyth* and hold that a plaintiff who obtains a preliminary injunction that (1) is merits-based, (2) materially alters the legal relationship among the parties, (3) directly benefits the plaintiff, and (4) is never reversed by a court is a "prevailing party."  Here, the District Court's judicial imprimatur (in the form of a merits-based preliminary injunction) materially altered the relationship among the parties in a way that directly benefited Plaintiffs.  Then the District Court paused the litigation, over Plaintiffs' objection, to give the General Assembly an additional chance to repeal § 46.2-395.  (JA955–56.)  But those subsequent events do not detract from the legal significance of the preliminary injunction, which remained undisturbed to the conclusion of the litigation and provided full and continuing relief to Plaintiffs.  Allowing Plaintiffs, and other litigants like them, to recover their legal fees and costs promotes fairness, justice, and Congressional intent.  *Smyth*'s bright-line rule to the contrary encourages

litigation gamesmanship by government actors and leaves deserving Plaintiffs uncompensated.

## ARGUMENT

### I.    Standard of Review

This Court "review[s] de novo a district court's determination of whether someone is a 'prevailing party.'" *Reyazuddin v. Montgomery Cty.*, 988 F.3d 794, 796 (4th Cir.), *cert. denied*, 142 S. Ct. 389 (2021); *see Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 754 (4th Cir. 2016) (citing *Smyth*, 282 F.3d at 274); *McAfee v. Boczar*, 738 F.3d 81, 87-88 (4th Cir. 2013), *as amended* (4th Cir. Jan. 23, 2014); *Grissom v. The Mills Corp.,* 549 F.3d 313, 318 (4th Cir. 2008).  The term "prevailing party" is a legal term of art that this Court interprets consistently across all federal fee-shifting statutes.  *Smyth*, 282 F.3d at 274.

By design, § 1988 encourages private attorneys to take on civil rights litigation to protect the voices of the unheard, litigate the causes of the ignored, and guarantee the liberties promised to all.  *Cf. Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986) ("Section 1988 was enacted to insure that private citizens have a meaningful opportunity to vindicate their rights protected by the Civil Rights Acts.").  "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil

rights violations with effective access to the judicial process." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986); *see Brandon v. Guilford Cty. Bd. of Elections*, 921 F.3d 194, 198 (4th Cir. 2019) (Congress enacted § 1988(b) "in furtherance of the policy of facilitating access to judicial process for the redress of civil rights grievances."). Just as Congress intended, § 1988 makes a plaintiff into a "private attorney general." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989). It does so by allowing prevailing plaintiffs to recover fees. 42 U.S.C. § 1988.

"Title 42 U.S.C. § 1988 provides that in federal civil rights actions 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983) (citation omitted); *see also Lefemine*, 568 U.S. at 4 ; *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994); Fed. R. Civ. P. 54(d). "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (citation omitted). Therefore, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* (internal quotations and citation omitted).

"To be a 'prevailing party,' a party need not receive a full merits-based adjudication of its claim." (JA1136 (internal footnote omitted).) The party need

24

only "receive at least some relief on the merits." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). In determining whether the relief granted is sufficient to confer prevailing party status, "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Ass'n*, 489 U.S. at 792–93, *quoted in CRST Van Expedited*, 578 U.S. at 422 . And "[t]his change must be marked by 'judicial *imprimatur.*'" *CRST Van Expedited*, 578 U.S. at 422. In other words, "[a] plaintiff 'prevails,' . . . 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Lefemine*, 568 U.S. at 4 (citation omitted). "[A]n injunction or declaratory judgment, like a damages award, will usually satisfy that test." *Id.* And "the prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Texas State Teachers Ass'n*, 489 U.S. at 791–92 ("If the plaintiff has succeeded on '*any significant issue* in litigation which achieve[d] *some of the benefit* the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." (alteration in original) (emphases added)).

25

## II. *Smyth*'s bright-line rule stands alone among the circuits and no longer makes sense in light of later-decided Supreme Court cases.

### A. The Fourth Circuit is the only circuit to hold that a grant of a preliminary injunction can never be sufficient to confer prevailing party status.

"*Smyth* is a complete outlier." (DE52 at 14 (Harris, J., concurring).) And the "Commissioner forthrightly concedes" that point. (*Id.*) "[I]n no circuit other than [this one] is there a bright-line rule that a preliminary injunction *never* can satisfy the prevailing party standard." (*Id.* at 15; *see also* Opening Br. at 32–42; Reply Br. at 9–14; JA1045–47 (Memorandum in Support of Fee Petition); JA1110–12 (Reply in support of Fee Petition); JA1196 (Objections to the Magistrate Judge's Report and Recommendation).)

Circuits across the country recognize that obtaining a preliminary injunction can confer prevailing party status. *See*, *e.g.*, *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233–34 (3d Cir. 2008); *Dearmore v. City of Garland*, 519 F.3d 517, 526 (5th Cir. 2008); *Planned Parenthood S.W. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019); *Dupuy v. Samuels*, 423 F.3d 714, 720 (7th Cir. 2005); *Rogers Group, Inc. v. City of Fayetteville*, 683 F.3d 903, 911 (8th Cir. 2012); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717–18 (9th Cir. 2013); *Kan. Judicial Watch v. Stout*, 653 F.3d 1230, 1238, 1240-41 (10th Cir. 2011); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1355–56 (11th Cir. 2009); *Select Milk Producers, Inc. v.*

26

*Johanns*, 400 F.3d 939, 942, 945 (D.C. Cir. 2005). Indeed, "nearly every Court of

Appeals to have addressed the issue has held that relief obtained via a preliminary

injunction can, under appropriate circumstances, render a party 'prevailing.'"

