No. 21-1756

---

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

DAMIAN STINNIE, et al.,

*Plaintiffs-Appellants*,

v.

RICHARD D. HOLCOMB, in his official capacity as the
Commissioner of the VIRGINIA DEPARTMENT OF MOTOR VEHICLES,

*Defendant-Appellee*.

———————————————

On appeal from the United States District Court
for the Western District of Virginia (No. 3:16-cv-44)

———————————————

## SUPPLEMENTAL BRIEF OF APPELLEE

———————————————

Jason S. Miyares
*Attorney General of Virginia*

Andrew N. Ferguson
*Solicitor General*

Leslie A. T. Haley
*Deputy Attorney General*

Chandra D. Lantz
*Senior Assistant Attorney General &
Transportation Section Chief*

Janet W. Baugh (VSB #44649)
*Senior Assistant Attorney General*

Christian A. Parrish (VSB #44427)
*Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
202 North Ninth Street
Richmond, VA 23219
Ph:  (804) 786-2071
Fax:  (804) 786-4239

Maya M. Eckstein (VSB #41413)
Trevor S. Cox (VSB #78396)
David M. Parker (VSB #85619)
HUNTON ANDREWS KURTH LLP
951 E. Byrd St.
Richmond, VA 23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
meckstein@HuntonAK.com
tcox@HuntonAK.com
dparker@huntonAK.com

*Counsel for Defendant-Appellee*

September 21, 2022

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 21-1756    Caption: Damian Stinnie, et al. v. Richard Holcomb

Pursuant to FRAP 26.1 and Local Rule 26.1,

Richard D. Holcomb, in his official capacity as the Commissioner of the Virginia Dep't of Motor Vehicles
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                    ☐YES☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?      ☐YES☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Maya M. Eckstein                         Date:        12/15/2021

Counsel for: Defendant-Appellee

-

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................i

INTRODUCTION ........................................................................1

STATEMENT OF THE CASE....................................................4

    A.   Plaintiffs' allegations are not facts. ...............................4

    B.   Plaintiffs did not prevail. ..............................................6

    C.   The General Assembly did not repeal § 46.2-395 because of the preliminary injunction. .........................................9

ARGUMENT ............................................................................17

  I.   *Smyth* has not been undermined by intervening Supreme Court precedent. ..................................................................17

    A.   *Smyth* recognized the inherently tentative nature of preliminary injunctions and the abbreviated nature of the preliminary injunction inquiry. ...............................18

    B.   *Winter* did not undermine *Smyth*'s viability.......................20

       1.   *Smyth*'s reasoning relied on the nature of preliminary injunctions, not the standard for obtaining one. ..........................21

       2.   *Smyth* anticipated and applied the likelihood-of-success standard recognized in *Winter*. ...................................23

  II.  *Smyth* remains correctly decided.........................................25

    A.   *Smyth* is consistent with Section 1988 and Supreme Court case law interpreting it. ..............................................25

    B.   *Smyth* advances important policy considerations recognized by the Supreme Court.........................................29

       1.   Simplicity favors *Smyth*'s bright-line approach. .........................29

       2.   *Smyth* gives government defendants needed flexibility to respond to challenges....................................30

       3.   *Smyth* avoids prolonged litigation to avoid fee liability..............32

    C.   This case exemplifies the wisdom of the *Smyth* approach..................33

  III.  Plaintiffs' other reasons for departing from *Smyth* are unconvincing. .......35

    A.   Other circuits' approaches are not persuasive or uniform. .................35

1. *Buckhannon* teaches that this Court need not follow other circuits' approach to fee eligibility.................................................35

2. Other circuits' tests are not uniform, nor would Plaintiffs prevail under all of them...............................................36

B. The Supreme Court has already rejected Plaintiffs' principal argument for expanding fee entitlement to plaintiffs who never achieve victory on the merits. ..........................................41

IV. The concern that *Smyth* allows defendants to moot cases strategically to avoid fees can be addressed by a limited exception where a preliminary injunction directly caused the mooting—but Plaintiffs cannot satisfy that exception. ....................................42

A. Courts have conferred prevailing-party status where defendants moot a case in direct response to entry of a preliminary injunction...............................................44

B. The General Assembly did not repeal § 46.2-395 in response to the preliminary injunction. ..............................................46

1. Everyone—from the parties to the district court to the press—recognized that the changed political composition of the General Assembly triggered repeal of § 46.2-395. ...........46

2. Plaintiffs' evidence purportedly showing that the preliminary injunction triggered repeal is unpersuasive, and far shy of the evidence that other courts have found show a causal connection. ..........................................48

CONCLUSION...............................................................53

STATEMENT REGARDING ORAL ARGUMENT ...........................................55

CERTIFICATE OF COMPLIANCE.................................................55

CERTIFICATE OF SERVICE ................................................55

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agostini v. Felton*,
  521 U.S. 203 (1997)............................................................................20

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975)............................................................................15

*Amawi v. Paxton*,
  No. 21-50360, 2022 WL 4093123 (5th Cir. Sept. 7, 2022)...................44, 48, 51

*Amawi v. Pflugerville Indep. Sch. Dist.*,
  No. 1:18-CV-1091-RP, 2021 WL 1226569
  (W.D. Tex. Mar. 31, 2021), *reversed and remanded*, No. 21-
  50360, 2022 WL 4093123 (5th Cir. Sept. 7, 2022)............................................48

*Baumgartner v. Harrisburg Hous. Auth.*,
  21 F.3d 541 (3d Cir. 1994) ................................................................35

*Beard v. Teska*,
  31 F.3d 942 (10th Cir. 1994) .............................................................35

*Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*,
  550 F.2d 189 (4th Cir. 1977) ..............................................................21, 22, 23

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health*,
  532 U.S. 598 (2001)......................................................................*passim*

*Common Cause/Georgia v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ........................................................36

*Davis v. Abbott*,
  781 F.3d 207 (5th Cir. 2015) .............................................................44, 51

*Dearmore v. City of Garland*,
  519 F.3d 517 (5th Cir. 2008) ...............................................................*passim*

*Dupuy v. Samuels*,
  423 F.3d 714 (7th Cir. 2005) .............................................................38, 39

*Evans v. Jeff D.*,
  475 U.S. 717 (1986)...............................................................31, 32

*Fowler v. Benson*,
  924 F.3d 247 (6th Cir. 2019) ............................................34

*Fowler v. Johnson*,
  No. CV 17-11441, 2017 WL 6379676 (E.D. Mich. 2017)................................33

*Ge v. United States Citizenship & Immigr. Servs.*,
  20 F.4th 147 (4th Cir. 2021) ............................................20

*Grabarczyk v. Stein*,
  32 F.4th 301 (4th Cir. 2022) ......................................*passim*

*G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*,
  822 F.3d 709 (4th Cir. 2016), *vacated and remanded on other
  grounds*, 137 S. Ct. 1239 (2017)..........................................28

*Haley v. Pataki*,
  106 F.3d 478 (2d Cir. 1997) ............................................36

*Hanrahan v. Hampton*,
  446 U.S. 754 (1980) (per curiam)........................................15, 25, 26

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)......................................................15, 30

*Hewitt v. Helms*,
  482 U.S. 755 (1987)......................................................15, 25

*Higher Taste, Inc. v. City of Tacoma*,
  717 F.3d 712 (9th Cir. 2013) ............................................23, 36

*Johnson v. Jessup*,
  381 F. Supp. 3d 619 (M.D.N.C. 2019) ............................................34

*Kan. Judicial Watch v. Stout*,
  653 F.3d 1230 (10th Cir. 2011) ............................................36, 45

*Key Tronic Corp. v. United States*,
  511 U.S. 809 (1994)......................................................15

*Kilgour v. Pasadena*,
    53 F.3d 1007 (9th Cir. 1995) ..............................................................35

*Lefemine v. Wideman*,
    568 U.S. 1 (2012) ...................................................................... 16, 17

*Little Rock Sch. Dist. v. Pulaski Cty. Sch. Dist., # 1*,
    17 F.3d 260 (8th Cir. 1994) ..............................................................35

*Marbley v. Bane*,
    57 F.3d 224 (2d Cir. 1995) ..............................................................35

*McQueary v. Conway*,
    614 F.3d 591 (6th Cir. 2010) ..............................................................40

*Mendoza v. Garrett*,
    No. 3:18-CV-01634-HZ, 2019 WL 2251290
    (D. Or. May 16, 2019) ..............................................................34

*Morris v. W. Palm Beach*,
    194 F.3d 1203 (11th Cir. 1999) ..............................................................35

*Motley v. Taylor*,
    451 F. Supp. 3d 1251 (M.D. Ala. 2020), *aff'd*, No. 20-11688, 2022
    WL 1506971 (11th Cir. May 12, 2022) ..............................................................34

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) ..............................................................27

*Payne v. Board of Ed.*,
    88 F.3d 392 (6th Cir. 1996) ..............................................................35

*People Against Police Violence v. City of Pittsburgh*,
    520 F.3d 226 (3d Cir. 2008) ..............................................................37

*Planned Parenthood S.W. Ohio Region v. Dewine*,
    931 F.3d 530 (6th Cir. 2019) ...................................................... 40, 45

*Reyazuddin v. Montgomery Cty., Maryland*,
    988 F.3d 794 (4th Cir.), *cert. denied*, 142 S. Ct. 389 (2021) ..................... 26, 42

*Robinson v. Long*,
    814 F. App'x 991 (6th Cir. 2020) ..............................................................34

*Rogers Grp., Inc. v. City of Fayetteville, Ark.*,
   683 F.3d 903 (8th Cir. 2012) ........................................................38, 44

*Select Milk Producers, Inc. v. Johanns*,
   400 F.3d 939 (D.C. Cir. 2005) ...............................................................39

*Singer Mgmt. Consultants, Inc. v. Milgram*,
   650 F.3d 223 (3d Cir. 2011) (en banc) ..................................................37

*Smith v. Univ. of N. Carolina*,
   632 F.2d 316 (4th Cir. 1980) .................................................................26

*Smyth v. Carter*,
   168 F.R.D. 28 (W.D. Va. 1996) ......................................................18, 23

*Smyth v. Carter*,
   88 F. Supp. 2d 567 (W.D. Va. 2000) ....................................................18

*Smyth v. Carter*,
   No. Civ. A 5:96CV00089, 2000 WL 1567168 (W.D. Va. 2000) ..........18

*Smyth ex rel. Smyth v. Rivero*,
   282 F.3d 268 (4th Cir.), *cert. denied*, 537 U.S. 825 (2002) ........*passim*

*Sole v. Wyner*,
   551 U.S. 74 (2007) ...............................................................................*passim*

*Stanton v. S. Berkshire Reg'l Sch. Dist.*,
   197 F.3d 574 (1st Cir. 1999) .................................................................35

*Stinnie v. Holcomb*,
   355 F. Supp. 3d 514 (W.D. Va. 2018) ............................................18, 33

*Stinnie v. Holcomb*,
   396 F. Supp. 3d 653 (W.D. Va. 2019) ..................................................*passim*

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
   489 U.S. 782 (1989) .................................................................16, 25, 29, 30

*Univ. of Tex. v. Camenisch*,
   451 U.S. 390 (1981) .........................................................26, 27, 28, 29

