# No. 21–1756

## In the

# United States Court of Appeals
## For the Fourth Circuit

———————————

Damian Stinnie, et al., *Appellants*,
v.
Richard Holcomb, *Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(The Honorable Norman K. Moon)

———————————

## SUPPLEMENTAL REPLY BRIEF OF APPELLANTS

———————————

Jonathan T. Blank
Benjamin P. Abel
MCGUIREWOODS LLP
323 Second Street SE, Suite 700
Charlottesville, VA 22902
T: (434) 977-2509
F: (434) 980-2258
*jblank@mcguirewoods.com*
*babel@mcguirewoods.com*

John J. Woolard
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4355
F: (804) 698-2055
*jwoolard@mcguirewoods.com*

Angela A. Ciolfi
LEGAL AID JUSTICE CENTER
1000 Preston Avenue
Suite A
Charlottesville, VA 22903
T: (434) 529-1810
F: (434) 977-0558
*angela@justice4all.org*

Patrick Levy-Lavelle
LEGAL AID JUSTICE CENTER
626 East Broad Street
Suite 200
Richmond, VA 23219
T: (804) 643-1086
F: (804) 643-2059
*pat@justice4all.org*

Leslie Kendrick
580 Massie Road
Charlottesville, VA 22903
T: (434) 243-8633
F: (434) 924-7536
*kendrick@virginia.edu*

Tennille J. Checkovich
Michael Stark
200 Commerce Street
Smithfield, VA 23430
T: (757) 357-8151
F: (757) 365-3018
*tcheckovich@smithfield.com*
*mstark@smithfield.com*

September 28, 2022

# **TABLE OF CONTENTS**

Page

Table of Authorities ................................................................................ ii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................. 2

  I.   The undisputed facts establish that Plaintiffs are the prevailing parties. ........ 2

  II.  Relevant policy considerations favor Plaintiffs, not the Commissioner. ........ 3

    A.   The Commissioner's policy arguments are based on logical fallacies. ..... 3

    B.   The Commissioner's policy arguments promote gamesmanship. ............. 5

    C.   A post-*Smyth* legal landscape will not lead to the ills Commissioner foresees. ......................................................................................... 7

  III.  *Smyth*'s utility has passed. .............................................................. 8

    A.   The Commissioner's claim that this case demonstrates why *Smyth* was rightly decided relies on unsupported assumptions that are inappropriate at this stage. ........................................................................... 8

    B.   Plaintiffs are not making the arguments to which the Commissioner responds. ......................................................................................... 10

  IV.  This Court should join the rest of the country's approach regarding preliminary injunctions and prevailing party status. .................................... 11

    A.   Plaintiffs would have been the prevailing parties in every other circuit to have considered the question. ........................................................ 11

    B.   The Plaintiffs meet any causality test generated by Commissioner. ........ 17

CONCLUSION ......................................................................................... 18

Certificate of Compliance ....................................................................... 21

Certificate of Service .............................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amawi v. Paxton*,
--- F.4th ---, 2022 WL 4093123 (5th Cir. Sept. 7, 2022)....................................17

*Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*,
532 U.S. 598 (2001)........................................................................................3

*In re City of Virginia Beach*,
42 F.3d 881 (4th Cir. 1994) ...............................................................................6

*Dearmore v. City of Garland*,
519 F.3d 517 (5th Cir. 2008) ..............................................................................17

*Dupuy v. Samuels*,
423 F.3d 714 (7th Cir. 2005) ..............................................................................13

*Evans v. Jeff D.*,
475 U.S. 717 (1986)............................................................................................7

*Lefemine v. Wildeman*,
568 U.S. 1 (2012) (per curiam).........................................................................14

*People Against Police Violence v. City of Pittsburgh*,
520 F.3d 226 (3d Cir. 2008) .........................................................................12, 13

*Rogers Group, Inc. v. City of Fayetteville*,
683 F.3d 903 (8th Cir. 2012) ..............................................................................16

*Select Milk Producers, Inc. v. Johanns*,
400 F.3d 939 (D.C. Cir. 2005)........................................................13, 14, 15, 16

