# No. 21–1756

In the

# United States Court of Appeals

## For the Fourth Circuit

———————————

Damian Stinnie, et al., *Appellants*,

v.

Richard Holcomb, *Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(The Honorable Norman K. Moon)

———————————

## MOTION FOR ATTORNEYS' FEES PURSUANT TO
## 42 U.S.C. § 1988 AND LOCAL RULE 46(e)

———————————

Jonathan T. Blank
MCGUIREWOODS LLP
323 Second Street SE, Suite 700
Charlottesville, VA 22902
T: (434) 977-2509
F: (434) 980-2258
*jblank@mcguirewoods.com*

John J. Woolard
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4355
F: (804) 698-2055
*jwoolard@mcguirewoods.com*

Angela A. Ciolfi
LEGAL AID JUSTICE CENTER
1000 Preston Avenue
Suite A
Charlottesville, VA 22903
T: (434) 529-1810
F: (434) 977-0558
*angela@justice4all.org*

Patrick Levy-Lavelle
LEGAL AID JUSTICE CENTER
626 East Broad Street
Suite 200
Richmond, VA 23219
T: (804) 643-1086
*pat@justice4all.org*

Leslie Kendrick
580 Massie Road
Charlottesville, VA 22903
T: (434) 243-8633
F: (434) 924-7536
*kendrick@virginia.edu*

Tennille J. Checkovich
Michael Stark
200 Commerce Street
Smithfield, VA 23430
T: (757) 357-8151
F: (757) 365-3018
*tcheckovich@smithfield.com*
*mstark@smithfield.com*

August 21, 2023

Plaintiffs-Appellants Damian Stinnie, Melissa Adams, Adrainne Johnson, Williest Bandy, and Brianna Morgan (collectively, "Plaintiffs") move for their appellate attorneys' fees and costs incurred before the Court under Local Rule 46(e), Federal Rule of Appellate Procedure and Local Rule 39, and 42 U.S.C. § 1988.

## **INTRODUCTION**

Plaintiffs' counsel successfully fought the well-funded Commonwealth in high-stakes, protracted Section 1983 litigation. As prevailing parties obtaining a first of its kind preliminary injunction that corrected civil rights violations relating to suspending licenses for failure to pay court debt, Plaintiffs are entitled to petition for fees which include two appeals of the District Court's rulings to this Court. The first appeal allowed Plaintiffs to overcome procedural hurdles erected by the state and to continue their civil rights fight, as part of the pathway to the preliminary injunction win. The second appeal required both panel and en banc proceedings to establish Plaintiffs' status as prevailing parties.

Without the effort of Plaintiffs' attorneys, Plaintiffs' freedom from the binds of the suspension regime would not have been possible. It is therefore consistent with the purposes of Section 1988 for the Court to award Plaintiffs their attorneys' fees and expenses for litigating the appellate stages of this case. Plaintiffs'

requested fee award is consistent with the *Johnson/Barber* factors and would compensate their attorneys for four years of appellate litigation.

For these reasons, and under the *Johnson/Barber* test discussed below, the Court should award Plaintiffs their appellate attorneys' fees and expenses.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Section 46.2-395 punished those unable to pay court debt for their poverty without due process.

For years, the Commonwealth of Virginia denied Plaintiffs procedural due process by, among other things, automatically suspending driver's licenses for failure to pay court debt without holding a hearing or invoking any process to determine ability to pay. *See* Va. Code § 46.2-395 (Repealed 2020).

In July 2016, Plaintiffs filed this Section 1983 action. JA27–172. The Commissioner moved to dismiss, JA173–75, and the District Court dismissed the case based on the *Rooker-Feldman* doctrine, Article III, and Eleventh Amendment immunity. *Stinnie v. Holcomb*, Case No. 3:16-cv-00044, 2017 WL 963234, at *20 (W.D. Va. Mar. 13, 2017). Plaintiffs appealed the dismissal. JA223–25.

### II.    This Court allowed the case to go forward, remanding with instructions to permit Plaintiffs to amend their Complaint.