*People Against Police Violence*, 520 F.3d at 232-33; *see Select Milk*, 400 F.3d at

946 (disagreeing with *Smyth*'s per se rule). The circuit split is striking given that

Plaintiffs would prevail in any other circuit, as further explained below. (*See*, *e.g.*,

DE52 at 16–17 (Harris, J., concurring).) This case presents the opportunity to

ensure uniformity within the federal circuits on prevailing party status after

preliminary injunctions—granting the people of Maryland, North Carolina, South

Carolina, Virginia, and West Virginia the same ability to vindicate their

constitutional rights that Americans living elsewhere already enjoy.

> **B.    When this Court decided *Smyth* the preliminary injunction
> standard involved an abbreviated merits analysis, but that is no
> longer the case.**

In *Winter*, the Supreme Court determined that "[a] plaintiff seeking a

preliminary injunction must establish that he is *likely to succeed on the merits*, that

he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest."

555 U.S. at 20 (emphasis added). The Court also considered whether a preliminary

injunction requires a possibility or likelihood of irreparable harm. *Id.* at 21. The

27

Court determined that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22.

The *Winter* standard is more stringent than the previous *Blackwelder* standard. For example, in *Henderson*, this Court noted how "*Winter* requires a *likelihood* of irreparable injury, a higher standard" than the pre-*Winter* test embodied by the Fourth Circuit's prior holdings in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). *Henderson ex rel. Nat'l Labor Relations Bd. v. Bluefield Hosp. Co.*, 902 F.3d 432, 438 n.\* (4th Cir. 2018); *see also Pashby*, 709 F.3d at 320–21 (noting how after *Winter* this Court "recalibrated" its preliminary injunction test that had been embodied in *Blackwelder*); *Veasey v. Wilkins*, 158 F. Supp. 3d 466, 469 (E.D.N.C. 2016). Importantly, *Winter* requires that a plaintiff must "clearly demonstrate that [she] will *likely succeed* on the merits." *Veasey*, 158 F. Supp. 3d at 469. This is in stark contrast to the prior standard, which permitted a plaintiff to obtain a preliminary injunction based only on establishing that the "case presents a 'substantial question'" on the merits. *Compare Smyth*, 282 F.3d at 276, *with Winter*, 555 U.S. at 20. The District Court correctly used the *Winter* standard when deciding Plaintiffs' Motion for Preliminary Injunction. *Stinnie*, 355 F. Supp. 3d at 527–32.

Notably, *Smyth* was decided under the pre-*Winter* standard. *Compare Smyth*, 282 F.3d at 276 (using the subsequently abandoned test for a preliminary

28

injunction under *Blackwelder*), *with Winter*, 555 U.S. at 20 (focusing the preliminary injunction standard on the plaintiff's likelihood of success on the merits). As this Court explained in *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, "[t]he *Winter* requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious question for litigation." 575 F.3d 342, 346-47 (4th Cir.) (per curiam), *vacated on other grounds*, 559 U.S. 1089 (2010). The *Winter* standard also requires a clear showing of the plaintiff's likelihood of irreparable harm, *id.* at 347, requires consideration of the public interest, *id.*, and does not permit a relative strength in one factor to make up for a relative deficiency in another, *id. See Veasey*, 158 F. Supp. 3d at 469-70.

This matters because the very core of *Smyth* revolved around concerns regarding the "necessarily abbreviated" nature of the analysis of the merits in preliminary injunctions at the time. *See Smyth*, 282 F.3d at 276. The sliding scale aspect of *Blackwelder* troubled the *Smyth* court in particular, because it weakened the merits inquiry. *Smyth*, 282 F.3d at 277 ("A plaintiff's burden to show a likelihood of success on the merits, in other words, varies according to the harm the plaintiff would be likely to suffer absent an injunction."). So when the Supreme Court issued *Winter*, which changed the preliminary injunction analysis,

29

it undermined the rationale underpinning *Smyth*. In light of the altered preliminary injunction standard, this Court should no longer follow *Smyth*. *See Faust v. S.C. State Highway Dep't*, 721 F.2d 934, 940 (4th Cir. 1983) (noting that a precedent was "not a viable authority and should no longer be followed" in light of later-decided Supreme Court decisions).

To the extent the *Smyth* opinion can be read as establishing a bright-line rule against prevailing party status on preliminary injunctions no matter the relevant standard, 282 F.3d at 277 n.8, that language is dictum because the discussion extends beyond what was necessary to decide the case. *Payne v. Taslimi*, 998 F.3d 648, 654–55 (4th Cir. 2021) ("And we also recognize that dictum is not binding. . . . Dictum is a 'statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it.'"), *cert. denied*, 142 S. Ct. 716 (2021). To the extent that *Smyth* can be read as attempting to survive any change in the preliminary injunction standard, that only shows its inflexibility—one not shared by any other circuit. Prevailing party status should be determined on the facts of each case, and the applicable preliminary injunction standard.