*White v. Shwedo*,
   No. 2:19-CV-3083-RMG, 2020 WL 2315800 (D.S.C. May 11,
   2020) ...................................................................................................34

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................*passim*

*Young v. City of Chicago*,
   202 F.3d 1000 (7th Cir. 2000) ..............................................................38

*Zessar v. Keith*,
   536 F.3d 788 (7th Cir. 2008) ................................................................39

*Zinn v. Shalala*,
   35 F.3d 273 (7th Cir. 1994) ..................................................................35

**Statutes**

42 U.S.C. § 1988 .......................................................................................*passim*

Va. Code Ann. § 46.2-395 (repealed) ......................................................*passim*

**Rules**

Fed. R. Civ. P. 23(b)(2) ...................................................................................7

Fed. R. Civ. P. 65(a)(2) .................................................................................27

Fed. R. Civ. P. 65(c) .....................................................................................28

**Legislative Materials**

Va.'s Legislative Info. Sys., 2017 Session, S.B. 1280,
   https://tinyurl.com/2v52hc66 ...............................................................10

Va.'s Legislative Info. Sys., 2018 Session, S.B. 181,
   https://tinyurl.com/4xawmmcw .............................................................10

Va.'s Legislative Info. Sys., 2019 Session, S.B. 1013,
   https://tinyurl.com/tnm2jpj4 .................................................................11

Va.'s Legislative Info. Sys., 2019 Session, H.B. 1700, Summary,
   https://tinyurl.com/2rnhyvpj .................................................................11

Va.'s Legislative Info. Sys., 2020 Session, S.B. 1,
    https://tinyurl.com/yw8p6bxm.................................................................12

**Other Authorities**

*Black's Law Dictionary* (rev. 4th ed. 1968)............................................25

Br. of Georgia [et al.] as *Amici Curiae* Supporting Pet'rs,
    *Yost v. Planned Parenthood Sw. Ohio Region*, No. 19-677
    (U.S. Dec. 26, 2019) .............................................................................32

Dave Ress, *Va. licenses won't be suspended for unpaid fines*, The
    Virginian-Pilot (Feb. 28, 2020), https://tinyurl.com/5n8k5b87 .................13, 47

Dean Seal, *New law doesn't put automatic driver's license suspension
    issues to bed, critics say,* Daily Progress (June 29, 2017),
    https://tinyurl.com/y3k74239.................................................................9

Governor Ralph Northam, Press Release, *Governor Northam Delivers
    State of the Commonwealth Address* (Jan. 8, 2020),
    https://tinyurl.com/bdzr7wje.................................................................12

*Governor Terry McAuliffe delivers final State of the Commonwealth
    Address*, WSLS 10 (Jan. 11, 2017), https://tinyurl.com/mr2k9btz ...................10

Katherine Knott, *Northam Proposes End to Driver's License
    Suspensions Over Court Fees*, Daily Progress (Mar. 26, 2019),
    https://tinyurl.com/y3wamh5n.................................................................8

Jimmy O'Keefe, Capital News Serv., *Bill preventing license
    suspension over court debt unanimously passes Va. Senate*
    (Feb. 12, 2020), https://tinyurl.com/mrxcye4y.............................................13, 47

LAJC, *Driven Deeper Into Debt:  Unrealistic Repayment Options
    Hurt Low-Income Court Debtors* (May 2016),
    https://tinyurl.com/yxo8xve3.................................................................9

LAJC, *Our 2018 VA Legislative Priorities* (Jan. 16, 2018),
    https://www.justice4all.org/2018/01/16/our-2018-va-legislative-
    priorities/ ...........................................................................................10

LAJC, Press Release: *Virginia Office of the Attorney General Undermines Critical Opportunity to Make Driver's License Suspension Permanent* (Apr. 24, 2019), https://tinyurl.com/492wn6w9 ........................................................... 31

Mel Leonor, *Northam wants to cease license suspensions for unpaid court fees*, Richmond Times-Dispatch (Mar. 26, 2019), https://tinyurl.com/6wm3zb3a .......................................................... 11

Philip B. Kurland, *The Bounds of Freedom*, N.Y. Times (June 23, 1971) ................................................................................................... 4

Travis Fain, *McAuliffe:  Most of my legislative goals met*, Daily Press (Oct. 6, 2016), https://tinyurl.com/2yr3khxp ...................................... 10

Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.5 (3d ed.) ..................... 4, 27

## INTRODUCTION

The Supreme Court has not decided "whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, the success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Sole v. Wyner*, 551 U.S. 74, 86 (2007). This Court has resolved that question, however. For two decades, the settled rule in this circuit has been that a plaintiff that obtains a preliminary injunction, but no final judgment, does not qualify as a "prevailing party" under 42 U.S.C. § 1988 ("Section 1988"). *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir.), *cert. denied*, 537 U.S. 825 (2002).

This case involves a fee dispute arising from a constitutional challenge to aspects of a Virginia statute requiring courts to suspend driver's licenses of those who failed to pay their court debts. While the case was pending, a change in political leadership in the General Assembly led to repeal of the entire statutory scheme, mooting Plaintiffs' challenge to certain provisions. As a result, the merits of their challenge were never litigated to final judgment, and Plaintiffs' claims and Defendant's defenses were left unresolved.[1] Nonetheless, Plaintiffs seek to force Defendant to pay their fees; they claim to be "prevailing parties" because they

---

[1] Because now-former DMV Commissioner Richard Holcomb has been replaced by Acting Commissioner Linda Ford, she is automatically substituted as Defendant-Appellee by operation of Federal Rule of Appellate Procedure 43(c)(2).

obtained a limited preliminary injunction in December 2018, more than a year before repeal. *Smyth* precludes prevailing-party status in these circumstances, as a magistrate judge, the district court, and a panel of this Court all found.

The issue now before the Court en banc is whether to abandon *Smyth*. Absent explicit statutory authority, should the Court reinterpret Section 1988 to allow plaintiffs who obtain a preliminary injunction, but never a final judgment, to be prevailing parties entitled to fees? It should not. Plaintiffs offer no good reason to change course, while numerous considerations counsel in favor of the Court's existing approach. No intervening Supreme Court precedent undermines *Smyth*'s result or holdings. Although *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), clarified the standard for obtaining a preliminary injunction, that did not undercut *Smyth*'s reasoning. *Smyth*'s analysis turned on the tentative nature of preliminary injunctions and the necessarily abbreviated inquiry behind their entry—realities that were not affected by *Winter*.

*Smyth* was rightly decided and remains consistent with Section 1988 and Supreme Court case law interpreting it. As *Smyth* reasoned, because a preliminary injunction inquiry does not produce a final judgment, involves only an "incomplete examination" of the merits, and is "necessarily abbreviated," it is an insufficient basis to convey prevailing-party status. 282 F.3d at 276, 277 n.8. Indeed, this case exemplifies why skepticism about preliminary determinations is warranted: as later

developments showed, the incomplete record at the preliminary injunction stage gave a mistaken impression of Plaintiffs' probability of success.

Plaintiffs' proffered reasons for abandoning *Smyth* are not compelling. As in *Buckhannon*, the fact that other circuits have adopted different rules should not move the Court. Those other circuits' rules are not uniform, nor would Plaintiffs necessarily qualify as prevailing parties under them. Plaintiffs also offer no evidence for their chief policy argument—that *Smyth*'s rule discourages civil rights plaintiffs from bringing litigation because of the possibility that, in the rare circumstance where a case becomes moot after entry of a preliminary injunction, they will end up footing their own bills.

The Court should reaffirm *Smyth*. But if the Court were sufficiently concerned that defendants are strategically mooting cases after losing preliminary injunctions, it could draw on precedent, in this circuit and beyond, to allow prevailing-party status where the defendant moots the case ***in response to*** the preliminary injunction. Plaintiffs would not qualify for fees even under that limited exception, however. As their own counsel recognized, § 46.2-395 was repealed due to changes in the General Assembly's partisan makeup—***not*** the preliminary injunction in particular or the litigation generally.

Because Plaintiffs did not "prevail" here, the Court should affirm the decisions below and deny Plaintiffs' fee petition.

## STATEMENT OF THE CASE

In Plaintiffs' telling, the General Assembly repealed former § 46.2-395 in response to the preliminary injunction in an effort to moot Plaintiffs' constitutional challenge to the statute and avoid paying legal fees. *See generally* Suppl. Opening Br. of Appellants [ECF No. 71] ("Suppl. Br."). Plaintiffs' recounting of the facts is far from accurate. They did not prevail in their challenge and the General Assembly's repeal of former § 46.2-395 had nothing whatsoever to do with their lawsuit or the preliminary injunction.

### A.    Plaintiffs' allegations are not facts.

Plaintiffs' recitation of the background, *see* Suppl. Br. at 6–22, suffers from the same flaw as their legal claim: contrary to their characterization, they never ***proved*** the allegations that they now pass off as facts. Nor did the preliminary injunction confirm their legal conclusions as if they became law of the case. Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.5 (3d ed.).

Take, for example, their assertion that "driver's license were automatically and indefinitely suspended by ***the Commissioner*** for failure to pay court debt that they could not afford." Suppl. Br. at 6–7 (citing First Am. Compl.) (emphasis added). Or that "[f]or years, the Commissioner let [an] unconstitutional regime continue to deprive hundreds of thousands of Virginians of their dignity and the chance to raise themselves up from the vicious cycle of poverty." *Id.* at 50 (citing

complaints). Their characterization of the Commissioner's role is belied by the statutory language, which expressly places the power of suspension in the hands of **the courts**, not the Commissioner. *See, e.g.*, Va. Code Ann. § 46.2-395(B) (providing that "court[s] shall forthwith suspend"); *id.* § 46.2-395(C) (following a court's suspension of driving privileges, the clerk of court was responsible for sending the "record of the person's failure or refusal and of the license suspension . . . to the Commissioner"). Likewise unsupported is their allegation that "§ 46.2-395 authorized . . . suspensions without notice, a hearing, or consideration of Plaintiffs' inability to pay." Suppl. Br. at 1. *See, e.g.*, Va. Code Ann. § 46.2-395(B) (public notice of suspension); *id.* § 46.2-395(C) (written notice); *id.* § 19.2-355(A) (opportunity to be heard by petitioning suspending court for payment plan); *id.* § 19.2-354 (opportunity to petition for forgiveness of debt). Contrary to Plaintiffs' apparent assumption, the Commissioner's defenses from liability based on the actual operation of the statutory scheme were never definitely resolved.

More basically, there is Plaintiffs' constant refrain that § 46.2-395 was "unconstitutional." *See, e.g.*, Suppl. Br. at 33 ("the Commissioner fought to keep an unconstitutional statute in place"); *id.* at 34 (referring to "the unconstitutional operation of § 46.2-395); *id.* at 39 ("Plaintiffs were harmed by the unconstitutional application of § 46.2-395); *see also id.* at 6 ("Virginia denied Plaintiffs procedural due process."). Simply asserting § 46.2-395's unconstitutionality does not make it

any truer now than it was in Plaintiffs' complaint.[2]  No court ever found that the statute violated the Constitution.  Although Plaintiffs certainly ***alleged*** the unconstitutionality of § 46.2-395, the case became moot before Plaintiffs could prove, or Defendant could disprove, those allegations.