*Singer Mgmt. Consultants, Inc. v. Milgram*,
650 F.3d 223 (3d Cir. 2011) .........................................................................12, 13

*Skyline Corp. v. N.L.R.B.*,
613 F.2d 1328 (5th Cir. 1980) .............................................................................7

*Smyth ex rel. Smyth v. Rivero*,
282 F.3d 268 (4th Cir. 2002) ....................................................................*passim*

ii

*Stinnie v. Holcomb,* 355 F. Supp. 3d. 514 (W.D. Va. 2018) ...........................*passim*

*Stinnie v. Holcomb,*
    396 F. Supp. 3d 653 (W.D. Va. 2019) ................................................9

*Swift Beef Co. v. Alex Lee, Inc.*,
    760 F. App'x 160 (4th Cir. 2019) ......................................................15

*Winter v. Natural Res. Defense Council, Inc.*,
    555 U.S. 7 (2008)..................................................................................2

**Federal Statutes**

28 U.S.C. § 1292(a)(1) ...............................................................................15

42 U.S.C. § 1988 ...........................................................................3, 18, 19

**State Constitution**

Va. Const. art. I, § 3 ....................................................................................5

**State Statutes**

Va. Code § 46.2-395 ........................................................................*passim*

Va. Code § 49-1 ...........................................................................................5

**Other Authorities**

Legal Maxims, Black's Law Dictionary (11th ed. 2019) ...........................6

# INTRODUCTION

The Commissioner[1] makes numerous attempts to justify *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002)—often boldly so—but none of them carries any weight in light of pertinent policy considerations and the legal landscape that has unfolded since *Smyth* was handed down.  Indeed, the Commissioner's arguments are premised on a series of logical fallacies—imaginary straw-man arguments set up only to be immediately attacked.  Plaintiffs' arguments do not "assume[] that the plaintiff is always right" or "lock[] in" an award of fees immediately after a preliminary injunction is granted.  (Supp. Resp. Br. at 31, 44.) To the contrary, many plaintiffs may fail to obtain injunctive relief or succeed initially only to lose at trial or on appeal.  And none of those plaintiffs would be entitled to a fee award.  Nor do Plaintiffs argue that fee entitlements should be expanded to "plaintiffs who never achieve victory on the merits."  (*Id*. at 41.)  The undisputed facts of this case demonstrate that in granting injunctive relief the District Court did so based on the statute's facially unconstitutionality.  *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 530 (W.D. Va. 2018) ("Indeed, § 46.2-395, on its face, provides no procedural hearing at all."); *id.* at 531 ("the Court concludes that § 46.2-395, on its face, does not provide a meaningful opportunity to be heard

_____

[1] Unless otherwise noted, capitalized terms are used as defined in Plaintiffs' Supplemental Brief.

1

regarding license suspension"). Because the undisputed facts of this case establish

Plaintiffs as the prevailing parties under the approach of every other circuit to have

considered the question and the relevant policy arguments favor that majority

approach, this Court should rule for Plaintiffs. Plaintiffs should not be penalized

because the Commissioner elected not to appeal the preliminary injunction and

sought an extended stay of the case that ultimately barred Plaintiffs' way to trial.

Plaintiffs write on reply to reiterate three key points. First, the undisputed

facts establish that Plaintiffs, who are not advancing a catalyst theory argument,

are prevailing parties as that phrase has come to be defined by the Supreme Court.

Second, the relevant policy considerations favor Plaintiffs, not the Commissioner.

Unlike the test proffered by the Commissioner, Plaintiffs' suggested test for the

Fourth Circuit is simple. Third, Plaintiffs meet the prevailing-party tests used in

every other circuit to have considered the question. There is no reason why the

Fourth Circuit should not be one of them.

## ARGUMENT

## I.    The undisputed facts establish that Plaintiffs are the prevailing parties.

The undisputed facts that matter are as follows: (1) Plaintiffs won a

preliminary injunction under the *Winter v. Natural Res. Defense Council, Inc.*, 555

U.S. 7 (2008), standard (2) that provided the requisite judicial imprimatur and (3)

materially altered the Commissioner's behavior (4) in a manner that benefitted

2

Plaintiffs, and (5) that relief was never undone.  (*See*, *e.g.*, Supp. Opening Br. at 33–34.)  At the end of the Commissioner's Supplemental Brief, those facts remain unimpeached.