On appeal, this Court determined that it "lack[ed] jurisdiction to consider Plaintiffs' appeal because the district court's dismissal without prejudice was not a final order." *Stinnie v. Holcomb*, 734 F. App'x 858, 861 (4th Cir. 2018).

3

Importantly, this Court awarded Plaintiffs what they sought. Reply Brief of Appellants, No. 17–1740, Dkt No. 50 at pg. 21; *see also* Oral Argument – January 23, 2018, https://www.ca4.uscourts.gov/OAarchive/mp3/17-1740-20180123.mp3 starting at 15:55. The Court "remand[ed] the case to the district court with instructions to allow Plaintiffs to amend their complaint" because it concluded Plaintiffs could cure any deficiencies that the Court identified in its dismissal order. *Stinnie*, 734 F. App'x at 860–63.

Chief Judge Gregory did not join the majority because he would have reached the merits and determined that the District Court had improperly dismissed the action. *See id*. at 866-68 (Gregory, C.J, dissenting). His well-reasoned opinion also highlighted Plaintiffs' merits arguments. *See id.* at 863–64 (detailing Virginia's driver's license scheme did "not differentiate between those *unable* to pay from those *unwilling* to pay"; *id.* at 864–65 (noting the disastrous impact the statute had on Virginians).

As a result of their appellate victory, Plaintiffs won the ability to continue their suit before the District Court. Their fight continued, and Chief Judge Gregory's views on both jurisdiction and the merits foreshadowed the later successful preliminary injunction.

III.   **Plaintiffs returned to the District Court and obtained a hard-fought preliminary injunction.**

The District Court proceeding was equally hard-fought.  Plaintiffs' preliminary injunction evidence included supporting documents, a Harvard Ph.D. economist, the foremost expert on poverty self-sufficiency, and one of the named plaintiffs, who endured intense cross-examination.  USDC Dkt. No. 113 at 3.  On December 21, 2018, the Court granted the preliminary injunction and enjoined the Commonwealth from enforcing the statute against Plaintiffs.  JA820-844.

At the Commissioner's request, and over Plaintiffs' objections, the District Court stayed the litigation to give the General Assembly an opportunity to repeal the statute, which it did.  JA945-54.  After the repeal, the District Court then retained the question of prevailing party status for purpose of attorneys' fees.  JA1017.  The magistrate and District Court judges decided that they were bound by *Smyth*.  JA1128-1155, 1256-1265.  Plaintiffs appealed that determination.  JA1266.

IV.   **Relying on *Smyth*, a panel of this Court ruled for the Commissioner, but the concurrence noted that *Smyth* was an outlier that "allows defendants to game the system."**

A three-judge panel of this Court affirmed the District Court based on *Smyth* remaining binding authority.  *See* Dkt. No 52 at 11.  Judge Harris joined in the panel's opinion, but wrote a concurrence noting that this Court "may wish" to reconsider *Smyth*.  *See id.* at 13 (Harris, J., concurring).

**V.    This Court takes the appeal en banc and grants a full victory in favor of Plaintiffs.**

After this Court reheard the appeal en banc, which involved another round of supplemental en banc briefing and oral argument, the Court ruled in Plaintiffs' favor.  In doing so, this Court held that a party is a prevailing party when:

> a plaintiff obtains a preliminary injunction that (a) provides her with concrete, irreversible relief on the merits of her claim by materially altering the parties' legal relationship, and (b) becomes moot before final judgment such that the injunction cannot be "reversed, dissolved, or otherwise undone" by a later decision.

Dkt. No. 86 at 29.  The Court overturned *Smyth* and  concluded that Plaintiffs met those criteria.  *Id. at 18*; *see also id.* at 3 ("the plaintiffs here 'prevailed' in every sense needed to make them eligible for a fee award").