30

**III.    This Court should overturn *Smyth* and hold that a plaintiff who obtains a preliminary injunction that (1) is merits-based, (2) materially alters the legal relationship among the parties, (3) directly benefits the plaintiff, and (4) is never reversed by a court is a "prevailing party."**

**A.    This approach best accords with Congress's stated purpose in adopting Section 1988.**

Taking on the Commonwealth of Virginia in this litigation was a huge

commitment both in time and money on the part of Plaintiffs and their attorneys.

42 U.S.C. § 1988 encourages counsel to devote the energy needed to do important

civil rights work.  Plaintiffs in this case, and indeed other Plaintiffs with

meritorious civil rights actions, deserve to have sophisticated legal representation,

even if they cannot afford it.  Congress provided for just that:

> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer.  If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

S. Rep. No. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910.

Time and time again, the Supreme Court has recognized the important

underpinnings of § 1988.  *See City of Riverside*, 477 U.S. at 576  ("Congress

enacted § 1988 specifically because it found that the private market for legal

services failed to provide many victims of civil rights violations with effective

access to the judicial process."); *Hensley*, 461 U.S. at 429 ("The purpose of § 1988

31

is to ensure 'effective access to the judicial process' for persons with civil rights grievances.").

The future of meaningful civil rights enforcement depends on awarding fees and expenses in civil right actions. *See* S. Rep. No. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 5910 ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."); *id.* at 5, 1976 U.S.C.C.A.N. at 5913 ("We find that the effects of such fee awards are ancillary and incident to securing compliance with these laws, and that fee awards are an integral part of the remedies necessary to obtain such compliance."). Further, "[t]he remedy of attorneys' fees has always been recognized as particularly appropriate in the civil rights area, and civil rights and attorneys' fees have always been closely interwoven." *Id.* at 3, 1976 U.S.C.C.A.N. at 5910. Failing to award litigation expenses to parties like Plaintiffs here would hinder 42 U.S.C. § 1983 litigation and the constitutional guarantees promised to all.

The Commissioner has fought Plaintiffs for years through two separate motions to dismiss, requests for stays of discovery, motions to compel, motions to exclude Plaintiffs' experts, a preliminary injunction hearing, and on and on. (JA9– 23.) Almost two-and-a-half years passed between the filing of the initial

Complaint in this case and the entry of the preliminary injunction. (JA9–17.) That entire time, the Commissioner fought to keep an unconstitutional statute in place. Meanwhile, Plaintiffs' attorneys had to divert significant resources from other low-income clients to persevere in this litigation. Allowing the General Assembly's late-game repeal of the statute after entry of the preliminary injunction to foil Plaintiffs' ability to recover their fees would allow states to employ litigation tactics to delay and keep unconstitutional laws on the books, mooting cases through legislative action at the last possible moment—and hopelessly frustrating Congress' intent in passing Section 1988 in the process.

**B.      This rule is drawn directly from controlling Supreme Court precedent.**

Aside from *Smyth*'s categorical bar, Plaintiffs met the guideposts set by Supreme Court precedent for prevailing party status. First, the preliminary injunction met the newer, more stringent preliminary injunction standard announced in *Winter*. *See Stinnie*, 355 F. Supp. 3d at 532. Second, that preliminary injunction provided the requisite judicial imprimatur. *See CRST Van Expedited*, 578 U.S. at 422 (recognizing *Buckhannon*'s requirement that the change achieved by a prevailing party must have judicial imprimatur); *Lefemine*, 568 U.S. at 4-5 (recognizing injunctive relief can be sufficient for prevailing party status). Third, the preliminary injunction materially altered the Commissioner's behavior. *See Lefemine*, 568 U.S. at 4–5; (JA843 (enjoining the unconstitutional

33

application of § 46.2-395 against Plaintiffs)).  Fourth, that material alteration

directly benefitted Plaintiffs, *see Lefemine*, 568 U.S. at 4–5, by halting the

unconstitutional operation of § 46.2-395 and removing the § 46.2-395 suspensions

from their licenses (JA843).  Fifth, like the relief granted in *Lefemine*, the relief

granted in this case was never "reversed, dissolved, or otherwise undone by the

final decision in the same case."  *Planned Parenthood*, 931 F.3d at 538 (quoting

*Sole v. Wyner*, 551 U.S. 74, 83 (2007)).  In sum, Plaintiffs meet the standard for

prevailing party status under Supreme Court precedent, and as discussed below,

circuits across the country would agree.

### C.    Every other circuit to have considered the issue applies this test with only slight variation in language.

Circuits across the country recognize that obtaining a preliminary injunction

is sufficient to confer prevailing party status, especially when, like here, the

preliminary injunction is grounded in a merits-based determination.  *See People*

*Against Police Violence*, 520 F.3d at 232-33 ("[N]early every Court of Appeals to

have addressed the issue has held that relief obtained via a preliminary injunction

can, under appropriate circumstances, render a party 'prevailing.'" (citation

omitted)).  Although the Commissioner may try to characterize the cases as

splintered, in actuality they are unified and consistent.  Indeed, ten of the eleven

circuit courts that have addressed this question have held that a preliminary

34

injunction on the merits is sufficient to attain prevailing-party status, even where the case is later rendered moot:

**Second Circuit:**  *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997) ("When a party receives a stay or preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits."); *see, e.g.*, *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014).