Much as Plaintiffs may think the "state ha[d] no hope of success," Suppl. Br. at 49, we'll never know—illustrating why prevailing-party status is not appropriate here. *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health,* 532 U.S. 598, 606 (2001) (prevailing-party status not available to plaintiffs who file a "nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined)."  Having not prevailed, Plaintiffs are not entitled to their own version of the facts.

**B.     Plaintiffs did not prevail.**

With the preliminary injunction, Plaintiffs claim to have "won."  Suppl. Br. at 1.  In fact, the preliminary injunction gave only narrow, temporary relief to the named Plaintiffs only.  Plaintiffs sought expansive relief in this suit that they never received—not even close.  They demanded, among other things:

---

[2] Worse still is Plaintiffs' misappropriation of Chief Judge Gregory's observation, in his dissent from the decision dismissing their first appeal, that their previous complaint had described a "'nightmarish spiral' that trapped Plaintiffs." Suppl. Br. at 50 (quoting *Stinnie*, 734 F. App'x at 864 (Gregory, C.J., dissenting)). Only Plaintiffs' ***allegations*** were before the Court.  His characterization of them does not mean that they were true.

- a declaratory judgment that now-repealed Virginia Code § 46.2-395, "as written and as implemented," was unconstitutional on its face and as applied, and that the Commissioner had violated their constitutional rights;

- a preliminary and permanent injunction against § 46.2-395's enforcement as to the hundreds of thousands of drivers with suspended licenses;

- reinstatement (without fees) of those hundreds of thousands of driver's licenses; and

- certification of a class of drivers whose licenses are suspended, as well as a class of drivers whose licenses will be suspended in the future.

JA269 [First. Am. Compl. at 44]. By contrast, the district court's preliminary injunction granted far more limited relief, and affected only the named Plaintiffs. *Compare* JA302 (proposed order) *with* JA843 (order). The Commissioner was required to "remove" the suspensions (*i.e.*, merely alter DMV's database to hide the courts' suspensions of their licenses) of the three Plaintiffs with suspended licenses, had to "reinstate" their licenses without fees, and could not enforce § 46.2-395 against the named Plaintiffs unless or until notice and hearing was provided.[3] No court was ordered to vacate a suspension it had imposed.

Thus, at the time the case was dismissed, Plaintiffs had received no declaratory judgment about the facial and as-applied constitutionality of § 46.2-395;

---

[3] *See* JA843 & n.1 ("Until the Court determines 'that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole,' Fed. R. Civ. P. 23(b)(2), this Order applies only to named Plaintiffs . . . .").

7

no preliminary and permanent injunction against § 46.2-395's enforcement as to thousands of other drivers with suspended licenses; and no reinstatement of those thousands of other drivers' licenses. Plaintiffs also had not received a final determination on the merits of *any* of their claims. In fact, Defendant moved for summary judgment on the basis that the claims were meritless—a motion that remained pending at dismissal. JA942. Plaintiffs' motion for class certification, which Defendant opposed, also remained pending.

Plaintiffs' "greatest wish" was "for this practice [of license suspension] to end and for the one million people to get their licenses back." That was what they were "really asking for in the lawsuit."[4] The preliminary injunction did not give them what they were "really asking for," as they informed the district court many months later: "Plaintiffs have not received the relief sought. . . . Plaintiffs' 'greatest wish,' in turn, has not been granted." JA932. Their wish eventually came true, but only because the General Assembly repealed the statute, not because of the preliminary injunction or any order of the district court. *See Buckhannon*, 532 U.S. at 605 (noting that a "voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change").

---

[4] Katherine Knott, *Northam Proposes End to Driver's License Suspensions Over Court Fees*, Daily Progress (Mar. 26, 2019), https://tinyurl.com/y3wamh5n.

**C.    The General Assembly did not repeal § 46.2-395 because of the preliminary injunction.**

Plaintiffs represent to the Court that the General Assembly repealed § 46.2-395 "[i]n recognition of the impact of the preliminary injunction." Suppl. Br. at 6. Not so. Advocates (including the LAJC) had been lobbying the General Assembly for *years* (before the litigation, much less the preliminary injunction) to do away with license suspension. The district court preliminarily enjoined the statute in 2018, but the repeal occurred in 2020—after an election that changed the partisan makeup of the General Assembly. These facts provide critical context that Plaintiffs omit.

As the Commissioner has previously shown, *see* ECF No. 24 [Br. of Appellee] ("Def.'s Br.") at 9–18, the General Assembly's repeal of § 46.2-395 was the culmination of growing public opposition, years of work by legislators and advocacy by many civil rights organizations, and—most significantly—the General Assembly's changed political makeup after the 2019 election.[5] Opposition to the license-suspension policy mounted for years. In the General Assembly's 2017

---

[5] Plaintiffs' co-counsel LAJC was among many groups across the country bringing public attention to the suspension of drivers' licenses for failure to pay court debt. *See, e.g.*, LAJC, *Driven Deeper Into Debt: Unrealistic Repayment Options Hurt Low-Income Court Debtors* (May 2016), https://tinyurl.com/yxo8xve3. LAJC also pursued an aggressive legislative strategy to "dump the automatic suspension policy." Dean Seal, *New law doesn't put automatic driver's license suspension issues to bed, critics say*, Daily Progress (June 29, 2017), https://tinyurl.com/y3k74239.

regular session, Governor McAuliffe proposed "limit[ing] the number of people whose driver's licenses are suspended due to unpaid court costs," criticizing § 46.2-395 not on constitutional grounds but on policy grounds: "Suspending people's driver's licenses limits their ability to work, which only makes it more difficult to earn the money to pay off their debt and build better lives."[6] The House of Delegates, controlled by the party opposite the Governor, opposed repeal efforts. House subcommittees declined to act on various measures that passed the Senate during the General Assembly's 2017 and 2018 regular sessions.[7] Def.'s Br. at 12–13.

Nothing changed with entry of the preliminary injunction in December 2018. When the General Assembly convened for its 2019 regular session just a few weeks later, House subcommittees again declined to act on repeal measures that passed the Senate, including Senator Stanley's repeal bill (S.B. 1013), which had won overwhelming approval in the Senate.[8]

---

[6] *Governor Terry McAuliffe delivers final State of the Commonwealth Address*, WSLS 10 (Jan. 11, 2017), https://tinyurl.com/mr2k9btz.

[7] *See* Va.'s Legislative Info. Sys., 2017 Session, S.B. 1280, https://tinyurl.com/2v52hc66; Va.'s Legislative Info. Sys., 2018 Session, S.B. 181, https://tinyurl.com/4xawmmcw. Senator William Stanley's repeal bill was among the LAJC's top legislative priorities for 2018. LAJC, *Our 2018 VA Legislative Priorities* (Jan. 16, 2018), https://www.justice4all.org/2018/01/16/our-2018-va-legislative-priorities/.

[8] Va.'s Legislative Info. Sys., 2019 Session, S.B. 1013, https://tinyurl.com/tnm2jpj4. *See also* Mel Leonor, *Northam wants to cease license*

Because of the House subcommittee's refusal to take any action during its regular session, Senator Stanley "went directly to [Governor] Northam to ask him to amend the budget to end the license suspension policy and force a vote of the full House on the proposal." *Id.* Northam, himself a longtime opponent of the license-suspension policy, agreed. He proposed an amendment to the 2018–2020 budget that suspended the policy in the budget's second year (July 1, 2019 to June 30, 2020). The amendment passed by wide margins in the House (70–29) and Senate (30–8).[9]

Following the amendment's adoption, the district court granted Defendant's motion to stay the case pending the General Assembly's 2020 session. In doing so, it noted the "shifting political winds" and the "political hostility towards § 46.2-395." *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 658, 659 (W.D. Va. 2019) [JA948, 950]. It reasoned that "if the General Assembly fails to repeal § 46.2-395, the Court will have ample time to address the merits of the case." *Id.* at 661 [JA953].

The district court never did "address the merits of the case," however. The Governor's party won a majority of House seats in the November 2019 general election, and assumed control of the subcommittees that previously declined to act

---

*suspensions for unpaid court fees*, Richmond Times-Dispatch (Mar. 26, 2019), https://tinyurl.com/6wm3zb3a.

[9] Va.'s Legislative Info. Sys., 2019 Session, H.B. 1700, Summary, https://tinyurl.com/2rnhyvpj.

on the Senate's repeal measures. Heading into the 2020 General Assembly session, Governor Northam identified eliminating the license-suspension requirement as among his top priorities.[10] Multiple repeal bills were introduced, and Senator Stanley's S.B. 1—a version of what he proposed in 2018 and 2019—overwhelmingly passed the House (75–25) and Senate (38–1) in February 2020, was signed into law in April 2020, and became effective July 1, 2020.[11]

No one had to speculate why repeal succeeded when it had failed for years prior, and even after entry of the preliminary injunction. Plaintiffs' counsel publicly stated what was obvious:

> Stanley introduced similar legislation in the past two General Assembly sessions that would have ended the suspension of driver's licenses due to court debt, but SB 1 is the first that has not died in a Republican-led committee. ***[LAJC attorney Pat] Levy-Lavelle attributed the bill's success to the new makeup of the General Assembly.*** "Last year and in previous years, the leadership of the House Courts Committee was different and they were able to stop what was frankly a common sense piece of reform," Levy-Lavelle said.[12]

The press likewise understood that political reality. As one reporter explained,

---

[10] Governor Ralph Northam, Press Release, *Governor Northam Delivers State of the Commonwealth Address* (Jan. 8, 2020), https://tinyurl.com/bdzr7wje.

[11] *See* Va.'s Legislative Info. Sys., 2020 Session, S.B. 1, https://tinyurl.com/yw8p6bxm.

[12] Jimmy O'Keefe, Capital News Serv., *Bill preventing license suspension over court debt unanimously passes Va. Senate* (Feb. 12, 2020) (emphasis added), https://tinyurl.com/mrxcye4y.

"[Stanley's] bill last year passed the Senate easily, but died in the House criminal laws subcommittee, long known for tough law-and-order stances and skepticism about any changes that seemed to ease sanctions on offenders. That subcommittee, however, was transformed when the new Democratic Party majority took control after last year's election."[13]

This sequence of events undermines any conclusion that the preliminary injunction was what motivated the General Assembly to repeal § 46.2-395.

## SUMMARY OF ARGUMENT

This Court's unanimous, published decision in *Smyth* remains binding law in this circuit and precludes the conclusion that Plaintiffs are prevailing parties entitled to recover fees. The Court should affirm the district court's denial of fees for three overarching reasons.

*First*, *Smyth* has not been undermined by any intervening Supreme Court precedent. *Smyth*'s conclusion rested on the "necessarily abbreviated" inquiry entailed by a preliminary injunction and the "incomplete examination" of the merits involved. *Winter* did not change the nature of the inquiry; it only clarified the standard.

---

[13] Dave Ress, *Va. licenses won't be suspended for unpaid fines*, The Virginian-Pilot (Feb. 28, 2020), https://tinyurl.com/5n8k5b87.