Instead, the Commissioner attempts to re-direct the discussion towards *Buckhannon*—mentioning the decision nearly twenty times.  (*See* Supp. Resp. Br. at iii.)  Plaintiffs are not advancing a *Buckhannon* argument. (*See* JA1052–55; Opening Br. 29–31; Supp. Opening Br. at 38 n.3.)  As explained in *Buckhannon*, the "'catalyst theory' . . . posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 601 (2001).  This case is not *Buckhannon*. Here, there was nothing voluntary about the District Court's preliminary injunction.  (JA843.)  The Commissioner did not consent to its entry.  The Plaintiffs won real relief from the judiciary, which led to the stay and subsequent mooting of the case as the Commissioner sought to avoid additional litigation expenses.  (*See* Supp. Opening Br. at 6–22.)

## II.    Relevant policy considerations favor Plaintiffs, not the Commissioner.

### A.    The Commissioner's policy arguments are based on logical fallacies.

None of the Commissioner's policy arguments overcome the Congressional intent in Section 1988 to award fees to prevailing parties—nor could they.  As an

3

initial matter, the Commissioner argues for simplicity—a bright line rule—
implying that Plaintiffs are promoting a hodge-podge of unworkably inconsistent,
complex standards from other circuits.  But Plaintiffs' proposal to simply apply the
straightforward language from Supreme Court precedent and to *allow* prevailing
party status to attach where a merits-based preliminary injunction materially alters
the legal relationship among the parties, directly benefits the plaintiff, and is never
reversed by a court is itself simple.  (*See* Supp. Opening Br. at 22, 31–34.)  It is the
inverse of *Smyth*'s bright-line rule—allowing what is currently prohibited if the
preliminary injunction remains in place at the time the case is mooted by the
legislature.  It is the Commissioner who seeks to muddy those waters by engrafting
an unnecessary causation requirement onto the test.  (*See* Supp. Resp. Br. at 42–
53.)

     The Commissioner claims that *Smyth*'s bright-line rule gives the government
"needed flexibility to respond to challenges."  (Supp. Resp. Br. at 30.)  In making
that argument, the Commissioner asserts that Plaintiffs' argument "assumes that
the plaintiff is always right."  (*Id.* at 31.)  And the Commissioner unjustly asserts
that Plaintiffs would "lock[] in a fee award against a defendant merely upon entry
of a preliminary injunction."  (*Id*. at 44.)  These are straw-man arguments.
Plaintiffs are not assuming that any plaintiff anywhere is always right or arguing
that obtaining a preliminary injunction will, in all cases, ensure a fee award.  In this

4

case, the District Court granted Plaintiffs a preliminary injunction—one that was never appealed, reversed after a trial, or otherwise undone by any court. The Commissioner could have chosen to appeal the injunction or to continue to litigate to a decision on summary judgment or trial. Instead, the Commissioner moved to stay the litigation many months beyond the scheduled trial date to give the legislature the opportunity to moot the case. (JA845–91.) Those are not the actions of a bullish litigant.

**B.     The Commissioner's policy arguments promote gamesmanship.**

Without citation, the Commissioner claims that government officials must defend laws until their unconstitutionality is "utterly inescapable." (*See* Supp. Resp. Br. at 32.) "Utterly inescapable" is not a recognized legal standard of which counsel for Plaintiffs are aware. Such adherence to defending unconstitutional statutes is a curious take on the oath of office of elected officials. *See* Va. Const. art. I, § 3 ("That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community[.]"); Va. Code § 49-1 (requiring all officers in the Commonwealth to swear they will "support the Constitution of the United States, and the Constitution of the Commonwealth of Virginia"). The Commissioner's position appears to pay little mind to the Virginians that are harmed by the constitutional violation in the process. In many

5

ways, this sort of disregard for the rights of Virginians is what Plaintiffs fought against for these many years.