## LEGAL STANDARD

Under Local Rule 46(e), this Court "may award attorney's fees and expenses whenever authorized by statute."  As the Court held in its en banc opinion, Plaintiffs are eligible for fees and expenses here pursuant to 42 U.S.C. § 1988.  By design, § 1988 encourages private attorneys to take on civil rights litigation to protect the voices of the unheard, litigate the causes of the ignored, and guarantee the liberties promised to all.  *Cf. Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986) ("Section 1988 was enacted to insure that private citizens have a meaningful opportunity to vindicate their rights protected by the Civil Rights Acts.").  "Congress enacted § 1988 specifically because it found that the

6

private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *Riverside v. Rivera*, 477 U.S. 561, 576 (1986); *see Brandon v. Guilford Cty. Bd. of Elections*, 921 F.3d 194, 198 (4th Cir. 2019) (Congress enacted § 1988 "in furtherance of the policy of facilitating access to judicial process for the redress of civil rights grievances."). Just as Congress intended, § 1988 makes a plaintiff into a "private attorney general." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989).

It does so by granting courts the discretion to "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983) (citation omitted).  Under § 1988, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Id.* at 429 (internal quotations and citation omitted).

This Court uses the lodestar method to determine attorney fees:

> in calculating an appropriate attorneys' fee award, a district court must first determine the lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the *Johnson/ Barber* factors when making its lodestar determination. . . .
>
> > This court has summarized the *Johnson* factors to include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like

> work; (6) the attorney's expectations at the outset of the
> litigation; (7) the time limitations imposed by the client or
> circumstances; (8) the amount in controversy and the results
> obtained; (9) the experience, reputation and ability of the
> attorney; (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and length
> of the professional relationship between attorney and client; and
> (12) attorneys' fees awards in similar cases.

*Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008).

"[T]he extent of a plaintiff's success is 'the most critical factor' in determining a reasonable attorneys' fee under § 1988." *Doe v. Kidd*, 656 F. App'x 643, 657 (4th Cir. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)); *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the reasonableness of a[n] [attorney] fee award is the degree of success obtained.").

## **ARGUMENT**

**I.    Plaintiffs are prevailing parties and are therefore entitled to recover reasonable attorneys' fees and expenses.**

Plaintiffs seeking fees qualify as prevailing parties under § 1988 if "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433.

To determine whether Plaintiffs here qualify as prevailing parties, the Court need look no further than to its en banc opinion reversing and remanding the decision of the District Court. Plaintiffs' preliminary injunction win (which was

made possible by the remand they sought and obtained by the first appeal) makes them prevailing parties. *Stinnie, et al., v Holcomb,* Case No. 21-1756, Dkt. No. 86 at 33 ("[W]e have reconsidered *Smyth* . . . and replaced it with a standard under which the plaintiffs qualify as prevailing parties eligible for fees."). Plaintiffs arrived at this Court facing longstanding circuit precedent that forbade them from recovering any fees. They now head back to the District Court with that precedent reversed and a remand with orders to consider not ***whether*** Plaintiffs are entitled to recover attorneys' fees, but ***how much*** to award them. Obtaining the preliminary injunction and then a reversal based on overturning *Smyth* no doubt qualifies as "succe[ss] on a[] significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433. Indeed, it is hard to imagine a more resounding victory. Since Plaintiffs qualify as prevailing parties—by the first appeal to this Court that laid the groundwork for the preliminary injunction, and by the second appeal that overturned *Smyth*—the Court should award them reasonable attorneys' fees and expenses.

**II.    The Court should award Plaintiffs $768,491.70 in attorneys' fees and expenses incurred during their successful appeals to the Fourth Circuit.**

In this case, Plaintiffs seek to recover for the hours that their McGuireWoods and LAJC attorneys spent litigating the two appeals to the Fourth Circuit discussed above. As described in the attached declarations of Jonathan Blank and Angela Ciolfi, many timekeepers supported Plaintiffs' successful appellate efforts. *See*

9

**Exhibit 1**, Blank Decl.; **Exhibit 2**, Ciolfi Decl.  Those timekeepers billed at different rates over different years based on their varied experience and the tasks they performed.