**Third Circuit:**  *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233–34 (3d Cir. 2008) (affirming the trial court's determination that plaintiffs were prevailing parties when plaintiffs received a preliminary injunction on the merits, the defendant did not appeal the preliminary injunction and was bound by it for a period of time, and defendant avoided a final judgment by changing the law in such a way that gave plaintiffs the requested relief).

**Fifth Circuit:**  *Dearmore v. City of Garland*, 519 F.3d 517, 526 (5th Cir. 2008) (concluding plaintiff was a prevailing party because plaintiff obtained a preliminary injunction even though the case was mooted before the final judgment when the defendant amended the law at issue).

**Sixth Circuit:**  *Planned Parenthood S.W. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019) (holding that a preliminary injunction on the merits that

was later rendered moot is sufficient to convey prevailing-party status), *cert. denied*, 141 S. Ct. 189 (2020).

**Seventh Circuit:** *Dupuy v. Samuels*, 423 F.3d 714, 720 (7th Cir. 2005) (holding that a preliminary injunction on the merits that is vacated as moot is sufficient for prevailing-party status).

**Eighth Circuit:** *Rogers Group, Inc. v. City of Fayetteville*, 683 F.3d 903, 910–11 (8th Cir. 2012) (holding that a plaintiff was a prevailing party when a preliminary injunction on the merits blocked defendant from enforcing a law, even though the defendant later mooted the case by repealing the ordinance).

**Ninth Circuit:** *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717–18 (9th Cir. 2013) ("[W]hen a plaintiff wins a preliminary injunction and the case is rendered moot before final judgment, either by the passage of time or other circumstances beyond the parties' control, the plaintiff is the prevailing party eligible for a fee award.") (expanding prior rulings and holding that plaintiff was a prevailing party when it won a preliminary injunction that remained in effect until the parties mooted the case through settlement where the settlement agreement rendered the relief of the preliminary injunction sufficiently enduring to constitute a material alteration of the parties' legal relationship).

**Tenth Circuit:** *Kansas Judicial Watch v. Stout*, 653 F.3d 1230, 1238, 1240-41 (10th Cir. 2011) ("[I]f a preliminary injunction satisfies the relief-on-the-merits

requirement, the plaintiff qualifies as a 'prevailing party' even if events outside the control of the plaintiff moot the case.") (holding that plaintiffs were prevailing parties when they received a preliminary injunction on the merits that provided some of the complaint's requested relief, where the preliminary injunction persisted until "the actions of third parties mooted the case").

**Eleventh Circuit:** *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1355–56 (11th Cir. 2009) ("[A] preliminary injunction on the merits . . . entitles one to prevailing party status and an award of attorney's fees." (second alteration in original) (citation omitted)) (holding plaintiffs were prevailing parties when they prevailed on a preliminary injunction that stayed in place "until Georgia repealed the law at issue").

**D.C. Circuit:** *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 942 (D.C. Cir. 2005) (holding that a preliminary injunction subsequently rendered moot is sufficient to establish prevailing-party status where it "resulted in a court-ordered change in the legal relationship between the parties and gave [plaintiffs] the concrete and irreversible redress that they sought").

Two of the remaining three circuits—the First and the Federal Circuits—have not addressed the issue. Indeed, the Federal Circuit does not have any subject matter jurisdiction over Section 1983 claims in the first instance and does not confront the issue. And although the First Circuit has not itself directly addressed

37

the issue, *see Sinapi v. R.I. Bd. of Bar Examiners*, 910 F.3d 544, 552 (1st Cir. 2018) (denying prevailing party status when preliminary relief was not based on the merits but expressly declining to otherwise reach the issue), at least one district court within that circuit has followed the majority rule, *see Tri-City Cmty. Action Program, Inc. v. City of Malden*, 680 F. Supp. 2d 306, 314 (D. Mass. 2010).

This Court is the only circuit to adopt the bright-line rule that preliminary injunctions are insufficient to confer prevailing-party status under Section 1988. It did so in 2002, shortly after *Buckhannon* was decided, before the Supreme Court's decision in *Winter*, and before nearly all the above-cited cases.

### D.    Applying the rules as adopted in every other circuit, Plaintiffs meet their tests for prevailing party status.

Regardless of the precise language adopted, Plaintiffs meet the tests for prevailing party status as set forth by every other circuit to have addressed the issue. Plaintiffs won a preliminary injunction. *See Stinnie*, 355 F. Supp. 3d at 532–33. That preliminary injunction was on the merits. *See id.* at 527–31. That preliminary injunction conveyed the appropriate judicial imprimatur. *See id.* at 532; *see also*, *e.g.*, *People Against Police Violence*, 520 F.3d at 233.[3] Plaintiffs'

---

[3] Plaintiffs are not advancing a *Buckhannon*-foreclosed "catalyst theory" argument. (*See* JA1052–55; Opening Br. 29–31 (explaining why *Buckhannon* does not bar the relief which Plaintiffs seek in this appeal).) The "'catalyst theory' . . . posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a *voluntary change* in the defendant's conduct." *Buckhannon*

38

win resulted in a material alteration in the legal relationship between the parties.