13

*Second*, *Smyth* is faithful to Section 1988 and Supreme Court case law interpreting it. Its bright-line approach promotes policy considerations important to determining fee availability. Congress has never stated explicitly, as would be required, that obtaining a preliminary injunction is sufficient to confer prevailing-party status. This case exemplifies the wisdom of *Smyth*'s approach.

*Third*, Plaintiffs offer no compelling reason for abandoning *Smyth*. The fact that other circuits have adopted different approaches should not move the Court, especially given that, on the facts of this case, Plaintiffs would not be eligible for prevailing-party status under a number of other circuits' tests.

The Court should reaffirm *Smyth*. But if it were inclined to adopt a different rule out of concern for potential gamesmanship by a defendant, any concern could be allayed by a rule that allowed prevailing-party status only where the defendant moots the case in direct response to a preliminary injunction. Because Plaintiffs cannot satisfy such a test, prevailing-party status is still unavailable to them.

## LEGAL STANDARDS

The Court "review[s] a district court's 'prevailing party' determination de novo." *Grabarczyk v. Stein*, 32 F.4th 301, 306 (4th Cir. 2022). When moving for attorney's fees, "the fee applicant bears the burden of establishing entitlement to an award . . . ." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

Under the "American Rule" of fee liability, a "prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Courts do not depart from this rule absent "explicit statutory authority." *Buckhannon*, 532 U.S. at 602 (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)). Section 1988 is a departure from the American Rule in that it allows the "prevailing party" in a suit brought under § 1983 (among other statutes) "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); *see also Buckhannon*, 532 U.S. at 603 ("prevailing party" is "a legal term of art"). This departure is limited, however, to cases where "a party has prevailed on the merits of at least some of his claims." *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (per curiam); *see also Hewitt v. Helms*, 482 U.S. 755, 760 (1987) ("Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail.").

In *Buckhannon*, the Supreme Court rejected "the 'catalyst theory,' which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 601. Rather, to attain prevailing-party status, a plaintiff's merits victory must have "the necessary judicial *imprimatur*." *Id.* at 604. For instance, "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to

permit an award of attorney's fees." *Id.* (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989) (punctuation omitted). By contrast, a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur*." *Id.* The term "prevailing party" does not characterize "a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." *Id.* at 606.

A plaintiff "who secure[s] a permanent injunction" may be a prevailing party. *Lefemine v. Wideman*, 568 U.S. 1, 2 (2012). But "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole v. Wyner*, 551 U.S. 74, 83 (2007). Such an "initial victory" is "ephemeral." *Id.* at 86. Thus, a "plaintiff who achieves a transient victory at the threshold of an action can gain no award under [§ 1988(b)] if, at the end of the litigation, her initial success is undone and she leaves the courthouse emptyhanded." *Id.* at 78. Rather, the court-ordered "'change in the legal relationship' between [the plaintiff] and the state officials she sued" must be "enduring." *Id.* at 86 (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 792 (cleaned up)).

16

## ARGUMENT

**I.    *Smyth* has not been undermined by intervening Supreme Court precedent.**

Plaintiffs have never disputed that, if it applies, *Smyth* controls this appeal and deprives them of prevailing-party status.  Indeed, *Smyth* is factually on all fours with this case, and its reasoning is dispositive.

Thus, to pursue fees, Plaintiffs argue that *Smyth* should be reversed.  Their primary argument is that the Supreme Court's clarification of the preliminary-injunction standard in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), fatally undermines the reasoning of *Smyth*. [14]  As the district court and a panel of this Court recognized, however, that argument is meritless.  JA1262; ECF No. 52 ["Slip op."] at 8–9.  Because the result in *Smyth* rested on the nature of the preliminary injunction inquiry, rather than on a specific preliminary injunction standard, *Winter* did not undercut its analysis.  And, in any event, *Smyth* anticipated and applied the standard that *Winter* adopted.

---

[14] Until now, Plaintiffs had also argued that *Lefemine v. Wideman*, 568 U.S. 1 (2012) (per curiam), rendered *Smyth* "outdated."  ECF No. 55 [Pet. for Rehr'g *En Banc*] at 7 n.2, 9.  They appear now to have abandoned that argument, and sensibly so.  *Lefemine*'s conclusion that **permanent** injunctive relief is sufficient to confer prevailing-party status, 568 U.S. at 2, does not undermine *Smyth*'s holding that **preliminary** injunctive relief is not, 282 F.3d at 277 (citing the "preliminary, incomplete nature of the merits examination").  Plaintiffs' argument that *Lefemine* "clarified" when a plaintiff is a prevailing party also failed because the standard applied there had been in use for decades.  Slip op. at 10.

A. ***Smyth* recognized the inherently tentative nature of preliminary injunctions and the abbreviated nature of the preliminary injunction inquiry.**

Plaintiffs do not dispute that *Smyth* controls the outcome here and is factually indistinguishable. In both cases:

- the district court found that plaintiffs were likely to succeed on a single claim challenging the constitutionality of a Virginia governmental policy, and therefore granted a preliminary injunction;[15]

- the case was later dismissed as moot, with no further relief having been granted;[16]

- the plaintiffs sought fees by insisting that the preliminary injunction was a judgment "on the merits";[17] and

- the plaintiffs claimed that obtaining a preliminary injunction conferred prevailing-party status.[18]

---

[15] *Compare Smyth v. Carter*, 168 F.R.D. 28, 31 (W.D. Va. 1996) ("plaintiffs will likely succeed on the merits"), *with Stinnie*, 355 F. Supp. 3d at 520 [JA820] ("Plaintiffs are likely to succeed on the merits of their procedural due process claim . . . .").

[16] *Compare Smyth v. Carter*, 88 F. Supp. 2d 567 (W.D. Va. 2000); *Smyth*, 282 F.3d at 273, *with* JA1017.

[17] *Compare Smyth*, 282 F.3d at 275 ("The preliminary injunction entered by the district court is sufficient, they assert, to constitute an enforceable judgment on the merits.") (citation omitted and punctuation altered), *with* Suppl. Br. at 12 (emphasizing that the district court's determination was "on the merits"), 22 (Plaintiffs "attained merits-based injunctive relief").

[18] *Compare Smyth*, 2000 WL 1567168, at *5 (preliminary injunction "materially altered the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefitted the plaintiff"), *with* Suppl. Br.

The chief difference between the cases is that the district court in *Smyth* accepted the plaintiffs' argument, while the district court here rejected it.

In *Smyth*, a unanimous panel of this Court reversed the district court's decision, finding that it had "erred in characterizing [the plaintiffs] as prevailing parties and granting them attorney's fees on that basis." 282 F.3d at 285. The Court rejected the plaintiffs' assertion that "the preliminary injunction they were awarded . . . effected the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees" and that it was "sufficient . . . to constitute an 'enforceable judgment[ ] on the merits.'" 282 F.3d at 274–75 (quoting *Buckhannon*, 532 U.S. at 604 (punctuation altered and quotation omitted)).

The Court's conclusion rested on the nature of the preliminary injunction inquiry. As it explained, "[w]hile granting such an injunction does involve an inquiry into the merits of a party's claim, and is, like any court order, 'enforceable,' the merits inquiry in the preliminary injunction context is necessarily abbreviated." *Id.* at 276 (citation omitted). Thus, a "district court's determination that such a showing [of likelihood of success on the merits] has been made is best understood as a prediction of a probable, but necessarily uncertain, outcome." *Id.* "The fact that a preliminary injunction is granted in a given circumstance . . . by no means

_____

at 22 (arguing that the preliminary injunction "materially altered" the relationship among the parties).

represents a determination that the claim in question will or ought to succeed ultimately; that determination is to be made upon the 'deliberate investigation' that follows the granting of the preliminary injunction." *Id.* Thus, it held, because of "the preliminary, incomplete examination of the merits involved," a preliminary injunction conclusion "is ill-suited to guide the prevailing party determination." *Id.* at 277 n.8.

The Supreme Court refused the plaintiffs' petition for certiorari, 537 U.S. 825 (2002), leaving *Smyth* as settled precedent in this circuit for twenty years. The Court continues to rely on it to guide decisions in other cases. *See, e.g.*, *Ge v. United States Citizenship & Immigr. Servs.*, 20 F.4th 147, 154 (4th Cir. 2021) (using *Smyth* as guidepost in determining that a remand order did not confer prevailing-party status).

**B.** ***Winter* did not undermine *Smyth*'s viability.**

Plaintiffs posit that the Supreme Court's clarification of the preliminary-injunction standard in *Winter* effectively superseded *Smyth*, eliminating its bright-line rule and opening the floodgates to fees. In other words, despite that the Supreme Court had ***expressly*** left open in *Sole* the question whether "success in gaining a preliminary injunction may sometimes warrant an award of counsel fees," 551 U.S.

at 86, Plaintiffs make the questionable claim that *Winter* **implicitly** settled that issue for this circuit.[19]

Plaintiffs are wrong. *Winter* did not undercut *Smyth* for two reasons: first, *Smyth*'s reasoning turned on the nature of preliminary injunctions, not the precise standard for obtaining one; and second, *Smyth* anticipated and applied the likelihood-of-success standard recognized in *Winter*.

### 1. *Smyth*'s reasoning relied on the nature of preliminary injunctions, not the standard for obtaining one.

Plaintiffs' argument boils down to the contention that the "*Winter* standard [for obtaining a preliminary injunction] is more stringent than the previous . . . standard" as set forth in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). Suppl. Br. at 28; *see also id.* at 27 ("When this court decided *Smyth* the preliminary injunction standard involved an abbreviated merits analysis, but that is no longer the case." (emphasis omitted)). They therefore assume that *Smyth* must no longer be good law. Not so. As the panel recognized, *Smyth* "primarily turned on the **nature** of preliminary injunctions – which remains unchanged – not the **standard** for obtaining a preliminary injunction." Slip op. at 8 (emphasis in original).

---

[19] *Cf. Agostini v. Felton*, 521 U.S. 203, 230–31 (1997) (explaining that lower courts should not conclude that the Supreme Court's "more recent cases have, by implication, overruled [its] earlier precedent").

Indeed, in *Smyth* the Court acknowledged the criticisms of *Blackwelder*, but expressly noted that they did not matter to the prevailing-party determination:

> Our Circuit's current framework for the preliminary injunction inquiry, specifically the establishment of the "analytical order, hierarchy of importance, . . . comparative weights," and the intertwining of consideration of the factors in our prior cases has been criticized as a departure (in form if not necessarily in practice) from Supreme Court precedent. *Safety–Kleen, Inc. [v. Wyche]*, 274 F.3d [846,] 868–70 [(4th Cir. 2001)] (Luttig, J., concurring). ***Whatever the merits of this argument, it does not alter our conclusion here.***

*Smyth*, 282 F.3d at 277 n.8 (emphasis added); *see also* JA1263 n.2 (district court's acknowledgement of the impact of the bolded language). Rather, this Court explained, its reasoning was based not on the preliminary injunction standard, but on the inherently "preliminary" nature of the merits inquiry. The "preliminary injunction inquiry, because of the preliminary, incomplete examination of the merits involved and the incorporation (if not the predominance) of equitable factors, is ill-suited to guide the prevailing party determination ***regardless of how it is formulated***." *Id.* (emphasis added). As the district court recognized, "[t]his statement is just as true of the *Winter* inquiry as it is of the *Blackwelder* one." JA1263. Footnote 8 of the *Smyth* decision shows that Plaintiffs' focus on the *Blackwelder/Winter* distinction is misplaced. Whatever the standard, the preliminary injunction inquiry produces only "a prediction of a probable, but necessarily uncertain, outcome," not "a determination that the claim in question will

22

or ought to succeed ultimately." 282 F.3d at 277 n.8; *see also* Slip op. at 9 (agreeing that *Winter* "did not change the[] realities" of the preliminary injunction inquiry).