The Commissioner downplays the incentives for gamesmanship that exist under *Smyth*. (*See* Supp. Resp. Br. at 42–44.) In doing so, the Commissioner attempts to re-cast itself as magnanimous because it "spar[ed]" Plaintiffs the "burden and expense of unnecessary litigation" by seeking a stay to avoid trial. (*See id.* at 43 n.30.) Perhaps the Commissioner thinks it knows better the time and place in which a constitutional harm ought to be resolved, but Plaintiffs adhere to the maxim that "[j]ustice is not to be denied or delayed." Legal Maxims, Black's Law Dictionary (11th ed. 2019) (stated otherwise, "*Justitia non est neganda, non differenda*."). Such principal dates to, at least, the Magna Carta. *See In re City of Virginia Beach*, 42 F.3d 881, 886 & n.2 (4th Cir. 1994). And it has been oft repeated throughout the most pivotal moments in our nation's shared history. *See* Bill of Rights Inst., (Dr. Martin Luther King, Jr.) *Letter from Birmingham Jail*, (Apr. 16, 1963), https://billofrightsinstitute.org/primary-sources/letter-from-birmingham-jail (last visited Sept. 27, 2022) ("We must come to see with the distinguished jurist of yesterday that 'justice too long delayed is justice denied.'").

Like the Commissioner's declaration that officials must defend unconstitutional laws until their unconstitutionality is "utterly inescapable," the Commissioner's argument that it spared Plaintiffs' time and money by denying

them the opportunity to fully vindicate their constitutional rights improperly puts the focus on the *government's willingness* to let people enjoy their constitutional rights, as opposed to an individual's *ability to seek redress* to enforce those rights. It goes without saying that some of this nation's most important civil rights advances came not from government officials admitting a law's unconstitutionality was "utterly inescapable," but rather from plaintiffs who refused to wait any longer to enforce their constitutional rights.

###    C.    A post-*Smyth* legal landscape will not lead to the ills Commissioner foresees.

The Commissioner also claims that recognizing *Smyth*'s obsolescence would incentivize states to "prolong litigation" in order to prevent a fee award.  (*See* Supp. Resp. Br. at 32–33.)  In support, the Commissioner relies on *Evans v. Jeff D.*, 475 U.S. 717 (1986).  The *Evans* case is inapposite because it was not addressing a situation analogous to the one presented here, but rather one in which the parties settled.  *Evans*, 475 U.S. at 722–25.  Furthermore, the Commissioner's citation to briefing in another case is not binding—much less persuasive— authority.  (*See* Supp. Resp. Br. at 33 n.23); *see also Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence.").

7

Nevertheless, the Commissioner's argument about a non-*Smyth* legal landscape prolonging litigation is undermined by its own actions here. This case has been pending since 2016, and *Smyth* is on the books.

## III.    *Smyth*'s utility has passed.

### A.    The Commissioner's claim that this case demonstrates why *Smyth* was rightly decided relies on unsupported assumptions that are inappropriate at this stage.

The Commissioner also argues that this case shows why *Smyth* was right. (*See* Supp. Resp. Br. at 33–35.) First, the Commissioner argues that the facts at the preliminary injunction were undeveloped. (*See* Supp. Resp. Br. at 33.) As an initial matter this argument holds no water because arguments concerning the facial constitutionality of a statute like those addressed in the preliminary injunction order are often based largely on legal argument and neither require nor benefit from extensive discovery. Moreover, the Commissioner was the party holding access to key facts, documents, and witnesses in the case. By the time the preliminary injunction hearing occurred in 2018, the Commissioner had had more than two years to conduct its own detailed factual investigation into what the government had been doing. Plaintiffs cannot be faulted if the Commissioner did not conduct its own investigation and failed to come to the preliminary injunction armed with *its own evidence* that purportedly would have ensured a win for the Commissioner.

Second, the Commissioner argues that it would have prevailed on the law. But the Commissioner had a ready-made forum in which to adjudicate these points—the trial court. In its preliminary injunction opinion, the District Court made findings indicating that the statute was facially unconstitutional. *See Stinnie*, 355 F. Supp. 3d at 529–30 ("The Court determines that Plaintiffs are likely to succeed because the procedures in place are not sufficient to protect against the erroneous deprivation of the property interest involved. Indeed, § 46.2-395, on its face, provides no procedural hearing at all.").