In the expert opinion of Mark Stancil, a partner Willkie Farr & Gallagher LLP, the fees Plaintiffs seek are reasonable.  Mr. Stancil serves as the Co-Chair of his firm's Strategic Motions & Appeals Practice Group.  *See* **Exhibit 3**, Stancil Decl. ¶ 1.  Mr. Stancil has "brief[ed] and argu[ed] numerous appeals before the U.S. Courts of Appeals for the First, Second, Third, Fourth, and Ninth Circuits.  *Id.* ¶ 2.  He has also argued five cases before the Supreme Court of the United States, briefed many more, and filed scores of briefs at the certiorari stage."[1]  *Id.*  After carefully reviewing this case's history, including the appeals before this Court, Mr. Stancil's opinion is that the fees and costs incurred by Plaintiffs related to legal services provided in the U.S.  Court of Appeals for the Fourth Circuit are reasonable under the *Johnson/Barber* test.  *Id.* ¶ 10.

## III.    The *Johnson/Barber* factors support Plaintiffs' fee request.

### a. *Johnson/Barber* Factor 1: Plaintiffs' attorneys' time and labor litigating these appeals were reasonable.

The appeals before this Court were complicated, lengthy, and ultimately groundbreaking.  In the first appeal, Plaintiffs won the relief requested and ensured

---

[1] *Mark T. Stancil*, Willkie, https://www.willkie.com/professionals/s/stancil-mark.

an opportunity to litigate before the District Court, which laid the groundwork for the preliminary injunction.

And as for the second appeal, because the relief Plaintiffs sought required this Court to overturn over twenty years of precedent, Plaintiffs needed to proceed all the way to an en banc rehearing.

As a result, Plaintiffs' attorneys spent considerable time and effort strategizing, briefing, and arguing the various stages of the appeals processes. These efforts included consulting legal experts on each claim, and navigating the appeals to this Court, both regarding panel review and the en banc hearing. Ciolfi Decl. ¶ 62. The results that Plaintiffs achieved demonstrate that the time their attorneys spent on their case was warranted and reasonable.

### i.    McGuireWoods Attorneys and Staff

- Jonathan Blank is McGuireWoods' Business & Securities Litigation Department chair. His experience and qualifications, and the experience and qualifications of the attorneys that he supervised, are set out in his declaration. *See* Blank Decl. Mr. Blank spent 50.3 hours on appellate work. Blank Decl., Exs. A1, A2, D.

- Tennille Checkovich was a McGuireWoods partner and lead appellate attorney. Before leaving McGuireWoods, she spent 403.9 hours on

appellate work. *Id.*, Ex. A1. She spent many more hours after she left that are not requested. *See infra.*

- Tom Beshere (former partner and then counsel) spent 37.2 hours on appellate work. *Id.*, Ex. A1.

- John Woolard (associate) spent 173.9 hours on appellate work. *Id.*, Ex. A2, D.

- Michael Stark (former associate and current deputy general counsel at Smithfield Foods, Inc. ("Smithfield")) spent 33.1 hours on appellate work before leaving McGuireWoods. *Id.*, ¶ 9, Ex. A1.

- Dylan Bensinger (associate) spent 15.10 hours on appellate work. *Id.*, Ex. D.

- Jakarra Jones (former associate) spent 52.4 hours on appellate work. *Id.*, Ex. A1.

- Martina Liu (paralegal) spent 31.8 hours on appellate work. *Id.*, Ex. A2.

- Nancy von Bargen (paralegal) spent 68.6 hours on appellate work. *Id.*, Ex. A2.

- Connor Symons (paralegal) spent 34.4 hours on appellate work. *Id.*, Ex. A1.

In all, Plaintiffs seek to recover a total of $633,979 in attorneys' fees (including the time spent preparing this Motion for Attorneys' Fees) and $1,402.70 in expenses for the time McGuireWoods spent on these appeals. As reinforcement

of the reasonableness, Plaintiffs do not seek to recover time spent by a host of additional McGuireWoods partners, associates, counsel, summer associates, and paralegals. *Hensley*, 461 U.S. at 434 ("prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."). The attorneys and legal staff spent a total of 283.3 additional hours on these appeals. Blank Decl. ¶ 11. Plaintiffs' decision against seeking that time reduces the total MW hours for which they seek to recover by about 24%. *See id.* ¶ 8, Exs. B1, B2.