(*See* JA843–44 (order granting the preliminary injunction).)  Before the

preliminary injunction, Plaintiffs were harmed by the unconstitutional application

of § 46.2-395; after the preliminary injunction they could not be.  The relief

Plaintiffs obtained "altered the relationship between [Plaintiffs] and the

[Commonwealth] during the concrete period of time that the plaintiffs required the

benefit of that alteration."  *Planned Parenthood*, 931 F.3d at 542; (*see also* JA843).

The preliminary injunction restrained enforcement of the challenged law until the

case was mooted by legislative repeal.  Plaintiffs' relief was never "'reversed,

dissolved, or otherwise undone by the final decision in the same case.'"  *Planned*

*Parenthood*, 931 F.3d at 539 (citing *Sole*, 551 U.S. at 83).  Plaintiffs are prevailing

parties.

### E.   This Court should not adopt the causation language from *Dearmore*, but even if it did, these Plaintiffs would still be prevailing parties.

The Commissioner has argued that the Fourth Circuit should "strongly

consider" replacing *Smyth* with the Fifth Circuit's approach in *Dearmore*.  (Resp.

Br. 48–50.)  The Fifth Circuit in *Dearmore* determined that a party could be a

prevailing party when:  "the plaintiff (1) . . . win[s] a preliminary injunction, (2)

---

*Bd. & Care, Inc. v. W.V. Dep't of Health & Home Res.*, 532 U.S. 598, 601 (2001)
(emphasis added).  There was nothing voluntary about the District Court's
preliminary injunction here.

based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits." *Dearmore*, 519 F.3d at 524.

This Court should not include a causation requirement like the language in the third prong of the *Dearmore* test. As an initial matter, it is unclear if a traditional causation requirement is actually applied in the Fifth Circuit. And importing a traditional causation requirement into prevailing party analysis would dramatically increase the complexity and resource-intensiveness associated with litigating fee petitions. Nonetheless, even if this Court did adopt a causation requirement, Plaintiffs would satisfy it.

### 1. In practice, courts in the Fifth Circuit do not require exacting proof of traditional causation to award prevailing party status.

Although the Commissioner portrays the *Dearmore* test as requiring searching analysis of causation, it is far from clear that is how that test is applied in practice by courts in the Fifth Circuit. For example, the district court in *Amawi* simply looked at the timing of repeal after entry of a preliminary injunction as demonstrative of causation. *See Amawi v. Pflugerville Indep. Sch. Dist.*, No. 1:18-CV-1091-RP, 2021 WL 1226569, at *5 (W.D. Tex. Mar. 31, 2021) ("This Court instead will look to the operative facts for the timeline: the lawsuit was filed,

40

Plaintiffs won a preliminary injunction, Defendants passed the Amendment."),

*appeal filed*, No. 21-50360 (5th Cir. Apr. 29, 2021); *Creuzot v. Green*, No. 3:17-

CV-404-M-BK, 2019 WL 2746612, at *2 (N.D. Tex. June 13, 2019) (applying

*Dearmore* outside the Section 1988 context in determining a plaintiff was a

prevailing party) ("Defendant ended his registration of the domain names after the

Court entered the preliminary injunction, which mooted Plaintiff's ACPA claims

and prevented Plaintiff from obtaining final relief on the merits."), *report and*

*recommendation adopted*, 3:17-CV-404-M-BK, 2019 WL 2743794 (N.D. Tex.

July 1, 2019), *aff'd*, 850 F. App'x 917 (5th Cir. 2021).[4]  Indeed, the Fifth Circuit

itself explained that its *Dearmore* "test does not signal any disagreement with the

approaches adopted by the other circuits, with the exception of the Fourth Circuit."

*Dearmore*, 519 F.3d at 526 n.4.  The *Amawi* opinion also noted that *Dearmore* did

"not set[] out a new test for all cases."  *See Amawi*, 2021 WL 1226569, at *4.  In

doing so, it expressed doubt about whether the third prong of *Dearmore* would

even be applicable when a plaintiff had to sue the executive branch, but it was the

legislative branch that passed a statute mooting the action.  *See id.* at *4–5.  Such

was the case here.

---

[4] In this case, like *Amawi*, the law was changed after entry of a preliminary injunction, not just because a lawsuit was filed.  *See Amawi*, 2021 WL 1226569, at *5 ("Defendants passed the Amendment after this Court issued the preliminary injunction; it was not a voluntary action taken before the Court ruled.").

## 2. Requiring proof of causation would complicate fee related litigation unnecessarily.

In reformulating its prevailing party standard, this Court should not adopt

the language in *Dearmore* because the third prong of the *Dearmore* test, which

purports to require a determination of causality, brings in a new point of debate

that parties would litigate extensively. The Commissioner has argued against such

a lack of clarity throughout this appeal. (*See* Resp. Br. 42 (supporting a bright-line

rule); *id.* at 43 (arguing that the government should be able to "make informed

decisions").) After disparaging "unpredictable, context-specific" rules, the

Commissioner advocates for what appears to be the most unpredictable and

context-specific formulation of all circuits to have considered the question.