### 2. *Smyth* anticipated and applied the likelihood-of-success standard recognized in *Winter*.

Plaintiffs are mistaken in a critical regard when they state that "*Smyth* was decided under the pre-*Winter* standard." Suppl. Br. at 28. *Smyth* acknowledged, accounted for, and applied the likelihood-of-success standard that *Winter* recognized.

According to Plaintiffs, "[t]he *Winter* requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious question for litigation." *Id.* at 29 (citation omitted). But *Smyth*'s holding did not turn on the applicability of the "substantial question" standard. While this Court recognized that in *some* circumstances "a plaintiff may . . . need only establish that his case presents a 'substantial question' to obtain a preliminary injunctive relief," *Smyth*, 282 F.3d at 276, it expressly acknowledged a *higher* standard too:

> At the most, a party seeking a preliminary injunction may have to demonstrate *a strong showing of likelihood of success or a substantial likelihood of success by clear and convincing evidence* in order to obtain relief. A district court's determination that *such a showing* has been made is best understood as a prediction of a probable, but necessarily uncertain, outcome.

*Id.* (internal citation and punctuation omitted) (emphasis added).  Indeed, the district court in *Smyth* even ***applied*** that likelihood-of-success standard, finding that "plaintiffs will likely succeed on the merits." *Smyth*, 168 F.R.D. at 31.  Plaintiffs are therefore simply incorrect that *Winter*'s "more stringent" standard undermined *Smyth*, Suppl. Br. at 28, because the Fourth Circuit accounted for the standard that *Winter* later imposed, *see* JA1262 (district court noting that *Smyth* "acknowledged that some preliminary injunctions involved a showing on the merits nearly identical to—or even stronger than—the one the Supreme Court later articulated in *Winter*").

Thus, even if Plaintiffs were correct to pronounce *Smyth*'s bright-line rule "dictum," to the extent the opinion went "beyond what was necessary to decide the case," Suppl. Br. at 30, *Smyth* would still be dispositive here.  Indeed, their reading suggests that the Court can limit the reach of *Smyth* without overturning it altogether. Regardless whether a bright-line rule should preclude some plaintiffs from being prevailing parties in ***other*** factual circumstances involving preliminary injunctions, *see* Part III.A *infra* (discussing other circuits' approaches allowing prevailing-party status in certain contexts), *Smyth* controls at least in the circumstances raised by Plaintiffs here.  Facing substantially identical facts as this case, and applying the likelihood-of-success standard Plaintiffs insist is now required, the Court had no trouble concluding that Plaintiffs were not prevailing parties.  Nothing has changed to warrant a different conclusion.

II.    ***Smyth* remains correctly decided.**

A.    ***Smyth* is consistent with Section 1988 and Supreme Court case law interpreting it.**

Far from "hopelessly frustrating Congress'[s] intent in passing Section 1988" as Plaintiffs claim, Suppl. Br. at 33, the *Smyth* approach is fully consistent with the meaning of "prevailing party" under Section 1988.

First, a preliminary injunction is not a ***final*** judgment.  When Section 1988 was enacted in 1976, a "prevailing party" was understood to be "[t]he party ultimately prevailing when the matter is finally set at rest"—a determination not depending on "the degree of success at different stages of the suit." "Prevailing Party," *Black's Law Dictionary* 1352 (rev. 4th ed. 1968) (citing cases).  Indeed, the Supreme Court has observed that "legal holdings en route to a final judgment" are "not the stuff of which legal victories are made."  *Hewitt*, 482 U.S. at 760, 762; *see also Hanrahan*, 446 U.S. at 759 (denying fees for interim success; noting a "jury may or may not decide some or all of the issues in [their] favor").  To be a prevailing party requires more than bringing "a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined)."  *Buckhannon*, 532 U.S. at 606.  Rather, the touchstone is achieving actual "resolution of [a] dispute," *Tex. State Teachers Ass'n*, 489 U.S. at 792—an "absolute limitation," *id.*, and one that a preliminary injunction does not provide.

Here, Plaintiffs "never obtained a final judgment on the merits." Slip op. at 11. The preliminary injunction had only a "tentative character, in view of the continuation of the litigation to definitely resolve the controversy." *Sole*, 551 U.S. at 84. It was at most "a prognosis of probable or possible success. It in no way sought to announce or establish a final result." *Smith v. Univ. of N. Carolina*, 632 F.2d 316, 347 (4th Cir. 1980). Thus, the *Smyth* rule does not conflict with *Grabarczyk v. Stein*, where fees were allowed to a plaintiff who "won a final judgment on the merits" before the case was mooted. 32 F.4th at 310. Nor is it inconsistent with *Reyazuddin v. Montgomery Cty.*, where the plaintiff was "a prevailing party because she *proved* her claim to a jury." 988 F.3d 794, 798 (4th Cir.), *cert. denied*, 142 S. Ct. 389 (2021). Indeed, as the Court observed there, had the defendant mooted the case before Reyazuddin "proved" a legal violation, that would be precisely the sort of case the Supreme Court has held ineligible for fees under Section 1988. *Id.* ("[T]hat would be a classic catalyst theory case[.]").

Second, a "prevailing party" must succeed "on the merits," *Hanrahan*, 446 U.S. at 758—not merely obtain a favorable ***prediction*** of the merits, *Smyth* 282 F.3d at 277 n.8 (preliminary injunction "is best understood as a prediction of a probable, but necessarily uncertain, outcome"). A preliminary injunction is not "a final judicial decision based on the actual merits of the controversy," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 396 (1981), and to "equate[] 'likelihood of success'

with 'success'" would be "improper," *id.* at 394.  Thus, *Smyth* was right to note that, although preliminary injunction proceedings involve a "preliminary, incomplete examination of the merits," *Smyth* 282 F.3d at 277 n.8, they generally do not resolve them.[20]  Rather, as here, a preliminary injunction is a non-binding prediction of the outcome of the merits determination, which is made merely to "preserve the relative positions of the parties until a trial on the merits can be held."  *Camenisch*, 451 U.S. at 395–96.  *See also Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) ("'The traditional office of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits.'" (citation omitted)).  Thus, it is for good reason that "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Camenisch*, 451 U.S. at 395.  *Accord* Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.5 (3d ed.) ("Rulings—predictions—as to the likely outcome on the merits made for preliminary injunction purposes do not ordinarily establish the law of the case.").

---

[20] While "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits," *Camenisch*, 451 U.S. at 395, Federal Rule of Civil Procedure 65(a)(2) provides for a mechanism, in the exceptional case, to consolidate a preliminary injunction hearing with a trial on the merits.  No such consolidation occurred here.

Third, as *Smyth* recognized, the "necessarily abbreviated" and "incomplete" nature of preliminary injunction proceedings makes them "ill-suited to guide the prevailing-party determination." 282 F.3d at 276, 277 n.8. "In short, where a federal district court has granted a preliminary injunction, the parties generally will [not] have had the benefit . . . of a full opportunity to present their cases . . . ." *Camenisch*, 451 U.S. at 396. As was true in this case, discovery usually has not occurred. Moreover, "given the haste that is often necessary" to resolve a preliminary injunction motion, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* at 395–96; *see also id.* at 394 (noting "significant procedural differences between preliminary and permanent injunctions"). Because "preliminary injunction proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards," even "hearsay or other inadmissible evidence" may be considered. *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1239 (2017).[21]

---

[21] Plaintiffs benefited from that lower evidentiary standard here. *See* Prelim. Inj. Hr'g Tr. at 14:14–18 (Nov. 15, 2018), *Stinnie v. Holcomb*, No. 3:16-cv-00044 (W.D. Va.), ECF No. 201-8 ("[Counsel for Defendant]: Considering that this is a motion for preliminary injunction, we've stipulated that the documentary evidence can be entered to the Court without need to go through hearsay exceptions and so on and so forth.").

The risk of error in preliminary injunction proceedings is so inherent that Federal Rule of Civil Procedure 65(c) requires the "giving of security" to guard against damages the enjoined party may suffer. This requirement "is rooted in the belief that a defendant deserves protection against a court order granted without the full deliberation a trial offers." *Camenisch*, 451 U.S. at 397 (quotation omitted).

For these reasons, *Smyth*'s bright-line rule is consistent with Section 1988. "Congress is free, of course, to revise" Section 1988 to allow fees based on a preliminary injunction or on the mere "substantial likelihood" of prevailing. *Buckhannon*, 532 U.S. at 621 (Scalia, J., concurring). But it has not provided the "explicit statutory authority" that would be required to do so. *Id.* at 602 (majority op.).

## B. *Smyth* advances important policy considerations recognized by the Supreme Court.

Plaintiffs anticipate, and reject out-of-hand, multiple policy considerations that support this Court's approach in *Smyth*. *See* Suppl. Br. at 48. They fail to appreciate that these are considerations that the **Supreme Court** has stated are important in determining fee eligibility.

### 1. Simplicity favors *Smyth*'s bright-line approach.

A key advantage of *Smyth* over the "fact-specific standards" of other circuits, *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008), is clarity and ease of application. The Supreme Court has long been concerned about the "judicial

29

administration of § 1988" with respect to "defining the term 'prevailing party.'" *Tex. State Teachers Ass'n*, 489 U.S. at 791. *Smyth*'s bright-line approach is easily administrable. While Plaintiffs deride the need for clear standards, Suppl. Br. at 48, that concern motivated the outcome in *Buckhannon*. There, the Supreme Court rejected a proposed "nuanced" approach to determining whether a party had prevailed because it was "clearly not a formula for 'ready administrability,'" 532 U.S. at 610.

Similarly, *Smyth* respects the principle that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). The Supreme Court has warned against "unstable threshold[s] to fee eligibility," which would be "sure to provoke prolonged litigation, thus deterring settlement of fee disputes and ensuring that the fee application will spawn a second litigation of significant dimension." *Tex. State Teachers Ass'n*, 489 U.S. at 791. Accordingly, *Buckhannon* rejected a standard for fee liability that, like some other circuits' rules, "would require analysis of the defendant's subjective motivations in changing its conduct." 532 U.S. at 609.