The Commissioner believes the District Court would have reversed course and reached a different conclusion. (*See* Supp. Resp. Br. at 33–35.) But the parties, unfortunately, never had the chance to finish that debate because the Commissioner moved to stay the case. *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 661 (W.D. Va. 2019); (JA955–56). The Commissioner highlights its belief that Plaintiffs were "unlikely" to prevail, but if the Commissioner had possessed that same confidence back in 2019, it could have tried the case. (See Supp. Resp. Br. at 34 (double emphasis omitted).) The Commissioner's post-hoc confidence in its evidence and legal arguments is no grounds on which to deny Plaintiffs prevailing party status.

At any rate, this is now the fourth time that the Commissioner has attempted to argue that he should have won the preliminary injunction motion. (*See* JA1059,

at JA1095–97 (opposition to the motion for fees arguing that Plaintiffs would not have ultimately won); JA1201, at JA1224–28 (response to Plaintiffs' objections to the magistrate judge's report and recommendation); Resp. Br. at 37–42; Supp. Resp. Br. at 33–35.) The Magistrate Judge refused to let the Commissioner re-litigate his preliminary injunction loss. (*See* JA1128, at JA1151 ("I decline Defendant's invitation to relitigate a closed case.").) There is no principled reason why this Court should determine whether, in a hypothetical world, the Commissioner would have eventually prevailed. It is irrelevant to the question presented. Regardless, the irony remains that the Commissioner now claims the virtue of its case with far more intensity than when it moved to stay the proceedings in which such arguments would have been appropriate.

### B. Plaintiffs are not making the arguments to which the Commissioner responds.

Next, the Commissioner claims that "[t]he Supreme Court has already rejected Plaintiffs' principal argument for expanding fee entitlement to plaintiffs who never achieve victory on the merits." (*See* Supp. Resp. Br. at 41.) The Commissioner's point suffers from two flaws, the first significant, and the second fatal. First, the Commissioner's argument that the Supreme Court has both simultaneously left the question open while also rejected Plaintiffs' arguments is logically inconsistent. (*Compare* Supp. Resp. Br. at 1, *with id.* at 41.) Second, and more importantly, Plaintiffs are not arguing that "plaintiffs who never achieve

victory on the merits" should be considered prevailing parties. Once again, the Commissioner has set up a straw-man argument. Plaintiffs have consistently argued that the merits-based determination from the court is a necessary component of prevailing party status. (*See*, *e.g.*, Supp. Opening Br. at 2-3.) The Commissioner's argument that Plaintiffs "never proved [the constitutional violation] 'on the merits'" does not match the record in this case. (Supp. Resp. Br. at 41.) The preliminary injunction was a merits-based decision that resulted from a lengthy evidentiary hearing. *Stinnie*, 355 F. Supp. 3d at 520; (JA820–44; JA1148–49 (recognizing that the preliminary injunction in this case "constituted merits-based relief that materially altered the relationship between the parties" and "carr[ied] all the necessary judicial imprimatur")). Before the case was mooted, Plaintiffs proved their case when tested in court. The Commissioner did not.

## IV.  This Court should join the rest of the country's approach regarding preliminary injunctions and prevailing party status.

### A.  Plaintiffs would have been the prevailing parties in every other circuit to have considered the question.

Finally, the Commissioner attempts to establish that the other circuits are not in similar in their approach. To start, the Commissioner suggests that the preliminary injunction at issue here would not satisfy the test in the Third Circuit. (*See* Supp. Resp. Br. at 37–39.) According to the Commissioner, the preliminary injunction at issue in *PAPV* was "an example of that rare situation where a merits-