### ii.     Smithfield Attorneys

Nor do Plaintiffs seek any fees for the ***substantial*** time that attorneys Checkovich and Stark spent on this litigation after leaving McGuireWoods and began working as Smithfield in-house counsel. Checkovich led the appellate efforts, spent significant time drafting briefs, developing case strategy, and arguing every appellate oral argument. Stark also spent substantial time on the strategy and briefs during the appeals. Though their efforts were integral to success, for reasons outside this litigation, they do not seek their attorneys' fees for time after they left McGuireWoods.

### iii.    LAJC Attorneys

- Angela Ciolfi is the Executive Director of LAJC. Her experience and qualifications, and the experience and qualifications of the attorneys that she

supervised on this matter, are set out in her declaration, attached as Exhibit 3. She spent 66 hours on these appeals. Ciolfi Decl. ¶ 41.

- Pat Levy-Lavelle is a Legal Aid Justice Center Senior Attorney . He spent 93.6 hours on these appeals. Ciolfi Decl. ¶ 51.

- Leslie Kendrick is a University of Virginia School of Law professor and former clerk to the U.S. Court of Appeals for the Fourth Circuit and Supreme Court of the United States. She affiliated with LAJC for providing legal services on this case. She spent 64 hours on these appeals. Ciolfi Decl. ¶ 60.

Like McGuireWoods, LAJC and Kendrick significantly reduced the number of hours for which Plaintiffs seek compensation. Ciolfi Decl. ¶¶ 62-70. They do not seek to recover for any time spent on clerical work, travel not dedicated solely to work on these appeals, or any of the time spent on the appeals by the many attorneys other than Ciolfi, Levy-Levelle, and Kendrick. These decisions represent good-faith billing discretion by LAJC to reduce the amount of fees they seek. Ciolfi Decl. ¶ 67. In all, Plaintiffs seek to recover $133,110 for the time spent on this case by their LAJC attorneys. *Id.* ¶¶ 66-68. Given the nature of these appeals, and the effort required, their time is reasonable. Stancil Decl. ¶¶ 10-19.

**b. *Johnson/Barber* Factors 2 and 3: These appeals concerned novel and difficult legal questions that required significant skill to litigate.**

The legal issues in these appeals were complex and required significant skill. To successfully challenge the driver's license suspension statute, Plaintiffs' attorneys had to overcome myriad jurisdictional and other challenges. *See* Ciolfi Decl. ¶ 17.

Crafting Plaintiffs' legal claims and arguments on appeal required an understanding and application of jurisprudence arising out of the Fifth and Fourteenth Amendments. To avoid duplication and ensure an efficient use of time for legal research, Plaintiffs' attorneys consulted civil rights experts, Fourth Circuit appellate litigators, and faculty at the University of Virginia School of Law. *Id.* ¶ 18.

The first appeal concerned difficult jurisdictional questions, the *Rooker-Feldman* doctrine, and the finality of a district court's order. *See Stinnie,* 734 F. App'x at 862. Plaintiffs won the remand they had sought, that disposed of the jurisdictional barriers that the state had raised, and ordered the district court to permit an amended complaint. The first appeal victory laid the groundwork for the preliminary injunction win.

The second appeal concerned even more fraught and novel issues. Plaintiffs sought to recover their reasonable attorneys' fees even though longstanding

precedent, *Smyth*, stood in their way.  Despite the Panel's determination that *Smyth* controlled, Plaintiffs continued.  After successfully petitioning for rehearing en banc, Plaintiffs undertook the difficult task of convincing the full Court to overturn *Smyth* and harmonize circuit precedent with other circuits around the country. Plaintiffs' attorneys' skill and effort led to a landmark opinion.  This is no small feat, and it took no small amount of effort and skill to achieve it.

### c. *Johnson/Barber* Factor 4:  Plaintiffs' counsel's engagement involved a substantial opportunity cost.

Had McGuireWoods not spent considerable time on this appeal, it would have spent that time working on sophisticated national litigation.  In other words, had McGuireWoods chosen not to represent Plaintiffs here, it could have spent— and been compensated for—its time working on other matters.  *See W.A.K. ex rel. Karo v. Wachovia Bank*, N.A., No. 3:09CV575-HEH, 2010 WL 3074393, at *3 (E.D. Va. Aug. 5, 2010) (where case preparation required substantial time, work on case precluded attorneys from work on other matters).