Engaging in a searching analysis of the causality between the preliminary

injunction and the mooting gives life to *Buckhannon*'s concern about the

unworkability of the catalyst theory because of its "analysis of the defendant's

subjective motivations in changing its conduct, an analysis that 'will likely depend

on a highly factbound inquiry and may turn on reasonable inferences from the

nature and timing of the defendant's change in conduct.'" *Buckhannon Bd. &*

*Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 609

(2001) (citation omitted). To be sure, Plaintiffs are not arguing the "catalyst

theory" in any way. Nor are Plaintiffs stating that *Dearmore* runs afoul of the

"catalyst theory" prohibition in *Buckhannon*. Rather, Plaintiffs are noting that the

42

causality prong in the *Dearmore* test injects the additional litigation that

*Buckhannon* hoped to avoid.  *Buckhannon*, 532 U.S. at 609.  At bottom, the Court

should not adopt the *Dearmore* test because the approach set forth in Supreme

Court precedent as applied by other circuits is more workable and clearer.

### 3. Even under the *Dearmore* test, Plaintiffs are prevailing parties.

Third, even if this Court were to adopt the *Dearmore* test, Plaintiffs would

prevail.  *First*, Plaintiffs won a preliminary injunction.  *Compare Dearmore*, 519

F.3d at 524, *with Stinnie*, 355 F. Supp. 3d 514 (granting a preliminary injunction to

Plaintiffs).  *Second*, that preliminary injunction was "based upon an unambiguous

indication of probable success on the merits of the plaintiff's claims[.]"  *Compare*

*Dearmore*, 519 F.3d at 524, *with Stinnie*, 355 F. Supp. 3d at 531 (stating that

"Plaintiffs demonstrate a likelihood of success on their claim that § 46.2-395

violates procedural due process").

*Third*, Plaintiffs' win on the preliminary injunction led to the

Commissioner's motion asking the Court to stay this case to allow the General

Assembly time to repeal the statute.  *See Dearmore*, 519 F.3d at 524.  Shortly after

issuance of the District Court's preliminary injunction opinion, the General

Assembly passed Budget Amendment No. 33 (the "Budget Amendment"), which

provided temporary relief.  *See* Virginia Legis. Info. Sys., Va. HB 1700 Budget

Bill, 2019 Sess., http://lis.virginia.gov/cgi-bin/legp604.exe?191+sum+HB1700

(last visited Aug. 30, 2022). The Commissioner also began asking the District

Court to stay the action. (*See* JA864–868 (using the Budget Amendment and the

possibility of a full repeal to argue that District Court should stay the action);

JA892–894 (using the Budget Amendment to argue in favor of pausing the case);

JA957-JA960 (noting the repeal effort in the General Assembly).)

Arguing against a finding of causation before a panel of this Court, the

Commissioner tried to have it both ways. The Commissioner credited Plaintiffs'

counsel's lobbying efforts for "assisting in that long process" of the repeal of

§ 46.2-395, but he discredited Plaintiffs' litigation efforts as leading to the repeal

of § 46.2-395. (Resp. Br. 18.) Of course, to say that this impact litigation was not

part of a coordinated effort of reform and political opposition strains credulity.

In fact, in the *very first sentence* of the Commissioner's motion to dismiss or

stay the case, the Commissioner noted that Governor Northam appeared with

Plaintiffs' counsel from the Legal Aid Justice Center ("LAJC") to call for Budget

Amendment #33. (JA852 ("Standing below a Legal Aid banner and beside

Defendant Commissioner Holcomb and Legal Aid's executive director (and

counsel for Plaintiffs in this litigation), Governor Northam announced budget

amendment #33 . . . .").) The event to which the Commissioner refers was

reported in the media at the time. Lisa Provence, *UPDATE: Northam calls for end

of automatic driver's license suspensions*, C-VILLE Weekly, Mar. 26, 2019,

44

https://www.c-ville.com/license-suspension-scheme (last visited Aug. 30, 2022).

Despite the Commissioner's attempt to disassociate the preliminary injunction with

the political process, the press put two and two together. *See id.* (noting that

Governor Northam was speaking at LAJC, which had "filed suit against the

commissioner of the Department of Motor Vehicles for the automatic suspensions

that don't consider someone's ability to pay"). At that event, Plaintiff Brianna

Morgan spoke about how losing her license negatively impacted her ability to take

care of her family. *See id.* ("She was unable to take her father, who'd had a stroke,

to doctor's appointments. When her son had an asthma attack at school, it took an

hour on the bus to get there."). The Commissioner cannot simultaneously use

Governor Northam's standing with LAJC and Plaintiff Morgan to obtain a stay

before the District Court, then run from the implication of those facts once it

becomes inconvenient on appeal.