### 2. *Smyth* gives government defendants needed flexibility to respond to challenges.

Fixing plaintiffs' fee eligibility (and therefore government defendants' exposure) according to *Smyth*'s bright-line rule also allows defendants to strike an informed balance in carrying out their dueling obligations to defend challenged

policies and yet to preserve the public fisc. As *Buckhannon* recognized, "defendants' potential liability for fees in this kind of litigation can be as significant as, and sometimes even more significant than, their potential liability on the merits." *Id.* at 608 (quoting *Evans v. Jeff D.*, 475 U.S. 717, 734 (1986)). Understandably, that liability—especially when the bounds of it are uncertain— could dissuade government officials from taking steps to alter challenged policies. Indeed, as with the catalyst theory rejected in *Buckhannon*, Plaintiffs "discount the disincentive that" such a rule would "have upon a defendant's decision to voluntarily change its conduct, conduct that may not be illegal." *Id.*

Plaintiffs fail to engage with these concerns and the role in which government defendants find themselves. According to Plaintiffs, the "overriding . . . consideration" of "doing the right thing" always means "not . . . defending an unconstitutional statute."[22] But that formulation assumes that the plaintiff is always right. This standard is pure question-begging when the suit is to determine whether the statute is constitutional. It excludes the possibility of earnest disagreement on the constitutionality of statutes. And it gives unduly short shrift to the obligation of

---

[22] Suppl. Br. at 49. *Cf.* LAJC, Press Release: *Virginia Office of the Attorney General Undermines Critical Opportunity to Make Driver's License Suspension Permanent* (Apr. 24, 2019) (criticizing the Attorney General's motion to dismiss and stay the litigation as "abdicati[on of] his responsibility to stop unconstitutional practices"), https://tinyurl.com/492wn6w9.

government officials to defend the laws enacted by the people through their elected representatives unless the conclusion of unconstitutionality is utterly inescapable. An unpredictable, context-specific rule (unlike *Smyth*'s) would hinder defendants in evaluating the potential tradeoffs in amending a law or changing a policy—such as where, as here, a policy may be unpopular in some quarters but nonetheless lawful.

### 3. *Smyth* avoids prolonged litigation to avoid fee liability.

Abandoning *Smyth* would create the "perverse incentives" Plaintiffs themselves fear. Suppl. Br. at 47. Because "the possibility of being assessed attorney's fees may well deter a defendant from altering its conduct," *Buckhannon*, 532 U.S. at 608, the specter of uncertain fee liability would influence litigation strategy in unconstructive ways. "It is . . . not implausible to anticipate that parties to a significant number of civil rights cases will refuse to settle if liability for attorney's fees remains open, thereby forcing more cases to trial, unnecessarily burdening the judicial system, and disserving civil rights litigants." *Evans*, 475 U.S. at 736–37. Defendants would be incentivized to appeal every preliminary injunction, and otherwise prolong litigation, to avoid fee liability. Indeed, States have noted that being required to pay fee awards for preliminary injunctions has taught the following lesson: "[E]ven if the public interest might otherwise be best

served by a legislative fix, [a state] should litigate to the bitter end if it wants to protect the public fisc."[23]

## C.    This case exemplifies the wisdom of the *Smyth* approach.

This case itself demonstrates that a preliminary injunction is an unreliable basis for conferring prevailing-party status.  In issuing the preliminary injunction, the district court had neither a well-developed factual record nor analogous case law to guide its decision.  As the case proceeded, both developed decisively against Plaintiffs.  *See* Def.'s Br. at 37–42.

First, the limited "facts from the preliminary injunction record" on which the district court based its ruling, *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 520 (W.D. Va. 2018) [JA821], did not hold up to scrutiny in discovery (which began only ***after*** the preliminary injunction hearing):

- testimony by Plaintiffs' witnesses supporting the court's subject-matter jurisdiction turned out to be unreliable and irrelevant, Def.'s Br. at 37–39 & n.36;

- documents revealed that, contrary to Plaintiffs' suggestion at the preliminary injunction stage, the named Plaintiffs ***did*** receive notices of suspension from the courts, *id.* at 39; and

- discovery showed that Plaintiffs entered into alternative payment arrangements with court approval, belying any claim that they had no opportunity to be heard on their ability to pay their debts, *id.*

---

[23] Br. of Georgia [et al.] as *Amici Curiae* Supporting Pet'rs at 17, *Yost v. Planned Parenthood Sw. Ohio Region*, No. 19-677 (U.S. Dec. 26, 2019).

These facts, among others, undermined the bases for the injunction.

Second, as the case progressed, it became clear that the law also disfavored Plaintiffs' position. When the district court predicted Plaintiffs' likelihood of success on the merits, the most analogous case available was *Fowler v. Johnson*, No. CV-17-11441, 2017 WL 6379676 (E.D. Mich. Dec. 14, 2017), a due-process challenge to Michigan's license-suspension statute, where the court granted a preliminary injunction based on the likelihood of success. *See Stinnie*, 355 F. Supp. 3d at 531–32 & n.9 [JA840–41 & n.9]. Six months after issuance of the preliminary injunction here, however, the Sixth Circuit ***reversed*** the injunction ruling in *Fowler*. *Fowler v. Benson*, 924 F.3d 247, 264 (6th Cir. 2019). It reversed for the same reasons the Commissioner continued to press here until the case became moot. *See* Def.'s Br. at 41. Many decisions in license-suspension cases uniformly supportive of the Commissioner's position have since followed.[24]

Thus, contrary to the district court's initial prediction, Plaintiffs were ***unlikely*** to prevail if the merits of their claims had been adjudicated. *Smyth*'s approach

---

[24] *See, e.g.*, *Robinson v. Long*, 814 F. App'x 991 (6th Cir. 2020); *Motley v. Taylor*, 451 F. Supp. 3d 1251 (M.D. Ala. 2020), *aff'd*, No. 20-11688, 2022 WL 1506971 (11th Cir. May 12, 2022); *Mendoza v. Garrett*, No. 3:18-CV-01634-HZ, 2019 WL 2251290 (D. Or. May 16, 2019), *appeal pending*, No. 19-35506 (9th Cir. filed June 11, 2019); *White v. Shwedo*, No. 2:19-CV-3083-RMG, 2020 WL 2315800 (D.S.C. May 11, 2020); *Johnson v. Jessup*, 381 F. Supp. 3d 619 (M.D.N.C. 2019). Plaintiffs have not identified a single contrary decision by a federal court of appeals, nor is the Commissioner aware of any.

properly recognizes that a district court's good-faith, but ultimately mistaken, prediction about a plaintiff's probability of success should not confer prevailing-party status.

## III.    Plaintiffs' other reasons for departing from *Smyth* are unconvincing.

### A.    Other circuits' approaches are not persuasive or uniform.

Without a convincing argument that *Smyth* has been undermined by *Winter* (or any other intervening Supreme Court precedent), Plaintiffs search for support in other circuits. Suppl. Br. at 26, 34–38. What they find—a mix of approaches, under which they would not always be prevailing parties themselves—does not support departing from *Smyth*.

#### 1.    *Buckhannon* teaches that this Court need not follow other circuits' approach to fee eligibility.

The Court should resist Plaintiffs' pressure campaign to abandon well-reasoned precedent merely because other circuits have resolved differently a question the Supreme Court has expressly left open. *Sole*, 551 U.S. at 86. When this Court has staked out a minority position on fee-entitlement issues before, that position has been vindicated. Before *Buckhannon*, this Court was unique among the circuit courts in rejecting the catalyst theory of fee liability. "[M]ost Courts of Appeals recognize[d]" it. [25]

_____

[25] *See* 532 U.S. at 602 & n.3 (citing *Stanton v. S. Berkshire Reg'l Sch. Dist.*, 197 F.3d 574, 577, n.2 (1st Cir. 1999); *Marbley v. Bane*, 57 F.3d 224, 234 (2d Cir.

But that lopsided line-up made no difference to the Supreme Court. It endorsed this Court's decidedly outlier decision. *See id.* at 621 (Scalia, J., concurring) ("[D]isagreeing with a 'clear majority' of the Circuits is not at all a rare phenomenon. Indeed, our opinions sometimes contradict the *unanimous* and longstanding interpretation of lower federal courts.").

### 2. Other circuits' tests are not uniform, nor would Plaintiffs prevail under all of them.

Plaintiffs characterize the other circuits' approaches to this issue as "unified and consistent." Suppl. Br. at 30. But while they each allow prevailing-party status in certain circumstances, a review of Plaintiffs' cited cases shows that those circumstances vary widely. Indeed, "[w]ithout a Supreme Court decision on point, circuit courts considering this issue have announced fact-specific standards that are anything but uniform." *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008). Contrary to Plaintiffs' characterization, there is no one "approach taken in all of the other circuits." Suppl. Br. at 48. And while Plaintiffs would be considered

---

1995); *Baumgartner v. Harrisburg Hous. Auth.*, 21 F.3d 541, 546–50 (3d Cir. 1994); *Payne v. Board of Ed.*, 88 F.3d 392, 397 (6th Cir. 1996); *Zinn v. Shalala*, 35 F.3d 273, 276 (7th Cir. 1994); *Little Rock Sch. Dist. v. Pulaski Cty. Sch. Dist., # 1*, 17 F.3d 260, 263, n.2 (8th Cir. 1994); *Kilgour v. Pasadena*, 53 F.3d 1007, 1010 (9th Cir. 1995); *Beard v. Teska*, 31 F.3d 942, 951–52 (10th Cir. 1994); *Morris v. W. Palm Beach*, 194 F.3d 1203, 1207 (11th Cir. 1999)).

prevailing parties under the standards of some cases they cite,[26] they are wrong to represent that in "every other circuit Plaintiffs would have been deemed prevailing parties." Suppl. Br. at 2.

The Third Circuit comes closest to *Smyth*'s bright-line approach, and Plaintiffs would not be prevailing parties there. In that circuit, a qualifying "merits-based" determination "may not be merely a finding of a likelihood of success on the merits." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 230 n.4 (3d Cir. 2011) (en banc). *See id.* at 229 (explaining that "the 'merits' requirement is difficult to meet in the context of TROs and preliminary injunctions, as the plaintiff in those instances needs only to show a *likelihood* of success on the merits (that is, a reasonable chance, or probability, of winning) to be granted relief."). The Third Circuit explained that, because "this 'probability' ruling is usually the only merits-related legal determination made when courts grant TROs and preliminary injunctions, it follows that parties will not often 'prevail' based solely on those

---

[26] *See Haley v. Pataki*, 106 F.3d 478 (2d Cir. 1997); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712 (9th Cir. 2013); *Kan. Judicial Watch v. Stout*, 653 F.3d 1230 (10th Cir. 2011); *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009).

events."[27]  Thus, merely being found "likely" to succeed on a claim, as Plaintiffs were here, would be insufficient in the Third Circuit.

As explored in greater depth below, Plaintiffs also would not qualify for prevailing-party status in the Fifth Circuit.  "[T]o qualify as a prevailing party . . . the plaintiff":

> (1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits."

*Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008).  Plaintiffs could not satisfy the third prong because the preliminary injunction here did not "cause[] the defendant to moot the action."  *See* Part IV.B.1 *infra*.

Another of Plaintiffs' cases, *Rogers Group, Inc. v. City of Fayetteville, Ark.*, 683 F.3d 903 (8th Cir. 2012), suggests a similar requirement.  There, the Eighth Circuit allowed prevailing party status where a city "eliminated the challenged

---

[27] *Id.* at 229*.  People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008) ("*PAPV*"), cited by Plaintiffs, Suppl. Br. at 33, is not typical of the Third Circuit's approach. In granting the preliminary injunction at issue there, the district court ruled that the challenged ordinance "***was*** facially unconstitutional." *Id.* at 234 (emphasis added). Pointing out that the *PAPV* court's ruling was not based in "probability," the en banc Third Circuit later characterized it as "an example of that rare situation where a merits-based determination is made at the injunction stage." *Singer Mgmt. Consultants*, 650 F.3d at 229.

provisions from its City Code," having been "prompted by adverse holdings" of the district court.  *Id.* at 907.