11

based determination is made at the injunction stage." (Supp. Resp. Br. at 38 n.27 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011)).) But the Commissioner makes no persuasive attempt to explain why the preliminary injunction at issue here is not the sort of "merits-based" determination that the Third Circuit deemed sufficient in *PAPV* and *Singer*. *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008); *Singer Mgmt. Consultants, Inc.*, 650 F.3d at 229. It is, and *Singer* makes that clear. According to the Third Circuit in *Singer*, the only reason the preliminary injunction in *PAPV* was sufficient to confer prevailing party status on the plaintiffs was the district court's predicate finding that the ordinance at issue was "facially unconstitutional." *Singer*, 650 F.3d at 229-30. Even assuming, for the sake of argument only, that such a finding is a necessary prerequisite in the Third Circuit, the District Court made a nearly identical finding here. In its order granting the preliminary injunction, the District Court noted that "the private interest at stake *plainly* merits some pre-deprivation process" and "§ 46.2-395, *on its face*, does not provide a meaningful opportunity to be heard regarding license suspension." [2] *Stinnie*, 355 F. Supp. 3d at 531 (emphases added). This is the sort of merits-based

_____

[2] In light of the District Court's holding that some pre-deprivation process was required prior to license suspension, the Commissioner's attempt to rehabilitate Section 46.2-395 by referring to post-deprivation acts misses the point. (*See* Supp. Resp. Br. at 5.)

finding that the Third Circuit deemed sufficient in *Singer* and *PAPV*. Accordingly, the Commissioner's attempt to distinguish these cases falls flat.

The Commissioner also seeks to contend Plaintiffs would not qualify as a prevailing party in the Seventh Circuit because "the preliminary injunction was defeasible, and 'further proceedings on the merits of the plaintiffs' claims' were clearly contemplated." (*See* Supp. Resp. Br. at 39 (quoting *Dupuy v. Samuels*, 423 F.3d 714 (7th Cir. 2005)).) The Commissioner misunderstands *Dupuy*. *Dupuy* ruled for the government because "at the time the district court *issued the fee order*, it explicitly contemplated further proceedings on the merits of the plaintiffs' claims." *Dupuy*, 423 F.3d at 723 (emphasis added). Here, the District Court has not granted fees, and Plaintiffs' relief from the preliminary injunction is no longer defeasible. In fact, the Commissioner's own actions in moving to stay the case robbed itself of the opportunity to undo Plaintiffs' relief. The Seventh Circuit does not support the Commissioner's position, and *Dupuy* recites its case law showing that. *Id.* at 719–21 (reciting the circuit's long-history of awarding fees in cases without a final judgment).

The Commissioner similarly claims that the D.C. Circuit would not support Plaintiffs but is mistaken on this point as well. (*See* Supp. Resp. Br. at 40 (citing *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 942 (D.C. Cir. 2005)).) In *Select Milk*, the plaintiffs challenged the Secretary of Agriculture's proposed rule

that would have raised the price of Class III butterfat. *See Select Milk*, 400 F.3d at at 941. Had the new rule gone into effect, plaintiffs would have lost millions of dollars. *See id.* But the district court "granted Milk Producers' motion for a preliminary injunction enjoining the Secretary from imposing a separate price for Class III butterfat. The Government did not appeal . . . . Instead, the Secretary [of Agriculture] issued a new rule that did not include a separate price for Class III butterfat." *Id.* Then both parties "stipulated to dismissal of the case as moot." *Id.*

The D.C. Circuit concluded that under these facts Milk Producers were prevailing parties. *See id.* at 950. The court first noted that "there was a court-ordered change in the legal relationship between Milk Producers and the Secretary." *Id.* at 947. Specifically, the preliminary injunction stopped the new regulation's enforcement. *See id.* This relief was "concrete and irreversible" because of the money Milk Producers avoided losing. *See id.* Second, the court determined the "preliminary injunction was a judgment rendered in favor of Milk Producers." *Id.* at 948. Third, the preliminary injunction gave Milk Producers judicial relief. *See id.* at 949. Before the preliminary injunction Milk Producers faced the specter of the new regulation; after the injunction, they did not. *Compare Lefemine v. Wildeman*, 568 U.S. 1, 5 (2012) (per curiam), *with Select Milk*, 400 F.3d at 948–49.