These appeals also required a significant investment of LAJC's limited resources.  Ciolfi Decl. ¶ 19-20.  Every hour that LAJC dedicated to this constitutional challenge was an hour less that it  dedicated to seeking justice for its other clients, who often have nowhere else to go.  The opportunity cost to LAJC must be measured better in lost opportunities to assist other vulnerable Virginians. LAJC decided to represent these Plaintiffs to challenge this statute because it

16

harmed Plaintiffs (and others across Virginia) in profound ways, including by depriving them of right to drive to work, school, medical appointments, and religious worship, and subjecting them to further sanctions (including imprisonment) if and when they drove on suspended licenses.  *Id.* ¶¶ 19-20.

### c. *Johnson/Barber* Factor 5:  Plaintiffs' fee request tracks the customary fee for sophisticated appellate work.

The hourly rates that Plaintiffs seek for time spent by their McGuireWoods attorneys is consistent with, if not below, the rates charged by peer firms for complicated appellate work.  Stancil Decl. ¶ 18.

Although LAJC does not charge their clients a typical hourly fee (indeed, their clients pay nothing), the hourly rates that Plaintiffs seek for LAJC attorneys' time are based on customary hourly rates that attorneys with their qualifications, experience, and skill charge in private practice.  Ciolfi Decl. ¶ 32-33.  Indeed, "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." *Blum v. Stenson*, 465 U.S. 886 (1984).  The statute and legislative history establish that "reasonable fees" under § 1988 must be calculated according to  prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.  *Id.*  As noted in the LAJC attorneys' individual biographies set out in the Ciolfi Declaration, each

17

has extensive experience and valuable skills suited to working on this case. *Id.* ¶¶ 37-61.

Indeed, in Mr. Stancil's expert opinion and experience, the hourly rates that McGuireWoods and LAJC charged are "significantly below what similarly skilled attorneys and paraprofessionals charge" for similar complex appellate work. Stancil Decl. ¶ 18

The hourly rates sought by both McGuireWoods and LAJC attorneys are thus reasonable, and this factor favors awarding Plaintiffs the fees they request.

> ### d. *Johnson/Barber* Factor 6:  Plaintiffs' attorneys did not expect payment from their clients, but hoped to recover their fees from the government.

Plaintiffs' counsel took this matter on pro bono and took no retainer.  They recorded their time with the understanding that, if they prevailed, the government as the wrongdoer would bear the costs of litigation.  Because Plaintiffs did prevail, they now seek their fees.

> ### e. *Johnson/Barber* Factor 7:  The time limitations imposed by the circumstances support the fee request.

The time limitations imposed by the circumstances support Plaintiffs because of the nature of the injunctive relief requested.  At worst, the factor is neutral for purposes of the request for appellate fees and should be considered by the district court.

18

### f. *Johnson/Barber* Factor 8: Plaintiffs' complete victory at the Fourth Circuit justifies awarding them their entire fee demand.

Plaintiffs could not have achieved a more complete appellate victory. In the first appeal, the Court awarded what Plaintiffs sought and remanded the case to the District Court so that Plaintiffs could amend their complaint and continue their civil rights battle. *Stinnie v. Holcomb*, 734 F. App'x 858, 863 (4th Cir. 2018). That appeal was a precursor to Plaintiffs' preliminary injunction victory. In the second appeal, the en banc Court overturned longstanding precedent and declared Plaintiffs to be prevailing parties entitled to attorneys' fees and expenses under § 1988. *See Stinnie, et al., v. Holcomb,* Case No. 21-1756, Dkt. No. 86.

In short, Plaintiffs accomplished everything they set out to do before the Fourth Circuit. Because the degree of success during the proceedings is the "most critical factor" when determining the reasonableness of a fee award, *Farrar*, 506 U.S. at 114, this factor weighs ***heavily*** in favor of awarding Plaintiffs the entire amount of fees that they seek.