At bottom, after entry of the District Court's preliminary injunction, it

became clear that either the legislature could repeal § 46.2-395, or the District

Court itself would act—again. Only days after entry of the preliminary injunction,

Senator Stanley, a Republican[5] from southside/southwest Virginia, commented on

_____

[5] The repeal effort was a bipartisan one, garnering support from both Democrats
and Republicans. *See* Virginia Legis. Info. Sys., Va. SB 1, 2020 Sess.,
https://lis.virginia.gov/cgi-bin/legp604.exe?201+sum+SB1(last visited Aug. 30,
2022). For example, Attorney General Jason Miyares, then representing the 82nd

45

the preliminary injunction. *See* Matthew Chaney, *Virginia License Suspension Law Faces New Challenges*, Va. Law. Wkly., Jan. 9, 2019, https://valawyersweekly.com/2019/01/09/va-license-suspension-law-faces-new-challenges/ (last visited Aug. 30, 2022). He remarked that it was his hope that after Plaintiffs' preliminary injunction win, the legislators who had doubts about the repeal efforts would remove them. *See id.*

The Commissioner's letter to Senator Stanley also helps show this litigation's effect on the legislative process. (*See* JA968–69 (noting the District Court's stay to allow the political process to repeal the legislation along with a request to add an "emergency enactment clause" to the legislation).) Why else would the Commissioner ask Senator Stanley to add an *emergency* enactment clause to the repeal legislation? By early 2019, it was becoming clear that the General Assembly's time to repeal the statute before the Plaintiffs completed their march to trial was dwindling. The District Court would not have stayed the case indefinitely. (*See* JA955 (ordering that the stay would only remain in effect "fourteen days following the conclusion of the [2020] General Assembly's

---

District in Virginia Beach, voted for the repeal. *See id.* at https://lis.virginia.gov/cgi-bin/legp604.exe?201+vot+HV1516+SB0001 (last visited Aug. 30, 2022). Similarly, amici for Plaintiffs on this attorneys' fee issue includes both conservative and liberal non-profit organizations. (*See* Brief of ACLU *et al.*, of Va., in Support of Appellants, *Stinnie v. Holcomb.*, No. 21-1756 (4th Cir. Nov. 22, 2021), DE 21.)

session").)  In other words, the facts of the attempt to rush the repeal legislation

further demonstrate Plaintiffs' satisfaction of *Dearmore*'s third prong.

## IV. Adopting Plaintiffs' proposed test promotes fairness, justice, and Congressional intent.

### A. *Smyth*'s bright-line rule encourages litigation gamesmanship by government actors and leaves deserving Plaintiffs uncompensated.

The current rule in *Smyth* creates the wrong incentives for government

actors.  As Judge Harris observed, the *Smyth* rule "allows defendants to game the

system."  (DE52 at 17 (Harris, J., concurring).)  So long as the *Smyth* rule remains,

civil rights plaintiffs in the Fourth Circuit remain at a disadvantage as compared to

those in every other circuit.  They face the risk that the government will moot the

case after losing a preliminary injunction and before plaintiffs can win final

judgment.  (*See id.*)  The government has vast taxpayer-provided funds through

which to hire great lawyers to defend its laws—however unconstitutional those

laws may be.  Ordinary Americans do not generally have the same resources, and

their inability to access legal help is hindered when the government can avoid a fee

award by mooting the case after losing a preliminary injunction.

Here, the perverse incentives created by *Smyth* were on full display.  As

Judge Harris noted, Plaintiffs were eager to move forward.  (DE52 at 16–17

(Harris, J., concurring); JA15-23.)  Plaintiffs would have had their final day in

court before the statute could have been repealed had it not been for the stay

47

requested by the Commissioner. *Smyth* created the conditions in which this litigation gamesmanship occurred. (*See* DE52 at 17 (Harris, J., concurring) (noting the incentives for gamesmanship created by *Smyth*).)

**B.    None of the Government's concerns carry any persuasive weight.**

The Commissioner has proffered policy arguments in support of applying the bright-line rule in *Smyth* to deny Plaintiffs' Fee Petition (*see* JA1068, 1093–95), but none of those arguments carry any water.

First, the Commissioner has argued that the bright-line rule provides "clarity" to "courts and litigants." (*See* JA1093.) This argument fails in at least two ways. To start, this Court should reject the idea that the approach taken in all of the other circuits to address the issue is simply too complicated to be workable. As outlined above, Plaintiffs' reading of the relevant Supreme Court cases is correct and comports with important public policy concerns. The Commissioner portrays a non-*Smyth* world as "unpredictable." (*See* Resp. Br. 43.) But what the Commissioner portrays as unworkable is the reality of every other federal circuit to consider the question presented. Contrary to the Commissioner's implications, the dozens of state governments (including the District of Columbia) embodied in the ten other federal circuits are not lost at sea and unable to make reasoned litigation decisions because they do not have *Smyth*'s rule. The Commissioner has provided no evidence otherwise. (*See* Resp. Br. 43.) Needless to say, courts and litigants in

the Fourth Circuit are just as capable as those in other circuits.

Further, although the Commissioner's bright-line rule might be clear, that does not make it right or just. Even if replacing *Smyth* would cause marginally more effort to be expended by litigants in fee petition disputes (which it would not), that effort is a small price to pay for recognizing Congressional intent in Section 1988 and encouraging meritorious civil rights litigation.