The standards reflected in Plaintiffs' cases from the Seventh and D.C. Circuits also would not accommodate Plaintiffs.  In the Seventh Circuit, a preliminary injunction yields prevailing-party status only if the plaintiff wins "substantive relief that is ***not defeasible*** by further proceedings," *Dupuy v. Samuels*, 423 F.3d 714, 719 (7th Cir. 2005) (citation and punctuation omitted; emphasis added), as when a particular event covered by the injunction has passed, *see id.* at 720 (citing *Young v. City of Chicago*, 202 F.3d 1000 (7th Cir. 2000), where fees were allowed because "the plaintiff ha[d] obtained the relief he sought" and "the litigation manifestly had come to an end *despite* the lack of a final judgment on the merits").[28]  Here, however, the temporary and limited relief afforded by the preliminary injunction was defeasible, and "further proceedings on the merits of the plaintiffs' claims" were clearly contemplated.  *Id.* at 723.

---

[28] Thus, *Dupuy* did not "hold[] that a preliminary injunction on the merits that is vacated as moot is sufficient for prevailing-party status."  Suppl. Br. at 36.  In fact, the Seventh Circuit ***denied*** fees to the plaintiffs in *Dupuy*, despite that they had obtained a preliminary injunction.  Years later, the Seventh Circuit noted that "the Supreme Court has repeatedly held that, other than a settlement made enforceable under a consent decree, a final judgment on the merits is the normative judicial act that creates a prevailing party."  *Zessar v. Keith*, 536 F.3d 788, 796 (7th Cir. 2008).

Likewise, in the D.C. Circuit, a preliminary injunction obtained in a case that is subsequently rendered moot is sufficient to establish prevailing-party status where plaintiffs received "the concrete and *irreversible* redress that they sought." *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 942 (D.C. Cir. 2005). In *Select Milk Producers*, a preliminary injunction blocked enforcement of a regulation that would have caused "an immediate loss of an estimated $5,000,000 if [it] had taken effect. *Id.* at 941. The government "conceded that any money [plaintiffs] saved was permanent," and it also did not dispute the district court's "finding that [plaintiffs] undoubtedly would have succeeded on the merits." *Id.* at 948. Here, by contrast, Plaintiffs received only a fraction of the relief they requested, the relief they received was temporary and reversible, and the Commissioner never conceded that the preliminary injunction result was permanent or correct.

Plaintiffs submit that "[p]revailing party status should be determined on the facts of each case . . . ." Suppl. Br. at 30.[29] But they offer no compelling reason to

---

[29] In this regard, they align themselves with the Sixth Circuit's approach, which is "contextual and case-specific." *Planned Parenthood S.W. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019) (quoting *McQueary v. Conway*, 614 F.3d 591, 604 (6th Cir. 2010)). In Plaintiffs' cited Sixth Circuit case, Planned Parenthood prevailed because "it succeeded on a significant issue such that it achieved some benefit, and because its success conferred a lasting change in the legal relationship between the parties"—namely, a preliminary injunction that "restrained enforcement of [a] law for ***almost 12 years***." *Id.* at 542 (emphasis added).

jettison *Smyth*'s readily administrable, bright-line rule for any other circuit's "fact-specific" standard.  *Dearmore*, 519 F.3d at 521.

> **B.     The Supreme Court has already rejected Plaintiffs' principal argument for expanding fee entitlement to plaintiffs who never achieve victory on the merits.**

Plaintiffs argue that *Smyth* should be abandoned because Section 1988 was enacted to encourage civil rights litigation, and *Smyth* would prevent some plaintiffs from recovering fees.  *See* Suppl. Br. at 31–33; IJ Br. at 4–8.

These same broad concerns were raised by the dissent in *Buckhannon*—*see* 532 U.S. at 622–23 (Ginsburg, J., dissenting) (asserting that disallowing the catalyst theory would "impede access to court for the less well-heeled" and "shrink the incentive Congress created" for private enforcement)—and rejected.  As Justice Scalia explained, "Congress did not intend to *maximize* the quantity of 'the enforcement of federal law by private attorneys general[.]'  Rather, Congress desired an *appropriate* level of enforcement—which is more likely to be produced by limiting fee awards to plaintiffs who prevail 'on the merits.'"  *Id.* at 621 (Scalia, J., concurring) (citation omitted).  Despite the petition's pervasive assertion to the contrary, Plaintiffs alleged a constitutional violation, but never proved it "on the merits."  As Plaintiffs seem to agree, Section 1988 is for "encouraging *meritorious* civil rights litigation."  Suppl. Br. at 49 (emphasis added).

41

Plaintiffs make conclusory assertions about the "risk" that the "government moots [a] case prior to entry of a permanent injunction or other final judgment . . . deters plaintiffs from bringing meritorious civil rights cases," but offer no evidence in support.  Suppl. Br. at 3.  It is likewise difficult to imagine—and Plaintiffs have offered no proof—that the unavailability of a fee award for a preliminary injunction, under the *Smyth* rule, has kept any plaintiff from bringing a meritorious civil rights action.  Most plaintiffs seek permanent relief—and if they prevail on the merits of their claims, they are entitled to fees.

## IV. The concern that *Smyth* allows defendants to moot cases strategically to avoid fees can be addressed by a limited exception where a preliminary injunction directly caused the mooting—but Plaintiffs cannot satisfy that exception.

Alleging that "litigation gamesmanship occurred" in this case, Suppl. Br. at 47–48, Plaintiffs go so far as to allege that General Assembly engaged in a "late-game repeal of the statute after entry of the preliminary injunction to foil Plaintiffs' ability to recover their fees," Suppl. Br. at 33; *see also id.* (worrying that *Smyth* allows states to "keep unconstitutional laws on the books, mooting cases through legislative action at the last possible moment").  There is no merit to these assertions of gamesmanship, as evidenced by the fact that more than a year passed between the entry of the preliminary injunction and the repeal of the statutes. Moreover, Plaintiffs' disagreement appears to be with the district court's decision to stay the

case, which forestalled resolution of both Plaintiffs' claims and the Commissioner's defenses.[30]

The Commissioner is mindful, however, of recent cases in which the Court has found it "unjust" to deprive a plaintiff of prevailing-party status because of a defendant's "timely capitulation" in litigation. *Reyazuddin v. Montgomery Cty., Maryland*, 988 F.3d 794, 798 (4th Cir. 2021); *Grabarczyk v. Stein*, 32 F.4th 301, 307 (4th Cir. 2022) (following *Reyazuddin*). To the extent the Court is concerned that the *Smyth* rule could allow defendants in other circumstances to "game the system" by strategically mooting litigation after a preliminary injunction is entered, *see* Slip op. at 17 (Harris, J., concurring), that concern can be allayed by recognizing a limited exception that permits prevailing-party status when a defendant moots a case ***because of*** a preliminary injunction. As shown below, other circuits have adopted such an approach.

To be clear, the Commissioner maintains that *Smyth* was correctly decided and that the preliminary injunction entered here was insufficient to confer prevailing-party status on Plaintiffs. And the Commissioner shares Plaintiffs'

---

[30] *See id.* (lamenting that "Plaintiffs would have had their final day in court before the statute could have been repealed had it not been for the stay . . . ."). Plaintiffs' accusation that the Commissioner engaged in "scorched-earth litigation tactics in an attempt to wear down indigent Plaintiffs" is especially ironic, Suppl. Br. at 49, given the Commissioner's support for staying the litigation and sparing the parties and the district court the burden and expense of unnecessary litigation.

concern, that a causality requirement would add a dimension of complexity to the prevailing-party analysis that *Smyth*'s bright-line rule avoids. *See* Suppl. Br. at 42. Just like the "catalyst theory" hearing against which the Supreme Court warned, analysis of a defendant's motivations in changing its conduct would "likely depend on a highly factbound inquiry and may turn on reasonable inferences from the nature and timing of the defendant's change in conduct." *Buckhannon*, 532 U.S. at 609–10. Nevertheless, allowing prevailing-party status in the limited circumstances where causality can be proven is preferable to the "unjust" and textually indefensible outcome of locking in a fee award against a defendant merely upon entry of a preliminary injunction.

## A. Courts have conferred prevailing-party status where defendants moot a case in direct response to entry of a preliminary injunction.

As noted above, *see* Part III.B *supra*, two other circuits have held that plaintiffs obtaining a preliminary injunction may attain prevailing-party status where the defendant moots the case because of the preliminary injunction. In *Dearmore*, the Fifth Circuit held that prevailing-party status requires obtaining a merits-based injunction "that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits." 519 F.3d at 524. "*Dearmore* holds that the mooting of the case *must* be caused by the preliminary injunction . . . ." *Amawi v. Paxton*, No. 21-50360, 2022 WL 4093123, at *3 (5th Cir. Sept. 7, 2022). The Fifth Circuit has applied the *Dearmore* test in numerous subsequent cases, *see, e.g.*,

*id.*; *Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015), and the Eighth Circuit has recognized similar considerations, *see Rogers Grp., Inc.*, 683 F.3d at 907 (recognizing prevailing-party status where mooting action "prompted by adverse holdings" of the district court).

This Court too has recently conferred prevailing-party status after cases were mooted, though in circumstances involving final judgments. In *Grabarczyk*, the plaintiff was awarded summary judgment and all the declaratory and injunctive relief he sought, an order from which the defendants appealed. 32 F.4th at 304–05. While the appeal was pending, the state legislature "responded to the district court's decision with an amendment" to the statute the plaintiff challenged, rendering the action moot. *Id.* at 305. Defendants opposed the plaintiff's request for fees, but the district court determined he was a prevailing party, and this Court agreed. *Id.* at 305–07. The Court explained that "[the plaintiff] remains a prevailing party entitled to attorney's fees in connection with his successful district court litigation because the legislature amended the challenged law – and thereby mooted his case – only *after* he won a final judgment on the merits and *because* of that judgment." *Id.* at 310.

Although occurring in the context of a final judgment, unlike here, *Grabarczyk* is analogous authority to consider if the Court concludes that a preliminary injunction can ever confer prevailing-party status. If the Court does

depart from *Smyth*, it should strongly consider limiting the availability of prevailing-party status to plaintiffs who can satisfy *Dearmore*'s third prong.[31]

**B.    The General Assembly did not repeal § 46.2-395 in response to the preliminary injunction.**

Any concern about "gamesmanship" is unwarranted here. Contemporaneous statements by Plaintiffs' counsel, as well as press coverage on which Plaintiffs rely, confirm that entry of the preliminary injunction in 2018 was not the catalyst for repeal in 2020 that Plaintiffs now assert. And Plaintiffs' supposedly supportive evidence is anything but.

**1.    Everyone—from the parties to the district court to the press—recognized that the changed political composition of the General Assembly triggered repeal of § 46.2-395.**

The General Assembly's repeal of § 46.2-395 in 2020 was the result of the legislature's changed political composition—not the entry of the preliminary injunction in 2018. As shown above, this point is beyond debate. *See* Facts Part C, *supra*; Def.'s Br. at 9–18. What is more, the parties and district court all knew it at the time.

---

[31] Given that this exception would be based in concerns about potential gamesmanship by defendants, prevailing-party status should not be conferred in cases where litigation was mooted by the acts of third parties. *See, e.g.*, *Planned Parenthood S.W. Ohio Region v. Dewine*, 931 F.3d 530 (6th Cir. 2019); *Kan. Jud. Watch v. Stout*, 653 F.3d 1230 (10th Cir. 2011).

In explaining to the district court in the spring of 2019 why they opposed a stay, Plaintiffs pointed out that repeal was not a certainty because, after all, "the most recent attempt to repeal the statute failed at the hands of just four members of the General Assembly." JA932. The Commissioner was more bullish about the political prospects for legislative action. Counsel for the Commissioner pointed to the "sweeping bipartisan support" for repeal, and agreed that it was "a mere four votes that blocked it last time around." Tr. of Mot. Hr'g (June 19, 2019) at 7:3–6, *Stinnie v. Holcomb*, No. 3:16-cv-00044 (W.D. Va.), ECF No. 260. While the repeal measure "never reached the floor of the House because of four single votes in a single subcommittee," success in the coming session was more probable "because of the political pressure as to those four seats on that subcommittee." *Id.* at 6:17–22. But counsel predicted—correctly, it turns out—that, given the upcoming election, "there's no reason to believe the same leadership will necessarily be in the House to prevent that [repeal] bill from going to the floor again." *Id.* at 7:6–9. In ordering a stay, the district court expressly noted these "shifting political winds" and the "political hostility towards § 46.2-395." *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 658, 659 (W.D. Va. 2019) [JA948, JA950].

When the General Assembly eliminated § 46.2-395 in its entirety the following year, Plaintiffs' counsel openly "attributed the bill's success to the new makeup of the General Assembly." He explained that "'in previous years, the

leadership of the House Courts Committee was different and they were able to stop what was frankly a common sense piece of reform.'"[32]  So too did the press understand that the House criminal laws subcommittee, which previously had refused to act on repeal legislation, "was transformed when the new Democratic Party majority took control after last year's election."[33]

The Court should not be deluded by Plaintiffs' effort to obtain fees by revising the historical record to place the preliminary injunction at the center of it.

> **2.    Plaintiffs' evidence purportedly showing that the preliminary injunction triggered repeal is unpersuasive, and far shy of the evidence that other courts have found show a causal connection.**

As the Fifth Circuit recently clarified, "*Dearmore* does not require inquiry into the subjective intent of the legislators" to determine a causal connection between entry of a preliminary injunction and the mooting of litigation.  *Amawi v. Paxton*, No. 21-50360, 2022 WL 4093123, at *4 (5th Cir. Sept. 7, 2022).  "Rather, such a showing could be accomplished in reference to purely objective metrics, for example, by establishing a compelling timeline, an outright admission, or the statutory language itself." *Id.*  But "the mere fact that a legislature has enacted

---

[32] Jimmy O'Keefe, Capital News Serv., *Bill preventing license suspension over court debt unanimously passes Va. Senate* (Feb. 12, 2020) (quoting LAJC attorney Pat Levy-Lavelle), https://tinyurl.com/mrxcye4y.

[33] Dave Ress, *Va. licenses won't be suspended for unpaid fines*, The Virginian-Pilot (Feb. 28, 2020), https://tinyurl.com/5n8k5b87.

legislation that moots an action, without more, provides no grounds for assuming that the legislature was motivated by the unfavorable precedent." *Id.* (cleaned up and quotation omitted).[34]

Here, as in *Amawi*, Plaintiffs have "provided nothing to . . . this court evincing that the legislature had the preliminary injunction in mind when it completed passage of" SB1. *Id.* The few facts cited by Plaintiffs fall well short of establishing a causal link between repeal and the preliminary injunction. They are a far cry from the circumstances in which courts, including this one, have found such a link. ⸝

First, Plaintiffs assert that the preliminary injunction "led to the Commissioner's motion asking the Court to stay this case" four months later. Suppl. Br. at 43. Even if the basis for the ***stay*** were relevant, Plaintiffs are wrong: it was the passage of the budget amendment that prompted the motion. JA852. The LAJC had said that, if the budget amendment passed, the "lawsuit would effectively be moot." *Id.* (quoting news article). The Commissioner's motion to dismiss as moot or, in the alternative, for a stay of proceedings, responded to the LAJC's concession, and additionally pointed out that judicial economy would not be served by litigating

---

[34] The Fifth Circuit thereby reversed the decision on which Plaintiffs rely for the proposition that a court can "simply look[] at the timing of repeal after entry of a preliminary injunction as demonstrative of causation." Suppl. Br. at 40 (citing *Amawi v. Pflugerville Indep. Sch. Dist.*, No. 1:18-CV-1091-RP, 2021 WL 1226569, at *5 (W.D. Tex. Mar. 31, 2021).

discovery, class certification, and merits matters, given that § 46.2-395 would no longer be enforced. As much as Plaintiffs want to characterize entry of a stay as "litigation gamesmanship" by the Commissioner, Suppl. Br. at 47–48, it was the district court that ordered it.

Second, Plaintiffs find it significant that their co-counsel LAJC was among a broad coalition of groups that advocated for repeal of Virginia's license-suspension policy. *See* Suppl. Br. at 44. But that does not prove that the preliminary injunction triggered repeal. Even if "impact litigation" was "part of a coordinated effort of reform and political opposition" by LAJC, that hardly means that any success of LAJC's ***lobbying*** efforts is somehow also attributable to its ***litigation*** efforts. *Id.* For the same reason, Governor Northam's appearance with LAJC—a prominent opponent of the license-suspension policy—to propose his budget amendment in March 2019 says nothing about the significance of the preliminary injunction. Much less does it demonstrate any impact on the ***General Assembly***'s decision, ***more than a year later***, to repeal the statute.

Finally, Plaintiffs repeat their refrain that the "Commissioner's [January 2020] letter to Senator Stanley also helps show this ligation's effect on the legislative process." Suppl. Br. at 46. The Commissioner has already explained his bewilderment at how a letter to a single legislator—which was sent more than a year after the preliminary injunction and which does not mention the preliminary

injunction, *see* JA968—proves that the entire General Assembly repealed the statute because of the preliminary injunction. *See* ECF No. 62 [Def.'s Opp'n to Pet. for Rehr'g En Banc] at 17. The letter didn't cause Stanley to propose repeal; his bill was pre-filed months before, and he had filed a similar bill in each of several years before that. In any event, the Commissioner's suggested tweak to the bill, of an "emergency enactment" clause, was rejected.

In short, Plaintiffs' supposed evidence of a causal connection fall well short of establishing that the General Assembly mooted the case "*in direct response to* the district court's preliminary injunction order." *Dearmore*, 519 F.3d at 525. In *Dearmore* itself, the "obvious causal link between the district court's issuance of the preliminary injunction and the City's subsequent amendment of the Ordinance to moot the case" was that, "[a]lmost immediately following the district court's issuance of the preliminary injunction, counsel for the City informed counsel for Dearmore that Dearmore need not post the bond to enforce the injunction, because the City planned to amend the Ordinance to address the district court's concerns." *Id.* at 525–26. *See also Davis*, 781 F.3d at 217 (in redistricting suit, finding *Dearmore*'s third prong satisfied where legislative history referenced the litigation; noting that the state's adoption of the interim redistricting plan ordered by the court, which was "functionally similar to [a] preliminary injunction[,] . . . [made] the causal link more apparent").

This Court's decision in *Grabarcyk* also offers a useful contrast to this case. There, the North Carolina legislature mooted a case after a plaintiff was awarded summary judgment and injunctive and declaratory relief that a statute violated due process. 32 F.4th at 305. "A few weeks" after the decision, the legislature "responded to the district court's decision with an amendment" remedying the constitutional violation. *Id.* "By *express* reference to this lawsuit, the legislation also established a special procedure for review of the *Grabarczyk* class members' [status]." *Id.* (emphasis added). *See also Amawi*, 2022 WL 4093123, at *4 (causal link can be shown "by establishing a compelling timeline . . . or the statutory language itself").

Here, Plaintiffs offer no similar indicia of a causal relationship between the preliminary injunction and the General Assembly's repeal of § 46.2-395. The two events were not at all close in time. Instead of the "few weeks" signaling a connection in *Grabarczyk*, more than **sixty** weeks (from December 2018 to February 2020) passed after entry of the preliminary action and repeal of the statute—a period during which other efforts at repeal failed, including in the 2018 General Assembly session that closely followed entry of the injunction. *See* Facts Part C *supra*. And when the General Assembly did act, there was no express (or even implicit) acknowledgment of the litigation in the resulting legislation, as there was in *Grabarczyk*. Moreover, the General Assembly's wholesale repeal was not tailored

52

to amending the notice provisions of § 46.2-395 that Plaintiffs challenged as inadequate, which—consistent with the larger policy debate and history of reform efforts—indicates hostility to the overall policy, not just to the aspect of the statutory scheme targeted in the preliminary injunction order.  Indeed, as shown above, the sweeping bipartisan vote repealing § 46.2-395 did not come out of the blue, as if triggered by the preliminary injunction, but instead fit seamlessly within a much longer movement towards repeal.  *See supra* Part IV.B.1.

Repeal was not a direct response to the preliminary injunction.

## CONCLUSION

The Court should affirm *Smyth*—but, in any event, conclude that Plaintiffs are not prevailing parties here.

Respectfully submitted,

Linda Ford, *in her official capacity as the Acting Commissioner of the Virginia Department of Motor Vehicles*

Jason S. Miyares
*Attorney General of Virginia*

Andrew N. Ferguson
*Solicitor General*

Leslie A. T. Haley
*Deputy Attorney General*

Chandra D. Lantz
*Senior Assistant Attorney General & Transportation Section Chief*

/s/ *Maya M. Eckstein*
Maya M. Eckstein (VSB #41413)
Trevor S. Cox (VSB #78396)
David M. Parker (VSB #85619)
HUNTON ANDREWS KURTH LLP
951 E. Byrd St.
Richmond, VA 23219
Ph:  (804) 788-8200
Fax:  (804) 788-8218
meckstein@HuntonAK.com
tcox@HuntonAK.com

Janet W. Baugh (VSB #44649)
*Senior Assistant Attorney General*

Christian A. Parrish (VSB #44427)
*Assistant Attorney General*

OFFICE OF THE ATTORNEY
GENERAL
202 North Ninth Street
Richmond, VA 23219
Ph:  (804) 786-2071
Fax:  (804) 786-4239

dparker@HuntonAK.com

*Counsel for Defendant-Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Defendant-Appellee will gladly participate if the Court believes that oral argument would aid the decisional process.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font, and that it complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 12,637 words, excluding the parts exempted by Rule 32(f), according to the count of Microsoft Word.

/s/ *Maya M. Eckstein*
Maya M. Eckstein

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2022, I electronically filed this brief with the Clerk of this Court by using the appellate CM/ECF system.  The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *Maya M. Eckstein*
Maya M. Eckstein

EMF_US 91328184v10