14

Like in *Select Milk*, the District Court ordered a change in relationship

among the parties in this case. (JA843–44.) The Commissioner could have

appealed the preliminary injunction but did not do so. 28 U.S.C. § 1292(a)(1)

(granting the courts of appeals jurisdiction over "[i]nterlocutory orders . . .

granting . . . injunctions"); *see also Select Milk*, 400 F.3d at 948 (noting how "it is

well established that preliminary injunctions are appealable orders"); *Swift Beef

Co. v. Alex Lee, Inc.*, 760 F. App'x 160, 163 (4th Cir. 2019) (same). The District

Court's preliminary injunction granted Plaintiffs' requested relief and protected

them from the unconstitutional deprivation of their licenses under § 46.2-395. The

relief granted safeguarded Plaintiffs' rights and shielded them from additional

financial harm. (JA843.) For example, the Commissioner had to remove § 46.2-

395 suspensions from Plaintiffs' driver's licenses, and the Commissioner could not

charge a fee to reinstate those licenses suspended due to § 46.2-395. (*Id.*) The

relief granted also made it so that the Commissioner could not enforce § 46.2-395

against Plaintiffs without notice and a hearing. (*Id.*) In doing so, the Court gave

Plaintiffs new opportunities to seek and maintain stable employment, access to

medical care, access to opportunities for their children, access to religious worship,

and the like. *See, e.g.*, *Stinnie*, 355 F. Supp. 3d at 521 (finding that that "[l]oss of a

driver's license adversely affects people's ability to gain and maintain

employment, often leading to a reduction in income"); *id.* at 531 n.8 ("Not only

does Plaintiffs' testimony emphasize their need for a driver's license to meet non-economic needs, such as medical care for themselves and their families, but evidence also shows that the majority of Virginians rely on cars to travel to work, and that the lack of a license reduces job opportunities." (internal citations omitted)); *id.* at 532 (determining that "[m]oney alone would not alleviate Plaintiffs' harms or release Plaintiffs from the cycle of hardships caused by § 46.2-395" but the relief granted could).  Plaintiffs received a judgment in their favor that gave them tangible, judicial relief.  This is analogous in every relevant way to the situation in *Select Milk* where the Milk Producers were not protected from "the Secretary . . . imposing the separate Class III butterfat price."  *Select Milk Producers*, 400 F.3d at 943.

Finally, the Commissioner intimates that the Eighth Circuit has a similar causation requirement to the Fifth Circuit.  (*See* Supp. Resp. Br. at 38–39.)  But the language quoted in the Commissioner's brief came from the Eighth Circuit quoting prior findings of fact by the *district court*, not the Eighth Circuit itself.  *Rogers Group, Inc. v. City of Fayetteville*, 683 F.3d 903, 907 (8th Cir. 2012).  Later in the *Rogers Group* opinion, the Eighth Circuit articulated what it was looking at to determine the prevailing party status.  *See id.* at 910–11.  The Commissioner's preferred causation analysis is noticeably absent from that discussion.

**B.      The Plaintiffs meet any causality test generated by Commissioner.**

Finally, the Commissioner claims that should this Court depart from *Smyth*,

it should both generate a causation requirement and determine that the preliminary

injunction did not cause the repeal in the General Assembly.  (*See* Supp. Resp. Br.

at 44–53 (referring to *Dearmore v. City of Garland*, 519 F.3d 517 (5th Cir.

2008)).)[3]  For the reasons previously stated, the Court should not adopt this new

causality requirement, which would inject unnecessary litigation into the fee

petition process, but even if it did, Plaintiffs would be prevailing parties.  (*See*

Supp. Opening Br. at 39–47).

In its reply brief, the Commissioner spends nearly seven pages arguing that

the preliminary injunction did not cause the repeal of Section 46.2-395.  (*See* Supp.

Resp. Br. at 46-53.)  But none of the Commissioner's points disproves what

happened with the repeal, despite the Commissioner's declaration that its position

"is beyond debate."  (*See id.* at 46.)  To start, one attorney's public comments is

not persuasive evidence in the record of this matter as to the mental state of either

the Commissioner or the legislature.  (*See id.* at 47–48.)  But the Commissioner's

_____

[3] Since the latest round of briefing, the Fifth Circuit has issued the opinion in
*Amawi v. Paxton*, --- F.4th ---, 2022 WL 4093123 (5th Cir. Sept. 7, 2022).  To be
sure, *Amawi* concludes that *Dearmore* means "that the mooting of the case *must* be
caused by the preliminary injunction, *i.e.*, a judicially sanctioned order."  *Id.* at *3.
*Amawi* does not aid the Commissioner's position, however, because even if this
Court decided to generate a causation prong, Plaintiffs meet it here.

own letter is part of the record, and the Commissioner's letter is clear that it was requesting that the General Assembly take action to avoid incurring additional legal fees defending the statute. (*See* JA968–69.) Furthermore, much is made of the fact that the General Assembly changed partisan makeup during the litigation. (See Supp. Resp. Br. at 47–48.) Yet it does not follow that a change in the precise identity of the actor changes the cause of the action. The evidence in the record shows the effect of the litigation on the legislative process. Therefore, even if the Court wished to require the parties to engage in a searching analysis of what may have been in the hearts and minds of the members of the 2020 Virginia General Assembly, the Commissioner's own statement undermines the government's position.

## CONCLUSION

The Commissioner uses a variety of arguments to relitigate the merits of an injunction it chose not to appeal in a case it chose to stay instead of try. The Commissioner also tries to convince this Court to retain *Smyth*, pitting this Court against every other circuit to consider the question. Neither is consistent with Supreme Court precedent, or in the interests of justice, ordered appeals, or sound policy. Congress was clear about its intent in passing § 1988, and long-standing concerns about justice and fairness provide compelling grounds for ensuring that intent is realized today.

Plaintiffs ask this Court to (1) overturn *Smyth*, (2) reverse the decisions of the Panel and the District Court, (3) grant Plaintiffs' Fee Petition, (4) hold that Plaintiffs are prevailing parties and their attorneys are entitled to fees and other costs and expenses under 42 U.S.C. § 1988, and (5) remand this case to the District Court for further proceedings.

Dated: September 28, 2022

Respectfully submitted,

/s/ *John J. Woolard*

| | |
|---|---|
| John J. Woolard | Jonathan T. Blank |
| McGuireWoods LLP | Benjamin P. Abel |
| 800 East Canal Street | McGuireWoods LLP |
| Richmond, VA 23219 | 323 Second Street SE, Suite 700 |
| T: (804) 775-4355 | Charlottesville, VA 22902 |
| F: (804) 698-2055 | T: (434) 977-2509 |
| jwoolard@mcguirewoods.com | F: (434) 980-2258 |
| | jblank@mcguirewoods.com |
| | babel@mcguirewoods.com |
| | |
| Angela A. Ciolfi | Patrick Levy-Lavelle |
| Legal Aid Justice Center | Legal Aid Justice Center |
| 1000 Preston Avenue, Suite A | 626 East Broad Street, Suite 200 |
| Charlottesville, VA 22903 | Richmond, VA 23219 |
| T: (434) 529-1810 | T: (804) 643-1086 |
| F: (434) 977-0558 | F: (804) 643-2059 |
| angela@justice4all.org | pat@justice4all.org |
| | |
| Leslie Kendrick | Tennille J. Checkovich |
| 580 Massie Road | Michael Stark |
| Charlottesville, VA 22903 | 200 Commerce Street |
| T: (434) 243-8633 | Smithfield, VA 23430 |
| F: (434) 924-7536 | T: (757) 357-8151 |
| kendrick@virginia.edu | F: (757) 365-3018 |

19

tcheckovich@smithfield.com
mstark@smithfield.com

*Counsel for Appellants*

**CERTIFICATE OF COMPLIANCE**

This brief contains 4,323 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.


*/s/ John J. Woolard*
John J. Woolard

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2022, I electronically filed the

foregoing Supplemental Reply Brief of Appellants with the Clerk of this Court

using the CM/ECF System, which will send a notification of electronic filing to all

counsel of record who are registered CM/ECF users, including counsel for

Appellee.

*/s/ John J. Woolard*
John J. Woolard