### g. *Johnson/Barber* Factor 9: Plaintiffs' counsel's experience, reputation and ability supports the fee request.

Plaintiffs' counsel have diverse experiences, perspectives, and skillsets. *See* Blank Decl. ¶ 7; Ciolfi Decl. ¶¶ 37-61. They include former federal district, circuit court, and Supreme Court clerks, a law professor, a Fortune 500 corporation's general counsel, the head of LAJC, and a Virginia practitioner with decades of

19

experience. Checkovich and Stark have also handled prior pro bono matters before this Court and obtained favorable results. Blank Decl. ¶ 7. Plaintiffs' counsel enjoy well-earned reputations in the legal community for being zealous and capable advocates. As explained by Mr. Stancil, this experience, reputation, and ability supports Plaintiffs' fee request. Stancil Decl. ¶¶ 15, 18-19.

District courts in this circuit have recognized that large fee awards are appropriate when "[t]he nature of the services, . . . the vigorousness of the [representation], and the level of skill required to achieve victory justify the number of hours incurred." *Brucker v. Taylor*, No. 1:16-CV-1414-GBL, 2017 WL 11506335, at *6 (E.D. Va. Sept. 1, 2017); *Danville Grp. v. Carmax Bus. Servs.*, LLC, No. 1:20-CV-696 (LO/TCB), 2021 WL 1647680, at *3 (E.D. Va. Apr. 27, 2021) (concluding that attorneys with similar credentials from a peer firm reasonably charged comparable hourly rates).

> ### h. *Johnson/Barber* Factor 10: The undesirability of the case within the legal community in which the suit arose counsels in favor of the fee request.

This was no ordinary civil rights litigation. Plaintiffs sought to overturn an unconstitutional statute that resulted in hundreds of thousands of license suspensions, as well as overturning a twenty-year old precedent that impeded the prosecution of civil rights litigation. Plaintiffs needed lawyers who could fund and execute years-long litigation against a state government that retained one of the

biggest and most well-respected law firms in the Commonwealth to represent the Commonwealth in the litigation. *Dauphin v. Jennings*, No. 1:15CV149, 2017 WL 2543847, at *6 (E.D. Va. May 5, 2017), report and recommendation adopted, No. 1:15-CV-149, 2017 WL 2525138 (E.D. Va. June 8, 2017), *aff'd sub nom. Dauphin v. Hennager*, 727 F. App'x 753 (4th Cir. 2018) ("The undesirability of this case is evidenced by its contentious and prolonged nature.").

There are only a handful of firms and organizations equipped to fund and maintain a years-long dispute with the government. Many smaller firms would be outpaced by the Commonwealth's resources, which included not only the capable attorneys in both Solicitor General and the Attorney General's Offices but also a team of elite attorneys in private practice. Victory was far from certain. The team of McGuireWoods and LAJC was uniquely situated to tackle this case.

### i. *Johnson/Barber* Factor 11: The nature and length of the professional relationship between attorney and client also counsels in favor of the fee request.

This litigation was not a quick-hit lawsuit in which Plaintiffs desired to cash out through an unearned fee award. To the contrary, Plaintiffs' attorneys have represented Plaintiffs for years against the well-funded Commonwealth. The appeals alone have spanned four years. Blank Decl. ¶ 4.

As a result, this factor favors awarding Plaintiffs their fees and expenses. *Lorillard Tobacco Co. v. California Imports, LLC*, No. 3:10CV817-JAG, 2012 WL

5423830, at *4 (E.D. Va. Nov. 6, 2012) (awarding fees when the client was "a long-term client of counsel's firm, and th[e] representation confirmed the value of the firm to [the client]."); *Weyerhaeuser Co. v. Yellow Poplar Lumber Co., Inc.*, No. 1:13CV00062, 2017 WL 2799316, at *8 (W.D. Va. June 28, 2017) (holding that this factor favored a fee award based on an attorney-client relationship of only four years).

> **j.  *Johnson/Barber* Factor 12:  There is no other truly comparable case in which to compare attorneys' fees awards.**

Given the unique nature of this over half-decade long litigation requiring two appeals and an en banc rehearing, this fee request deserves special consideration.  Plaintiffs went against a state government that battled them at every corner to defend its unconstitutional statute.  At the very least, this factor should *not* weigh *against* awarding Plaintiffs their fees and expenses.

> **k.  Under the *Johnson/Barber* test, the total lodestar is a reasonable figure given the circumstances.**

Once the Court determines the reasonable number of hours that Plaintiffs' attorneys have worked and the reasonable hourly rate that those attorneys should charge, it can calculate the lodestar.  Plaintiffs seek 905.1 hours of McGuireWoods's time at various hourly rates, for a total of $633,979 in fees.  Blank Decl. ¶ 6.  Plaintiffs also seek $1,402.70 for McGuireWoods' litigation-

related expenses.[2]  Plaintiffs seek to recover 223.6 hours of LAJC's time at various

hourly rates, for a total of $133,110.  The total lodestar that the Court should award

Plaintiffs is therefore $768,491.70.[3]

## CONCLUSION

The Court should award Plaintiffs $767,089 for their attorneys' fees and

$1,402.70 for their expenses for work performed in both appeals before the United

States Court of Appeals for the Fourth Circuit.[4]

Dated:  August 21, 2023

Respectfully submitted,

|  | /s/ Jonathan T. Blank |
|---|---|
| John J. Woolard | Jonathan T. Blank |
| MCGUIREWOODS LLP | MCGUIREWOODS LLP |
| 800 East Canal Street | 323 Second Street SE, Suite 700 |
| Richmond, VA 23219 | Charlottesville, VA 22902 |

[2] Plaintiffs also set out $2,140.16 in expenses incurred by their LAJC attorneys. *See* Ciolfi Decl. ¶ 68.  While Plaintiffs do not seek to recover those expenses here, they recognize that such expenses may be recoverable before the district court.  *See* 4th Cir. L.R. 39(c).

[3] Plaintiffs are fully preserving their rights to seek the attorneys' fees, costs, and expenses incurred in the District Court at the District Court.  The instant motion relates solely to work before the Fourth Circuit.

[4] Alternatively, as requested in Plaintiffs' Transfer, Dkt. No. 88, the Court should transfer the proceedings related to Plaintiffs' attorneys' fees and expenses to the United States District Court for the Western District of Virginia so that Court can make a single, global determination of the amount of fees and expenses to which Plaintiffs are entitled for their attorneys' work at the trial and appellate levels.

T: (804) 775-4355
F: (804) 698-2055
jwoolard@mcguirewoods.com

Angela A. Ciolfi
Legal Aid Justice Center
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
T: (434) 529-1810
F: (434) 977-0558
angela@justice4all.org

Leslie Kendrick
580 Massie Road
Charlottesville, VA  22903
T: (434) 243-8633
F: (434) 924-7536
kendrick@virginia.edu

T: (434) 977-2509
F: (434) 980-2258
jblank@mcguirewoods.com

Patrick Levy-Lavelle
Legal Aid Justice Center
626 East Broad Street, Suite 200
Richmond, VA 23219
T: (804) 643-1086
F: (804) 643-2059
pat@justice4all.org

Tennille J. Checkovich
Michael Stark
200 Commerce Street
Smithfield, VA 23430
T: (757) 357-8151
F: (757) 365-3018
tcheckovich@smithfield.com
mstark@smithfield.com

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief contains 5,012 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

*/s/ Jonathan T. Blank*
Jonathan T. Blank

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I electronically filed the foregoing

Motion for Attorneys Fees with the Clerk of this Court using the CM/ECF System,

which will send a notification of electronic filing to all counsel of record who are

registered CM/ECF users, including counsel for Appellants.

*/s/ Jonathan T. Blank*
Jonathan T. Blank

**LOCAL RULE 27(a) CERTIFICATION**

Pursuant to this Court's Local Rule 27(a), I hereby certify that Appellee has been informed of the intended filing of this motion. Appellee intends to file an opposition.

*/s/ Jonathan T. Blank*
Jonathan T. Blank