Second, the Commissioner has argued that a bright-line rule helps the government decide "how to respond" when challenged by constitutional litigation. (*See* JA1094.) But, of course, one would hope the relevant, and overriding, consideration for the government would be doing the right thing. *See* Va. Const. art. I, § 3 ("That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community[.]"); Va. Code § 49-1 (requiring all officers in the Commonwealth to swear they will "support the Constitution of the United States, and the Constitution of the Commonwealth of Virginia"). And the right thing should not include defending an unconstitutional statute by applying scorched-earth litigation tactics in an attempt to wear down indigent Plaintiffs until it becomes clear the state has no hope of success.

The Commissioner also talks about "the costs and benefits of amending a law or changing a policy" as if the value of the Commonwealth's laws can be reduced to a spreadsheet. (*See* JA1094.) But for years the Commissioner ignored

49

Plaintiffs' household budgets.  For years, the Commissioner let this unconstitutional regime continue to deprive hundreds of thousands of Virginians of their dignity and the chance to raise themselves up from the vicious cycle of poverty.  (*See generally* JA27–81 (Complaint); JA226–70 (First Amended Complaint).)  For years, the Commissioner imposed a "nightmarish spiral" that trapped Plaintiffs.  *See Stinnie*, 734 F. App'x at 864 (Gregory, C.J., dissenting).

It is not a legitimate consideration for the government to want additional clarity concerning how to respond regarding its unconstitutional laws because it might have to pay the litigation expenses of those who dare to stand up and challenge them.  When the DMV decides to defend an unconstitutional law with the best lawyers it can muster and fights at every corner, it has to live with that decision when it loses on a merits-based preliminary injunction, even if the legislature later moots the law in an apparent attempt to stop the DMV "from continuing to incur costly legal fees."  (*See* JA1038–39 (quoting the Commissioner).)  This Court should deny the invitation to continue to apply the bright-line rule in *Smyth*.

## CONCLUSION

For twenty years now, this circuit has categorically prohibited prevailing-party status under the facts presented and has come to be the only circuit across the country to do so.  This categorical rule is indifferent to the justness of the cause,

50

the flavor of the plaintiff's political philosophy, and the nature of the federally protected right. This case affects everyone. Congress enacted Section 1988 to open the courthouse doors to meritorious civil rights actions. This Court has the chance to further effectuate that Congressional intent by overturning *Smyth*'s bright-line rule.

Plaintiffs ask this Court to (1) overturn *Smyth*, (2) reverse the decisions of the Panel and the District Court, (3) grant Plaintiffs' Fee Petition, (4) hold that Plaintiffs are prevailing parties and their attorneys are entitled to fees and other costs and expenses under 42 U.S.C. § 1988, and (5) remand this case to the District Court for further proceedings.

## ORAL ARGUMENT STATEMENT

The issue presented for appeal warrants oral argument, especially now that it is being considered *en banc*. This Court's bright-line rule in *Smyth* holding that a preliminary injunction can never be sufficient relief to confer prevailing party status has been eroded by subsequent Supreme Court precedent and is an outlier with which almost all other circuits disagree. Considering the complexity of the legal issues involved and division among the circuits concerning the continued viability of *Smyth*, Plaintiffs respectfully suggest that oral argument is needed and would assist the Court.

51

Dated:  August 31, 2022

Respectfully submitted,


*/s/ John J. Woolard*

Jonathan T. Blank
Benjamin P. Abel
MCGUIREWOODS LLP
323 Second Street SE, Suite 700
Charlottesville, VA 22902
T: (434) 977-2509
F: (434) 980-2258
*jblank@mcguirewoods.com*
*babel@mcguirewoods.com*

Angela A. Ciolfi
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
T: (434) 529-1810
F: (434) 977-0558
*angela@justice4all.org*

Leslie Kendrick
580 Massie Road
Charlottesville, VA  22903
T: (434) 243-8633
F: (434) 924-7536
*kendrick@virginia.edu*

John J. Woolard
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4355
F: (804) 698-2055
*jwoolard@mcguirewoods.com*

Patrick Levy-Lavelle
LEGAL AID JUSTICE CENTER
626 East Broad Street, Suite 200
Richmond, VA 23219
T: (804) 643-1086
F: (804) 643-2059
*pat@justice4all.org*

Tennille J. Checkovich
Michael Stark
200 Commerce Street
Smithfield, VA 23430
T: (757) 357-8151
F: (757) 365-3018
*tcheckovich@smithfield.com*
*mstark@smithfield.com*

*Counsel for Appellants*

52

## CERTIFICATE OF COMPLIANCE

This brief contains 11,818 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

*/s/ John J. Woolard*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2022, I electronically filed the foregoing Supplemental Opening Brief of Appellants with the Clerk of this Court using the CM/ECF System, which will send a notification of electronic filing to all counsel of record who are registered CM/ECF users, including counsel for Appellee.


*/s/ John J. Woolard*

## ADDENDUM:  STATUTE INVOLVED

Pursuant to Federal Rule of Appellate Procedure 28(f), Plaintiffs submit this Addendum containing the "relevant parts" of the statute necessary to the resolution of the issue presented by this appeal:

**42 U.S.C. § 1988(b):**

**(b) ATTORNEY'S FEES**

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .